Karl Kronenberger (CA Bar No. 226112)
karl@krinternetlaw.com
Jeffrey M. Rosenfeld (CA Bar No. 222187)
jeff@krinternetlaw.com
Kronenberger Rosenfeld, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
415-955-1155 Telephone

Rudolph A. Telscher, Jr.* (MO Bar No. 41072)
rudy.telscher@huschblackwell.com
Kara R. Fussner * (MO Bar No. 54656)
kara.fussner @huschblackwell.com
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
314-480-1500 Telephone

Ryan B. Hauer * (IL Bar No. 6320758)
Ryan.hauer@huschblackwell.com
HUSCH BLACKWELL LLP
120 South Riverside Plaza Suite 2200
Chicago, IL 60606
312-526-1572 Telephone

*pro hac vice application pending

***Attorneys for Defendants/Counterclaim
Plaintiffs BrandTotal, Ltd. and Unimania,
Inc.***

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND/SAN FRANCISCO DIVISION

FACEBOOK, INC., a Delaware
corporation,

    *Plaintiff/Counterclaim
Defendant*,

v.

BRANDTOTAL, LTD., an Israeli
corporation, and
UNIMANIA, INC., a Delaware
corporation,

    *Defendants/Counterclaim
Plaintiffs*.

Case No.: 3:20-cv-07182-JCS

**DEFENDANTS' ANSWER TO
COMPLAINT AND COUNTERCLAIMS**

**DEMAND FOR JURY TRIAL**

Defendants BrandTotal Ltd. ("BrandTotal") and Unimania, Inc. ("Unimania") (collectively, "Defendants") respond to the allegations in the Complaint filed by Plaintiff Facebook, Inc. ("Facebook") and assert the following defenses and counterclaims. The numbered paragraphs below correspond to the numbered paragraphs in the Complaint. To the extent not specifically admitted herein, all allegations of the Complaint are denied.

## INTRODUCTION

1.      Defendants admit that between the months of September 2019 and September 2020 Defendants developed and distributed internet browser extensions, which were available on the Google Chrome Web Store. Defendants deny the characterization of these browser extensions as "malicious extensions designed to improperly collect data." Defendants deny the remaining allegations of paragraph 1.

2.      Paragraph 2 contains legal conclusions to which no response is required. Defendants admit that an employee created a Facebook and an Instagram account after October 2, 2020. Defendants also admit that on or about October 12, 2020, a version of UpVoice was published on Google's Chrome Web Store. Defendants deny that this browser extension, along with any other Defendants' extensions, are "malicious." Defendants deny that it has ever violated any of Facebook or Instagram's Terms and Policies, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "CFAA") or the California Comprehensive Computer Data Access and Fraud Act, California Penal Code § 502. Defendants also deny that Plaintiff is entitled to any damages. Defendants deny the remaining allegations of paragraph 2.

## PARTIES

3.      Defendants are without sufficient information to respond to the allegations set forth in paragraph 3 and on that basis denies them.

4.      Defendants admit that BrandTotal Ltd. was incorporated in Israel on November 20, 2016 and is headquartered in Israel. Defendants admit that BrandTotal Ltd. has a subsidiary named BrandTotal Inc. that was incorporated in Delaware on November 13, 2017, has an office in New York, New York, and sells BrandTotal's services in the U.S. Defendants admit that

BrandTotal operates the website brandtotal.com, where it sells marketing intelligence through its software-as-a-service platform. Defendants admit that BrandTotal created and distributed the extension "UpVoice" and has distributed UpVoice through the Google Chrome Web Store, but Defendants deny the characterization of the extension as "malicious." Defendants admit that they have received at least approximately $8 million in venture capital funding between 2017 and 2018. Defendants deny each and every remaining allegation set forth in paragraph 4.

5.      Defendants admit that Unimania, Inc. was incorporated in the State of Delaware on November 27, 2017. Defendants admit that Unimania developed and distributed the extension named "Ads Feed" on the Chrome Web Store. Defendants admit that Unimania's website is unimania.xyz. Defendants are without sufficient information regarding any May 2018 "AdGuard Research" report and therefore deny any allegations related to "AdGuard Research." Defendants admit that the extensions were removed from the Google Chrome Store in 2018. Defendants deny every remaining allegation set forth in paragraph 5.

6.      Defendants admit that they share some common employees and agents. Defendants further admit that BrandTotal employees have made Facebook profiles promoting Unimania's Ads Feed product. Defendants deny every remaining allegation set forth in paragraph 6.

## JURISDICTION AND VENUE

7.      Paragraph 7 contains legal conclusions to which no response is required. Defendants admit that to the extent this action alleges a claim under federal causes of action, this Court has subject matter jurisdiction. Defendants deny every remaining allegation set forth in paragraph 7.

8.      Paragraph 8 contains legal conclusions to which no response is required. Defendants admit that to the extent this action arises under the same nucleus of operative facts as a federal claim, this Court has subject matter jurisdiction. Defendants deny every remaining allegation set forth in paragraph 8.

9.      Paragraph 9 contains legal conclusions to which no response is required. Defendants admit that they had multiple Facebook accounts. Defendants do not contest personal

jurisdiction for the purposes of this matter. Defendants deny every remaining allegation set forth in paragraph 9.

