REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

<u>**Declaration of Oren Dor**</u>

I, Oren Dor, state and declare under penalty of perjury as follows:

1.      I am the Vice President Research and Development of Defendant-Counterclaim Plaintiff BrandTotal Ltd. and the President of Unimania, Inc., a subsidiary company that designs apps that work in connection with BrandTotal's business. Collectively, I refer to both entities herein as "BrandTotal."

2.      I submit this declaration in support of BrandTotal's Motion for Temporary Restraining Order. I am over the age of eighteen and I have personal knowledge of the facts set forth below. If called as a witness, I could and would testify competently to these facts and statements.

*Advertising on Facebook*

3.      In December 2016, BrandTotal opened a Facebook account on behalf of the company.

4.      As a Facebook account holder, BrandTotal was able to pay Facebook to advertise BrandTotal's products, including UpVoice.

5.      After 3.5 years without any complaint from Facebook and without warning, Facebook terminated BrandTotal's account. BrandTotal paid Facebook to advertise Brandtotal's services, including UpVoice throughout those 3.5 years. Facebook also terminated some of BrandTotal's employees' personal accounts.

6.      BrandTotal's paid advertising on Facebook allowed it to secure panelists for its services, including UpVoice.

*UpVoice Panelist Experience*

7.      BrandTotal's UpVoice platform pays individuals for their consent to collect panelist demographics and ads data for market research purposes while they use the internet.

1

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

8.      Individuals who voluntarily consent to become UpVoice panelists sign up at
www.joinupvoice.com.

9.      As part of the signup process, individuals provide BrandTotal with their name,
email address, and city.

10.     Individuals are presented with UpVoice's Privacy Policy and must agree to it.

11.     UpVoice's Privacy Policy contains detailed disclosures about the information that
BrandTotal collects from individuals and how BrandTotal uses that information.

12.     BrandTotal also makes available a Data & Privacy FAQ on its website, which
provides further privacy disclosures.

13.     After an individual signs-up, they are directed to the Google Chrome Web Store to
install the UpVoice Chrome browser extension.

14.     With the panelist's explicit consent, the extension allows BrandTotal to collect data
the panelist either owns or has a right to access about the websites the panelist visits, as described
more fully below.

███████████████████

   ██   ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

███   ███████████████████████████████████████████

███████████████████████████

***Sharing of Deidentified and Aggregate Information with Clients***

23.     When we share information with our clients it is done on an aggregate and deidentified basis. As discussed above, when we collect information from platforms such as Facebook, we do so only on a deidentified basis, i.e., we do not associate the information with a panelist's name or email address. Additionally, our clients only see aggregate information for all of our panelists, not individual-level information.

***The New UpVoice Instance***

24.     After the UpVoice browser extension was taken down from the Google Chrome store and Facebook sued BrandTotal in State Court, we began preparing these submissions (originally intended for State Court) with the expectation of moving for a temporary restraining order that would ultimately allow us to get our data feed up and running again.

25.     As part of the effort to have the infrastructure in place for us to restart if successful in our State Court actions, I prepared a new UpVoice instance and got it approved by Google.

26.     In the course of this approval process, the instance was inadvertently set-up as public, instead of unlisted.  This occurred on or around October 14, 2020 at 5 a.m. Eastern Time.

27.     As soon as we noticed the error (about 36 hours later), we changed it back to unlisted.

28.     Facebook has contended this was "deceptively" done, but there was nothing deceptive or malicious in this event.  The public listing was truly inadvertent.

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

29.     Moreover, we did not promote this instance.  We did not update the link on the UpVoice website.  We did not communicate with current UpVoice users urging them to reinstall UpVoice using the new instance. And the instance itself was set to an internal development environment meaning no data flowed into production.

\* \* \*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 15th day of October 2020.

Oren Dor
_____
Oren Dor