**Supplemental Declaration of Oren Dor**

I, Oren Dor, state and declare under penalty of perjury as follows:

1.   I am the Vice President of Research and Development of Defendant/Counterclaim Plaintiff BrandTotal Ltd. and the President of Defendant-Counterclaim Plaintiff Unimania, Inc., a subsidiary company that designs apps that work in connection with BrandTotal's business. Collectively, I refer to both entities herein as "BrandTotal."

2.   I submit this supplemental declaration, in addition to my declaration dated October 15, 2020, in support of BrandTotal's Reply to its Motion for Temporary Restraining Order. I am over the age of eighteen and I have personal knowledge of the facts set forth below. If called as a witness, I could and would testify competently to these facts and statements.

3.   I have reviewed Facebook's declarations of Mike Clark and Sanchit Karve that were submitted in support of Facebook's opposition to BrandTotal's *ex parte* motion for a temporary restraining order. I have also reviewed Facebook's opposition brief. Those papers contain many inaccuracies regarding BrandTotal's business, including with respect to UpVoice.

4.   I authorized counsel to offer for Facebook to have their technical personnel to meet with me to better understand the data we collect and how we collect it but to date, Facebook has not accepted this invitation. I also understand from the Karve declaration that Facebook first started to investigate our company in April 2020. At no point did Facebook ever contact us prior to this lawsuit to try and understand what data we collect or the collection procedures.

5. I submit this supplemental declaration to correct and clarify the record to some of Facebook's misstatements as they relate to BrandTotal's motion.[1]

*UpVoice Users Are Aware of the Exact Personal Information UpVoice Collects*

6. As discussed in my first declaration, UpVoice panelists agree to UpVoice's privacy policy when they sign up for the service. A true and correct copy of that policy is attached to this declaration as Exhibit R.

7. The first section of the privacy policy is titled "**WHAT INFORMATION WE COLLECT, WHY WE COLLECT IT, AND HOW IT IS USED**." In this section, we provide a table explaining the following:

- "Personal Data we collect"
- "Sources – where we obtain the personal information from (CCPA only, if applicable)"
- "What is the data collected and for what purposes?"
- "Legal basis for data collection (GDPR only, if applicable)"
- "Third parties with whom we share your data"
- "Consequences of not providing the data"

8. The table goes on to explain the "personal data" we collect when a panelist logs into Facebook. This portion of the table is titled "***When you login through you [sic] Facebook account***." In that section, we describe the exact personal data UpVoice collects through Facebook, as shown in the following screenshot:

---

[1] Facebook's opposition brief and declarations make many false allegations related to BrandTotal browser extensions that are not UpVoice. It is my understanding that BrandTotal's TRO is only related to the UpVoice extension. Therefore, although I disagree with Facebook's non-UpVoice allegations, and plan to provide testimony regarding those allegations as this case progresses, I do not address non-UpVoice allegations here.

> We collect the following personal data as part of your registration/qualification to the Panel (via the Panel App):
> (i) Name (first, last);
> (ii) Email address;
> (iii) Date of birth
> (iv) gender
> (v) country
> (vi) City
> (vii) State (US only); and
> (viii) General demographic and profile information, which we collect from you from the qualification form.

9.  The screenshot above shows the entire universe of personal information UpVoice collects from a Facebook user. By acknowledging and agreeing to this privacy policy, UpVoice panelists are fully aware that we collect this information.

10. As discussed in my first declaration, and consistent with UpVoice's privacy policy, **UpVoice never collects a panelist's Facebook user ID, password, or profile picture**. There is no technical need for UpVoice to collect a user's Facebook user ID, password, or profile picture to provide data analytics to our customers via UpVoice.

*The Facebook Accounts Were Not Related to UpVoice*

11. On October 3, 2020, after my personal Facebook and Instagram accounts were disabled by Facebook in connection with this litigation, I created a new Facebook account and a new Instagram account. These accounts were created for purely personal reasons and had nothing to do with the operation of any BrandTotal extension. For example, I used these

accounts to check the news related to this litigation so that I could see how our panelists were reacting to Facebook's actions.

12. BrandTotal and UpVoice's Facebook accounts served the important, but non-technical, purposes of advertising BrandTotal's products and interacting with BrandTotal's products' user base and customers.

*The October Developer Version of UpVoice Was Never "Re-Published"*

13. As discussed in my first declaration, a developer version of UpVoice was inadvertently published to the Google Chrome Web Store on or around October 14, 2020 at 5 a.m. Eastern Time.

14. To further clarify, this developer version was originally set up (inadvertently as public) on October 12, 2020.

15. On October 14, 2020, BrandTotal changed the status of the UpVoice extension to "unlisted," instead of public. When an extension is "unlisted" in the Google Chrome Web Store, the extension is not available using the search function of the Store's extensions directory. That is, when unlisted, the extension can only be accessed via a direct link.

16. On or around October 18th, we noticed that a small number of panelists were still accessing the extension. We speculated that this was due to a direct link posted to Reddit.com. As such, on that day, we changed the extension to "unpublished" status, which completely removed the extension from the Google Chrome Store.[2]

17. As noted in my first declaration, there was nothing deceptive about the actions. The public listing, along with the surprise that UpVoice enthusiasts on Reddit had the link to the

---

[2] In my first declaration, paragraph 27, I inadvertently used the word "unlisted" instead of "unpublished" to describe our actions.

unlisted product, was truly inadvertent. Moreover, BrandTotal never promoted this instance of UpVoice in any way. This was not an effort by BrandTotal to reinitiate data flow using UpVoice.

*The AdGuard Report Pointed Out a Non-UpVoice Security Weakness, Which Was Immediately Fixed*

18. Facebook points to a May 20, 2018 report by AdGuard to argue that BrandTotal does not deidentify personal data. *See, e.g.*, Karve Decl. at ¶¶ 24-26.

19. As an initial matter, the AdGuard report has nothing to do with UpVoice. Thus, it is irrelevant for the purposes of BrandTotal's TRO.

20. In any event, the portion AdGuard report Facebook discusses pointed out a non-UpVoice security weakness that was occurring in other BrandTotal extensions related to "static salt" to hash user IDs. Upon being informed of the report, we took immediate action to convert to hashing that uses a "random salt" *and* re-hashed existing hashed ids in our database with a "random salt." This ensures that any personal information obtained through Facebook, or any other social media site, is completely deidentified.

*Facebook has approved BrandTotal advertisements with "participating site" language*

21. Since UpVoice launched, BrandTotal itself has purchased advertisements on Facebook promoting both UpVoice and BrandTotal's data analytics services.

22. Per Facebook's terms, in order to publish an ad, Facebook must pre-approve of the exact ad to be run on the site.

23. A true and correct copy of four BrandTotal ads that were run on Facebook, and were thus Facebook approved, are attached to this declaration as Exhibits S, T, U, and V.

24. As shown by the red box in Exhibit S, Facebook approved of an ad that mentioned "participating sites."

* * *

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed this 22nd day of October 2020.

*Oren Dor*
Oren Dor