10.     Paragraph 10 contains legal conclusions to which no response is required. Defendants admit that they have had Instagram accounts. Defendants do not contest personal jurisdiction for the purposes of this matter. Defendants deny every remaining allegation set forth in paragraph 10.

11.     Paragraph 11 contains legal conclusions to which no response is required. Defendants do not contest personal jurisdiction for the purposes of this matter. Defendants deny every remaining allegation set forth in paragraph 11.

12.     Paragraph 12 contains legal conclusions to which no response is required. Defendants do not contest venue for the purposes of this matter. Defendants deny every remaining allegation set forth in paragraph 12.

**<u>FACTUAL ALLEGATIONS</u>**

**A.     Background on Facebook and Instagram**

13.     Defendants admit that Facebook is a social networking website and mobile application that allow its users to create their own personal profiles and connect with each other on their personal computers and mobile devices. Defendants are without sufficient information to form a belief as to the truth of the remaining allegations set forth in paragraph 13 and therefore deny same.

14.     Admitted.

15.     Admitted.

16.     Defendants are without sufficient information to form a belief as to the truth of the allegations set forth in paragraph 16 and therefore deny same.

**B.     Facebook's Ad Library**

17.     Defendants admit that "The Facebook Ad Library" appears to be available at https://www.facebook.com/ads/library. Defendants are without sufficient information to form a belief as to the truth of the remaining allegations set forth in paragraph 17 and therefore deny

same.

18.     Defendants are without sufficient information to form a belief as to the truth of the allegations set forth in paragraph 18 and therefore deny same.

19.     Defendants are without sufficient information to form a belief as to the truth of the allegations set forth in paragraph 19 and therefore deny same.

20.     Defendants are without sufficient information to form a belief as to the truth of the allegations set forth in paragraph 20 and therefore deny same.

C.     **Facebook and Instagram Terms and Policies**

21.     Defendants admit that "Facebook's Terms of Service" appear to be available at https://www.facebook.com/terms.php. Defendants are without sufficient information to form a belief as to the truth of the remaining allegations set forth in paragraph 21 and therefore deny same.

22.     Defendants are without sufficient information to form a belief as to the truth of the allegations set forth in paragraph 22 and therefore deny same.

23.     Paragraph 23 contains legal conclusions to which no response is required. Defendants admit that Instagram's Terms of Use and Section 3.2.1 of the Facebook Terms of Service appear to include the language "do[ing] . . . anything unlawful, misleading, [ ] or fraudulent" but deny any allegation that Defendants have ever participated in "anything unlawful, misleading, [ ] or fraudulent." Defendants further deny any remaining allegations set forth in paragraph 23.

24.     Paragraph 24 contains legal conclusions to which no response is required. Defendants admit that Section 3.2.2 of the Facebook Terms of Service appears to include the language "do[ing] anything that could . . . impair the proper working or appearance of [Facebook] Products"; however, Defendants deny any allegation that Defendants have ever participated in "anything that could . . . impair the proper working or appearance of [Facebook] Products." Defendants further deny any remaining allegations set forth in paragraph 24.

25.     Paragraph 25 contains legal conclusions to which no response is required.

Defendants admit that Instagram's Terms of Use appears to include the language "do[ing] anything to interfere with or impair the intended operation of the [Instagram] Service"; however, Defendants deny any allegation that Defendants have ever participated in "anything to interfere with or impair the intended operation of the [Instagram] Service." Defendants further deny any remaining allegations set forth in paragraph 25.

26. Paragraph 26 contains legal conclusions to which no response is required. Defendants admit that Section 3.2.3 of the Facebook Terms of Service appears to include the language "access[ing] or collect[ing] data from [Facebook] Products using automated means (without our permission) or attempt[ing] to access data you don't have permission to access." Defendants further deny any remaining allegations contained in paragraph 26.

27. Paragraph 27 contains legal conclusions to which no response is required. Defendants admit that he Instagram Terms of Use appears to include the language "access[ing] or collect[ing] in unauthorized ways . . . [including] collecting information in an automated way without our express permission;" and "violat[ing] someone else's rights, including intellectual property rights." Defendants further deny any remaining allegations set forth in paragraph 27.

**D.      Background on Scraping**

28. Defendants admit that the term "web scraping" has been used to refer to the process of extracting data from a website interface. Defendants deny the characterization of "web scraping" as unauthorized. Defendants are without sufficient information to form a belief as to the truth of the remaining allegations set forth in paragraph 28 and therefore deny same.

29. Defendants are without sufficient information to form a belief as to the truth of the allegations set forth in paragraph 29 and therefore deny same.

30. Defendants are without sufficient information to form a belief as to the truth of the allegations set forth in paragraph 30 and therefore deny same.

**E.      Background on Internet Browser Extensions**

31. Defendants admit that internet browsers, such as Google Chrome, Opera, and Firefox, are used to access the internet. Defendants are without sufficient information to form a

belief as to the truth of the allegations set forth in paragraph 31 and therefore deny same.

32.     Admitted.

33.     Defendants are without sufficient information to form a belief as to the truth of the allegations set forth in paragraph 33 and therefore deny same.

34.     Defendants admit that browser extensions are available for download by users from online browser stores, which are often managed by the browser developer (*e.g.*, the Google Chrome Web Store). Defendants are without sufficient information to form a belief as to the truth of the allegations set forth in paragraph 34 and therefore deny same.

**F.      Defendants Accepted Facebook's and Instagram's Terms and Policies**

35.     Defendants deny the allegations set forth in paragraph 35.

36.     Defendants admit that BrandTotal created a Facebook account in the name of "BrandTotal Analytics" on or about June 13, 2017, and a BrandTotal Instagram account on or about December 5, 2016. Defendants admit that BrandTotal created a Facebook business account on or about February 21, 2017. Defendants deny any remaining allegations set forth in paragraph 36.

37.     Defendants admit that on or about September 3, 2019, BrandTotal created a Facebook business account for UpVoice. Defendants further admit that on or about June 8, 2020, BrandTotal created a Facebook business account named UpVoiceUS. Defendants deny any remaining allegations contained in paragraph 37.

38.     Defendants admit that on July 4, 2018, Unimania created a Facebook business account in the name of Unimania. Defendants deny any remaining allegations contained in paragraph 38.

39.     Defendants admit that between 2017 and 2019, Defendants' created and administrated Facebook Pages. Defendants deny that they have ever created a Facebook page to promote any "malicious extensions." Defendants deny the remaining allegations set forth in paragraph 39.

40.     Defendants admit that between July 2018 and June 2020, Defendants' employees

and agents created and controlled Facebook advertising accounts. Defendants admit that Figures 1 and 2 appear to be advertisements for Defendants' products. Defendants deny the remaining allegations set forth in paragraph 40.

41.     Defendants admit that a BrandTotal employee created a new Facebook and Instagram account on or after October 3, 2020. Defendants deny the remaining allegations set forth in paragraph 41.

**G.      Defendants' [Alleged Use of] at Least Two [Alleged] Malicious Browser Extensions to Scrape Facebook Until October 1, 2020**

        **1.      Overview**

42.     Defendants admit that between September 2019 and September 2020, Defendants developed and distributed UpVoice and Ads Feed through the Google Chrome Web Store. Defendants deny that UpVoice and Ads Feed are "malicious extensions." Defendants deny the remaining allegations set forth in paragraph 42.

43.     Defendants admit that BrandTotal offered the UpVoice extension on the Google Chrome Web Store and offer incentives to willing participants. Defendants deny the remaining allegations set forth in paragraph 43.

44.     Defendants admit that Unimania offered its Ads Feed extension on the Google Chrome Web Store. Defendants deny the remaining allegations set forth in paragraph 44.

45.     Defendants deny the allegations set forth in paragraph 45.

46.     Defendants deny the allegations set forth in paragraph 46.

47.     Defendants deny the allegations set forth in paragraph 47.

        **2.      The UpVoice [Alleged] Malicious Extension**

48.     Defendants admit that at least since September 2019, BrandTotal developed, promoted, and distributed the UpVoice extension. Defendants deny the remaining allegations set forth in paragraph 48.

49.     Defendants admit that BrandTotal maintained and operated the website joinupvoice.com and admit that it offered willing participants gift cards. Defendants also admit

that participants who signed up had to deliberately install an extension. Defendants deny the remaining allegations contained in paragraph 49.

50.    Defendants deny the allegations set forth in paragraph 50.

51.    Defendants deny the allegations set forth in paragraph 51.

52.    Defendants deny the allegations set forth in paragraph 52.

53.    Defendants deny the allegations set forth in paragraph 53.

54.    Defendants deny the allegations set forth in paragraph 54.

**3.    Ads Feed [Alleged] Malicious Extension**

55.    Defendants admit that beginning in November 2019, Unimania developed, promoted, and distributed the Ads Feed extension on the Google Chrome Web Store. Defendants deny the remaining allegations set forth in paragraph 55.

56.    Defendants deny the allegations set forth in paragraph 56.

57.    Defendants deny the allegations set forth in paragraph 57.

**H.    Facebook's Enforcement Efforts**

58.    Defendants are without sufficient information to form a belief as to the truth of the allegations set forth in paragraph 58 and therefore deny same.

59.    Defendants admit that on October 1, 2020, Facebook filed a civil action in the Superior Court of California, County of San Mateo, case 20-CIV-04256, alleging violations of Facebook and Instagram's Terms on alleged activity of Defendants' UpVoice and Ads Feed browser extensions. Defendants deny that it has ever violated Facebook or Instagram's Terms. Defendants deny the remaining allegations of paragraph 59.

60.    Defendants admit that its UpVoice and Ads Feed browser extensions were removed from the Google Chrome Web Store on October 1, 2020. Defendants deny the remaining allegations of paragraph 60.

**I.    After Plaintiff Revoked Defendants' Access, BrandTotal Created New Accounts and Promoted a New [Allegedly] Malicious Extension**

61.    Defendants admit that, after October 3, 2020, a BrandTotal employee created a

Facebook account with the name "Jack Buch" and an Instagram account with the name "Jack_Back." Defendants deny the remaining allegations of paragraph 61.

62.    Defendants admit on October 12, 2020, a developer version of UpVoice was published to the Google Chrome Web Store and inadvertently made briefly public.  Defendants deny that this version of UpVoice was purposefully made public the Google Chrome Web Store.  Defendants also deny that it has ever created a "malicious extension."  Defendants deny the remaining allegations of paragraph 62.

63.    Defendants deny that it has ever created a "malicious extension." Defendants deny the remaining allegation of paragraph 63.

### J.    Defendants [Allegedly] Unjustly Enriched Themselves and Harmed Facebook

64.    Defendants deny the allegations set forth in paragraph 64.

65.    Defendants deny the allegations set forth in paragraph 65.

66.    Defendants deny the allegations set forth in paragraph 66.

### FIRST CAUSE OF ACTION

### (Breach of Contract)

67.    Defendants incorporate herein their responses to paragraphs 1-66 above as though fully set forth herein.

68.    Defendants admit that beginning in December 2016, Defendants, through their employees and agents, created multiple Facebook and Instagram accounts. Defendants deny the remaining allegations set forth in paragraph 68.

69.    Defendants are without sufficient information to form a belief as to the truth of the allegations contained in paragraph 69 and therefore deny same.

70.    Defendants deny the allegations set forth in paragraph 70.

71.    Defendants deny the allegations set forth in paragraph 71.

72.    Defendants deny the allegations set forth in paragraph 72.

73.    Defendants deny the allegations set forth in paragraph 73.

1

2

**SECOND CAUSE OF ACTION**

**(Unjust Enrichment)**

3      74.    Defendants incorporate herein their responses to paragraph 1-73 above as though

4    fully set forth herein.

5      75.    Defendants deny the allegations set forth in paragraph 75.

6      76.    Defendants deny the allegations set forth in paragraph 76.

7      77.    Defendants deny the allegations set forth in paragraph 77.

8      78.    Defendants deny the allegations set forth in paragraph 78.

9      79.    Defendants deny the allegations set forth in paragraph 79.

10     80.    Defendants deny the allegations set forth in paragraph 80.

11

**THIRD CAUSE OF ACTION**

12

**(Computer Fraud and Abuse Act, 18 U.S.C. § 1030)**

13     81.    Defendants incorporate herein their responses to paragraph 1-80 above as though

14   fully set forth herein.

15     82.    Defendants deny the allegations set forth in paragraph 82.

16     83.    Defendants deny the allegations set forth in paragraph 83.

17     84.    Defendants deny the allegations set forth in paragraph 84.

18     85.    Defendants deny the allegations set forth in paragraph 85.

19     86.    Defendants deny the allegations set forth in paragraph 86.

20

**FOURTH CAUSE OF ACTION**

21

**(California Penal Code § 502)**

22     87.    Defendants incorporate herein their responses to paragraph 1-86 above as though

23   fully set forth herein.

24     88.    Defendants deny the allegations set forth in paragraph 88.

25     89.    Defendants deny the allegations set forth in paragraph 89.

26     90.    Defendants deny the allegations set forth in paragraph 90.

27     91.    Defendants deny the allegations set forth in paragraph 91.

28

1    92.    Defendants deny the allegations set forth in paragraph 92.

2    93.    Defendants deny the allegations set forth in paragraph 93.

3    94.    Defendants deny the allegations set forth in paragraph 94.

4    95.    Defendants deny the allegations set forth in paragraph 95.

5                    **FIFTH CAUSE OF ACTION**

6               **(Interference with Contractual Relations)**

7    96.    Defendants incorporate herein their responses to paragraph 1-95 above as though

8    fully set forth herein.

9    97.    Defendants deny the allegations set forth in paragraph 97.

10   98.    Defendants deny the allegations set forth in paragraph 98.

11   99.    Defendants deny the allegations set forth in paragraph 99.

12   100.   Defendants deny the allegations set forth in paragraph 100.

13   101.   Defendants deny the allegations set forth in paragraph 101.

14   102.   Defendants deny the allegations set forth in paragraph 102.

15                  **SIXTH CAUSE OF ACTION**

16   **(Unlawful, Unfair or Fraudulent Business Practices against Defendants)**

17   103.   Defendants incorporate herein their responses to paragraph 1-102 above as though

18   fully set forth herein.

19   104.   Defendants deny the allegations set forth in paragraph 104.

20   105.   Defendants deny the allegations set forth in paragraph 105.

21   106.   Defendants deny the allegations set forth in paragraph 106.

22   107.   Defendants deny the allegations set forth in paragraph 107.

23   108.   Defendants deny the allegations set forth in paragraph 108.

24   109.   Defendants deny the allegations set forth in paragraph 109.

25   110.   Defendants deny the allegations set forth in paragraph 110.

26                    **PRAYER FOR RELIEF**

27   No response to Facebook's prayer for relief is necessary. To the extent a response is

28

required, Defendants deny any and all allegations contained in the prayer for relief. Defendants further deny that Facebook is entitled to any of the requested relief.

## AFFIRMATIVE DEFENSES

Defendants assert the following Affirmative Defenses in response to the Complaint. Defendants reserve the right to amend its response to add additional Affirmative Defenses or Counterclaims as they become known throughout the course of discovery in this case. Assertion of a defense is not a concession that Defendants have the burden of proving the matter asserted.

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

The Complaint fails to state a claim upon which relief can be granted because Defendants have not performed any act, and is not proposing to perform any act, in violation of any rights validly belonging to Facebook.

## SECOND AFFIRMATIVE DEFENSE

### (Equitable Estoppel)

Facebook is equitably estopped from pursuing its claims because (1) Facebook knew of Defendants' UpVoice and Ads Feed products since at least 2018, when Defendants began advertising on Facebook; (2) Facebook's silence with respect to Defendants' products led Defendants to believe that Facebook did not intend to enforce its alleged rights under its Terms of Service; (3) Defendants were unaware that Facebook objected to their activities; and (4) Defendants detrimentally relied on Facebook's omissions.

## THIRD AFFIRMATIVE DEFENSE

### (Laches)

Facebook's claims are barred by laches because (1) Facebook's delay in filing suit was unreasonable; and (2) Defendants would suffer prejudice caused by the delay if the suit were to continue.

## FOURTH AFFIRMATIVE DEFENSE

### (Unconscionability)

1    Facebook's claims are barred because the Facebook Terms of Use are unconscionable

2 contract of adhesion.

3                          **FIFTH AFFIRMATIVE DEFENSE**

4                                 **(Public Policy)**

5         Facebook's claims are barred because the Facebook Terms of Use, as applied

6 against Defendants, is contrary to public policy and therefore void and unenforceable.

7                          **SIXTH AFFIRMATIVE DEFENSE**

8                             **(Contract Termination)**

9    Facebook's claims are barred because, to the extent Defendants were parties to the

10 Facebook Terms of Use, that contract was terminated at least when Facebook disabled

11 Defendant's Facebook accounts.

12                        **SEVENTH AFFIRMATIVE DEFENSE**

13                                **(Unclean Hands)**

14    Facebook's claims are barred by the doctrine of unclean hands because of Facebook's

15 own patterns and practices with respect to (1) its use of user data found on the Facebook

16 platforms, and (2) its conduct with respect to other developers or third parties' use of data found

17 on Facebook.

18

19

20

21

22

23

24

25

26

27

28

## COUNTERCLAIMS

Defendants/Counterclaim Plaintiffs BrandTotal Ltd. and Unimania, Inc. (collectively, "BrandTotal"), in support of the following Counterclaims against Plaintiff/Counterclaim Defendant Facebook, Inc. ("Facebook"), hereby alleges as follows:

## NATURE OF THE ACTION

1.     These are civil counterclaims brought by BrandTotal alleging Facebook intentionally interfered with BrandTotal's contracts and committed unfair competition violations of the California Business & Professions Code § 17200, *et seq*. by both sending a takedown request to Google to have BrandTotal's products (*i.e.*, the "UpVoice" and "Ads Feed" browser extensions) taken of the Google Chrome Web Store and denying BrandTotal's access to Facebook's social media platforms.

## PARTIES

2.     Upon information and belief, Facebook is a Delaware corporation with its principal place of business in Menlo Park, San Mateo County, California.

3.     BrandTotal Ltd. was incorporated in Israel on November 20, 2016 and is headquartered in Israel. BrandTotal Ltd. has a subsidiary named BrandTotal, Inc. that was incorporated in Delaware on November 13, 2017, has an office in New York, NY, and sells BrandTotal's services in the U.S.

4.     Unimania, Inc. was incorporated in the State of Delaware on November 27, 2017.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over BrandTotal's Counterclaims pursuant to 28 U.S.C. § 1367 because the Counterclaims arise out of the same common set of facts and conduct as Facebook's alleged federal claims for relief.

6.     This Court has personal jurisdiction over Facebook because Facebook's principal place of business is within this judicial district. Facebook has also transacted business and engaged in commerce in this judicial district by, among other things, distributing its social media platforms, including Facebook and Instagram, to users in this judicial district.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Facebook conducts substantial business within this judicial district and a substantial part of the acts or omission giving rise to BrandTotal's Counterclaims occurred in this judicial district.

## **FACTUAL BACKGROUND**

A.      **BrandTotal's Business Model**

8.      BrandTotal is a premier advertising consulting company offering competitive analyses of advertising efforts on social media sites like Facebook, Instagram, Twitter, YouTube, LinkedIn, Amazon and others. Just as companies used to track competitive advertising in print, on billboards and on TV in years past, there is a need today to understand advertising across the many on-line channels that people see. Fortune 500 companies and others want analytical intelligence not only about how their own advertising is received on social media sites, but also how competitors' ads are viewed and perceived. BrandTotal provides this service.

9.      In BrandTotal's most popular offering, willing participants download a browser extension called UpVoice that allows BrandTotal to collect information about the participant's advertising interactions.

10.      Unlike other companies, BrandTotal offers participants cash gift cards in exchange for the information, and only collects information with the participants' informed consent and deliberate opt-in.

11.      Individuals must voluntarily choose to sign up for UpVoice, confirm they have read the privacy policy which details the demographic and advertising (not privacy related at all) information BrandTotal collects, and then install the UpVoice Chrome browser extension.

12.      BrandTotal and its customers only desire a user's data as aggregated by general demographics and as related to advertising.

13.      The UpVoice extension does not impact the performance on the individual's device or web browser. Rather, with the user's explicit consent, it allows BrandTotal to collect data the user either owns or has a right to access and certain public information about the websites the user

visits.

14.     With the participant's consent and after they deliberately install the extension in exchange for compensation, BrandTotal is able to collect information about the ads they see and interact with on social media sites like Facebook, as they browse as usual on those sites.

15.     BrandTotal's customers are companies that advertise on social media and whose competitors advertise on social media, and they seek generalized information about the ads participants see.

16.     When an UpVoice participant navigates to Facebook, BrandTotal collects deidentified information about the user by using hashed values for the user's device and user IDs.

17.     BrandTotal does not collect the user's names or email addresses, although the user provides that when they sign up. BrandTotal does not keep or compile participants' private postings, photos, or web history, nor does BrandTotal mine "friend" information, or otherwise take data not expressly authorized. Rather, the information collected relates to who is seeing what advertisement, where and at what times.

18.     BrandTotal anonymizes and aggregates the data by demographic info (age, gender, high level location, marital status, interests), in order to provide summary information to companies about the viewership of advertisings.

**B.     Facebook's Public User Content**

19.     Facebook, including its Instagram product, comprises the world's largest social network, with over 2.7 billion monthly active users. Facebook users sign up, and then can choose to share information about themselves.

20.     Anyone with a Facebook or Instagram account can create and place ads on Facebook and Instagram. Every week, users and businesses place millions of ads through Facebook's ad platform, which provides advertisers with many options for reaching audiences.

21.     Facebook's terms and conditions (in their current form) state that "you may not access or collect data from our Products using automated means (without our prior permission) or attempt to access data you do not have permission to access." *See*

https://www.facebook.com/legal/terms. The "without our prior permission" means that Facebook purports to be able to pick and choose who it will be allowed to access the information. At the same time, Facebook's terms and conditions acknowledge that users own the rights in their own information.

22.     Facebook uses its users' information to provide advertising consulting services to its advertising customers. Facebook's website confirms this extensive program, noting that it also aggregates and sells user data to advertisers and other companies. *See* https://www.facebook.com/privacy/explanation. This data includes "the kinds of people" seeing advertisements on its platform (i.e., "general demographic and interest information") and user online activity (i.e., "activity off our Products, such as the websites you visit and ads you see" and interactions with "posts, listings, Pages, videos and other content on and off Facebook products").

**C.     Facebook Shut Down BrandTotal's Business without Any Notice**

23.     Despite BrandTotal engaging in its data collection and advertising consulting business since 2016 and despite Facebook admitting that it employs sophisticated means to detect what it considers to be undesirable, competitive uses of "data scraping," it never once before contacted BrandTotal in any way to raise any concerns.

24.     Indeed, while BrandTotal ran ads about its services on the Facebook website since at least 2018, Facebook never once contacted BrandTotal to raises concerns about anything BrandTotal was doing.

25.     Recently, Facebook suspended BrandTotal's Facebook and Instagram pages, as well as the personal pages of BrandTotal's principals and contacted Google to shut down BrandTotal's UpVoice browser extension.

26.     On October 2, Google removed the UpVoice extension, along with other BrandTotal-related extensions, leading to a near complete shutdown of BrandTotal's data that is the life blood of its consulting services.

**D.     The Immediate Harm to BrandTotal Has Been Immense**

27.     The impact on BrandTotal's business from the unilateral actions of Facebook are

immensely harmful to BrandTotal.

28.     Without access to the vast majority of participant data, BrandTotal cannot compile advertising analytics for its customers. Moreover, BrandTotal's current participants cannot login to collect any rewards they have earned, and BrandTotal cannot recruit new participants.

29.     Already current customers -- reputable large companies -- are questioning their relationship with BrandTotal and prospective customers that had completed trials and were in the final stages of negotiation are walking away. BrandTotal relies on receivables from its customers to fund its day-to-day operations.

30.     BrandTotal also cannot secure lending or venture capital to see it through the crisis.

31.     Facebook's decision to bar BrandTotal from their platforms, and to send take down notices to Google without advance notice or dialogue with BrandTotal, has already caused irreparable harm to BrandTotal. BrandTotal is losing business every day and in jeopardy of being insolvent.

## COUNTERCLAIM I

### Intentional Interference with Contract

32.     BrandTotal hereby incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

33.     BrandTotal has valid contracts with each of its clients.

34.     Facebook has knowledge of BrandTotal's valid customer contracts at least for the reason that, as of the time of its Complaint, Facebook had knowledge of BrandTotal's advertisements on Facebook's platform as well as knowledge of BrandTotal and UpVoice's websites.

35.     These customer contracts are endangered by Facebook's conduct.

36.     BrandTotal has given notice to Facebook that its customer relationships and business would be destroyed if BrandTotal's access to Facebook is denied and Facebook does not rescind its request to remove UpVoice from the Google Chrome Web Store.

37.     Facebook's conduct will disrupt or cause the breach of BrandTotal's customer contracts. BrandTotal's entire business is premised on access to public content on social media, the vast majority of which comes from Facebook. Preventing BrandTotal from accessing Facebook will necessarily mean that BrandTotal cannot continue to perform under its contracts with its clients.

38.     As a direct and proximate result of Facebook's conduct, BrandTotal has suffered and will continue to suffer damages, including but not limited to lost business, reputational damage, loss of investor funds, and insolvency. Unless Facebook is restrained by a temporary injunction, preliminary injunction, and a permanent injunction, BrandTotal will suffer severe and irreparable harm in that it will be forced to terminate its contracts with its clients and may be forced out of business entirely.

39.     BrandTotal has requested that it be reinstated, that it be allowed to provide explanatory information, that Facebook's takedown request to Google be rescinded, that its Facebook accounts be restored, and that access should be permitted during that process to avoid irreparable harm. BrandTotal is informed and believes and thereon alleges that, unless the court grants injunctive relief, Facebook will continue to bar BrandTotal from its platform.

40.     BrandTotal has no adequate remedy at law because monetary damages will not afford adequate relief for the loss of BrandTotal's business and customer relationships, client goodwill, reputation in the marketplace, investor relationships, and the ability to continue operating.

41.     BrandTotal prays for relief as set forth below.

## COUNTERCLAIM II

### Intentional Interference with Prospective Economic Advantage

42.     BrandTotal hereby incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

43.     As alleged herein, Facebook has intentionally interfered with BrandTotal's customer contracts and investor opportunities. Facebook committed independent wrongs when it

revoked access to Facebook because: (i) Facebook breached its express promises in their terms of use that its users control access to its information; (ii) Facebook holds only non-exclusive licenses to its users' content, and visitors and the public may access and use its users' publicly available information; and (iii) Facebook violated the California Unfair Competition Law as alleged herein.

44.    Facebook is intentionally and wrongfully disrupting BrandTotal's contracts, investor relationships, and prospective business dealings by barring access to Facebook, upon which BrandTotal's business depends.

45.    As a direct and proximate result of Facebook's conduct, BrandTotal has suffered and will continue to suffer damages, including but not limited to lost business, reputational damage, loss of investor funds, and insolvency. Unless Facebook is restrained by a preliminary injunction and a permanent injunction, BrandTotal will suffer severe and irreparable harm in that it will be forced to terminate its contracts with its clients and may be forced out of business entirely.

46.    BrandTotal has requested that it be reinstated, that it be allowed to provide explanatory information, and that access should be permitted during that process to avoid irreparable harm. BrandTotal is informed and believes and thereon alleges that, unless the court grants injunctive relief, Facebook will continue to bar BrandTotal from Facebook.

47.    BrandTotal has no adequate remedy at law because monetary damages will not afford adequate relief for the loss of BrandTotal's business and customer relationships, client goodwill, reputation in the marketplace, investor relationships, and the ability to continue operating.

48.    BrandTotal prays for relief as set forth below

## COUNTERCLAIM III

**Unfair Competition Violations of California Business & Professions Code § 17200, *et seq***
**(Unlawful, Unfair, and Fraudulent Prongs)**

*49.*    BrandTotal hereby incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

*50.*    Facebook's actions described above constituted unlawful, unfair, and fraudulent

1   acts or practices in the conduct of business, in violation of California's Business and Professions

2   Code § 17200, *et seq*., including actions that are forbidden by other laws.

3       51.     For example, Facebook's termination of access to Facebook and request to remove

4   UpVoice from the Google Web Store violates the policy or spirit of antitrust law. Facebook is

5   using its dominant presence as the world's largest social media platform to assume exclusive

6   proprietary control over public data that is not owned by Facebook, but by its users, and which

7   those users have explicitly designated as public content.

8       52.     Indeed, Facebook promises users that it will have the ability to control public access

9   to its data to incentivize users to join Facebook. Facebook's recent and threatened actions thus

10   suppress competition and violate the core principles and spirit of the unfair competition and

11   antitrust laws.

12      53.     By revoking or limiting BrandTotal's access to publicly available data, Facebook is

13   unfairly limiting BrandTotal's ability to compete with Facebook's advertising offerings and with

14   BrandTotal's industry competitors who also rely on content from Facebook.

15      54.     There is no viable alternative to Facebook's social media platforms for obtaining

16   current content for marketing and advertising purposes. Facebook is the world's largest social

17   network with over 2.4 billion monthly active users. Use of other social media platforms with

18   available public user content is not a reality given Facebook's total domination of the market.

19      55.     There is no technical barrier or subsequent cost to Facebook in providing access to

20   BrandTotal.

21      56.     The impact of Facebook's actions on BrandTotal is devastating; its customer

22   contracts, and investor and employee relationships are threatened and may be damaged beyond

23   repair.

24      57.     Facebook allows competitors of BrandTotal and others to access this content

25   without complaint, and Facebook never even hinted at any concrete harm that BrandTotal's access

26   in this manner could cause to Facebook or its users.

27      58.     As alleged herein, Facebook's tortious interference with BrandTotal's current and

28

1    prospective business, contractual, and investor relationships are unlawful.

2        59.    Facebook's actions are also fraudulent because Facebook made clear promises to

3    their users in their terms of use that the users own their content, control their privacy settings, and

4    that Facebook holds only nonexclusive licenses to the content.

5        60.    These statements are likely to deceive the public, as Facebook is actually

6    controlling who can access user content and whether the information will be public.

7        61.    As a direct and proximate result of Facebook's conduct, BrandTotal has suffered

8    and will continue to suffer the loss of money and property, including but not limited to lost

9    business, lost investments, and imminent insolvency

10       62.    BrandTotal has no adequate remedy at law because monetary damages will not

11   afford adequate relief for the loss of BrandTotal's customer and investor relationships, business

12   goodwill, and the ability to continue operating as a viable business.

13       63.    BrandTotal prays for relief as set forth below.

14                             **COUNTERCLAIM IV**

15                    **Declaratory Judgment of No Breach of Contract**

16       64.    BrandTotal hereby incorporates by reference the allegations of the preceding

17   paragraphs as though fully set forth herein.

18       65.    BrandTotal has never violated any section of Facebook or Instagram's Terms of

19   Service.

20       66.    BrandTotal's access to Facebook's products has never been unlawful, misleading,

21   or fraudulent.

22       67.    BrandTotal's browser extensions have never impaired the proper working

23   appearance or the intended operation of any Facebook product.

24       68.    BrandTotal's browser extensions have never accessed any Facebook product using

25   automated means. Rather, participants have to (1) sign up for the UpVoice, (2) agree to the terms

26   and conditions which disclose the data collected, (3) go to the Google Chrome Web Store and

27   install a browser extension, and then (4) scroll and interact with social media and experience

28

advertising.

69. If these deliberate steps are not taken, no information is collected. This is not "automated."

70. Further, it is the user that makes the decision to allow data they own to be accessed by the UpVoice extension. While BrandTotal offers the service, ultimately it is the user who decides whether their data will be used for the analytics.

71. Therefore, for at least the reasons discussed herein, BrandTotal does not, and has never, breached any of Facebook or Instagram's Terms of Service.

72. As a result of the facts described in the foregoing paragraphs, and in light of Facebook's Complaint, an actual controversy of sufficient immediacy exists between Facebook and BrandTotal as to whether BrandTotal has ever breached, or is currently in breach, of Facebook or Instagram's Terms of Service.

73. BrandTotal prays for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, BrandTotal prays for judgment against Facebook and each of them as follows:

A. For temporary, preliminary, and permanent injunctive relief, pursuant to Federal Rule of Civil Procedure 65, to prevent Facebook from curtailing BrandTotal's access to publicly available information on Facebook's platforms that is essential to BrandTotal's business or otherwise engaging in unfair business practices as described herein;

B. For a declaratory judgment in favor of BrandTotal and against Facebook that Facebook is now and shall remain obligated to reinstate BrandTotal's access to and use of Facebook's platforms and the publicly available content on Facebook;

C. For damages in an amount to be proven at trial that are actually and proximately caused by Facebook's conduct, and prejudgment interest recoverable thereon at the legal rate;

D. For attorney fees and costs of suit as permitted by law; and

E. Such other and further relief as the Court may deem just and proper.

1

2      Date: October 16, 2020                    Respectfully submitted,

3                                                By: */s/ Karl S. Kronenberger*
                                                 Karl Kronenberger (CA Bar No. 226112)
4                                                karl@krinternetlaw.com
                                                 Jeffrey M. Rosenfeld (CA Bar No. 222187)
5                                                jeff@krinternetlaw.com
                                                 KRONENBERGER ROSENFELD, LLP
6                                                150 Post Street, Suite 520
                                                 San Francisco, CA 94108
7                                                415-955-1155 Telephone
                                                 415-955-1158 Facsimile
8
                                                 Rudolph A. Telscher, Jr.*
9                                                rudy.telscher@huschblackwell.com
                                                 Kara R. Fussner*
10                                               kara.fussner@huschblackwell.com
                                                 HUSCH BLACKWELL LLP
11                                               190 Carondelet Plaza, Suite 600
                                                 St. Louis, MO 63105
12                                               314-480-1500 Telephone

13                                               Ryan B. Hauer*
                                                 ryan.hauer@huschblackwell.com
14                                               HUSCH BLACKWELL LLP
                                                 120 South Riverside Plaza Suite 2200
15                                               Chicago, IL 60606
                                                 312-526-1572 Telephone
16
                                                 William E. Corum*
17                                               william.corum@huschblackwell.com
                                                 HUSCH BLACKWELL LLP
18                                               4800 Main Street, Ste. 1000
                                                 Kansas City, MO 64112
19                                               816-983-8000 Telephone

20                                               David Stauss*
                                                 david.stauss@huschblackwell.com
21                                               HUSCH BLACKWELL LLP
                                                 180 1 Wewatta Street, Suite 1000
22                                               Denver, CO 80202
                                                 303-749-7200 Telephone
23                                               *to be admitted *pro hac vice*

24                                               ***Attorneys for Defendants/Counterclaim Plaintiffs
                                                 BrandTotal, Ltd. and Unimania, Inc.***

25

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on this 16th day of October 2020, I caused the foregoing to be filed

3

electronically with the Clerk of Court and to be served via the Court's Electronic Filing System

4

upon all counsel of record.

5

6

*/s/ Karl S. Kronenberger*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28