# EXHIBIT A

| | |
|---|---|
| **From:** | Mehta, Sonal |
| **To:** | Telscher, Rudy; Kim, Jason J. |
| **Cc:** | Mortimer, Ann Marie; Holtzblatt, Ari; Harris, Marsha; Fussner, Kara; Corum, William; Hauer, Ryan; Hitchens, A. Lauren; Hauer, Ryan |
| **Subject:** | RE: Settlement Discussions/Data Needs |
| **Date:** | Friday, October 30, 2020 6:42:12 PM |
| **Attachments:** | image001.png<br>image002.png<br>image003.png |

Rudy,

I wanted to follow-up with a clarification and some additional information to supplement the information we provided below. Facebook's Ad Library includes much of the data your clients are asking for (including the number of impressions, ad ID, potential reach, and even demographic information including gender, age, and geography of who was shown the ad) for ads that are categorized as relating to social issues, elections, or politics but not for all ads. The former is defined fairly broadly, which is why the ad from Crate and Barrel we showed as an example was included. You can find ads for a number of other brands in that category as well. There are also ads that are outside of that category, for which the Ad Library includes the complete ad (image and text), the date on which the ad started running on FB or other platform, the ad ID, URL for the ad in the ad library, the name of the ad sponsor (FB Page), number of followers the sponsor has on IG and number of likes for that Page on FB, etc. These ads can be searched by FB Page name and can be filtered by location (country), platform (FB, IG, Audience Network, and Messenger), and dates on which there were impressions.

We hope this additional information is helpful as your team reviews the Ad Library, APIs (including those we mentioned), and developer documentation.

Best,

**Sonal N. Mehta | WilmerHale**
950 Page Mill Road
Palo Alto, CA 94304 USA
+1 650 600 5051 (t)
+1 650 858 6100 (f)
sonal.mehta@wilmerhale.com

---

**From:** Mehta, Sonal
**Sent:** Friday, October 30, 2020 12:12 PM
**To:** Telscher, Rudy <Rudy.Telscher@huschblackwell.com>; Kim, Jason J. <kimj@hunton.com>
**Cc:** Mortimer, Ann Marie <amortimer@hunton.com>; Holtzblatt, Ari <Ari.Holtzblatt@wilmerhale.com>; Harris, Marsha <Marsha.Harris@huschblackwell.com>; Fussner, Kara <Kara.Fussner@huschblackwell.com>; Corum, William <William.Corum@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Hitchens, A. Lauren <Lauren.Hitchens@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>
**Subject:** RE: Settlement Discussions/Data Needs

Rudy,

Can you please explain the basis for the statement: "To our knowledge, the information regarding non-political ads is limited to ad image and text. The more detailed metrics about the ads are not available to our knowledge through the Ad Library or related APIs." In our earlier email we included several screenshots of data available from the Ad Library for a **non-political ad** that show that the Ad Library can provide much of the data your clients are asking for, including the number of impressions, ad ID, potential reach, and even

demographic information including gender, age, and geography of who was shown the ad.  We also pointed you to developer documentation about the APIs, but it does not appear that anyone on your side has looked at them to see how Defendants' business needs can be met with the available data and through established channels. Given that, your suggestion that "Facebook simply has no interest in providing the data BrandTotal needs" does not make sense.

Let us know when your folks review the Ad Library data for non-political ads and the relevant APIs and developer documentation, and have worked out how they will access the information that they need through established channels. As we have said before, once Defendants have determined how they will work through those channels, we can work to finalize the remediation agreement referenced below and to discuss resolution of the lawsuit.

Best,

**Sonal N. Mehta | WilmerHale**
950 Page Mill Road
Palo Alto, CA 94304 USA
+1 650 600 5051 (t)
+1 650 858 6100 (f)
sonal.mehta@wilmerhale.com

---

**From:** Telscher, Rudy <Rudy.Telscher@huschblackwell.com>
**Sent:** Thursday, October 29, 2020 12:21 PM
**To:** Mehta, Sonal <Sonal.Mehta@wilmerhale.com>; Kim, Jason J. <kimj@hunton.com>
**Cc:** Mortimer, Ann Marie <amortimer@hunton.com>; Holtzblatt, Ari <Ari.Holtzblatt@wilmerhale.com>; Harris, Marsha <Marsha.Harris@huschblackwell.com>; Fussner, Kara <Kara.Fussner@huschblackwell.com>; Corum, William <William.Corum@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Hitchens, A. Lauren <Lauren.Hitchens@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>
**Subject:** RE: Settlement Discussions/Data Needs

**EXTERNAL SENDER**

Sonal,

Thank you for your response as well.  We are fine with how these discussions will be treated for now.  We can reassess later whether to put a formal agreement in place.  I think both sides feel slighted by the settlement process to date, and I will leave it at that.

Our client was familiar with Facebook's Ad Library and what information is available for political versus non-political ads.  To our knowledge, the information regarding non-political ads is limited to ad image and text.  The more detailed metrics about the ads are not available to our knowledge through the Ad Library or related APIs.  We have provided a list below of the data BrandTotal needs to effectively run its business.  Facebook obviously knows its site best, so if we are incorrect about what is publicly available, please let us know.

If Facebook would agree to some method of providing such data to BrandTotal, we believe the remediation issues could readily be resolved because BrandTotal's data needs would be resolved.  We believe the most efficient method to explore both fronts is to get technical and business representatives from both sides together to begin such discussions.  Of course, it might be that Facebook simply has no interest in providing

the data BrandTotal needs, in which case, we merely need to know that.

Best regards,

Rudy


**Rudy A. Telscher**
**Partner**
Direct:   314.345.6227
Rudy.Telscher@huschblackwell.com

---

**From:** Mehta, Sonal <Sonal.Mehta@wilmerhale.com>
**Sent:** Wednesday, October 28, 2020 3:29 PM
**To:** Telscher, Rudy <Rudy.Telscher@huschblackwell.com>; Kim, Jason J. <kimj@hunton.com>
**Cc:** Mortimer, Ann Marie <amortimer@hunton.com>; Holtzblatt, Ari <Ari.Holtzblatt@wilmerhale.com>; Harris, Marsha <Marsha.Harris@huschblackwell.com>; Fussner, Kara <Kara.Fussner@huschblackwell.com>; Corum, William <William.Corum@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Hitchens, A. Lauren <Lauren.Hitchens@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>
**Subject:** RE: Settlement Discussions/Data Needs

[EXTERNAL EMAIL]

Rudy,

Thanks for your note.

At the outset, I want to clarify that this communication is not a settlement communication. Given the history of the parties' discussions, including Defendants' reliance on settlement communications even after they asked Facebook to agree treat such communications as confidential, Facebook does not agree that Defendants can unilaterally designate certain communications as settlement communications or not settlement communications, or as happened last week, belatedly seek to create a one-sided non-settlement record of settlement communications to be able to rely on them in the court proceedings. If Defendants wish to have confidential settlement communications, I think we should enter into an agreement that specifies the confidentiality parameters around those communications. In the interim, we are happy to start this discussion with the understanding that the parties are not going to unilaterally decide which communications are and are not settlement communications unless and until those parameters are agreed upon.

In the interim, and as we have said, Facebook stands ready to discuss the remediation process that we would expect to follow here as we have with others that have violated Facebook's terms and policies. We appreciate your confirmation that Defendants are now willing to undertake that process. The basic parameters of Facebook's remediation process, which would be memorialized in a written agreement, are as follows:

- Defendants agree to delete non-public information collected from password-protected locations on Facebook and Instagram and/or through BrandTotal and Unimania app(s) and extensions and certify the deletion of that information;

- Defendants agree to delete the misappropriated session tokens and session ids;

- Defendants agree to provide a list of all accounts associated with those tokens and ids;

- Defendants agree to notify consumers who had their session tokens and session ids misappropriated;

- Defendants agree to removal of all extensions and apps scraping data from Facebook and Instagram from web stores, and execute agreement not to republish them;

- Defendants agree to provide Facebook with the names of entities with which any data was sold or shared;

- Defendants agree to a data audit and future audits at Facebook's request, which is part of the Facebook Platform Policy; and

- Additional violations of Facebook's terms and policies would result in a permanent revocation of access and Defendants would bear the cost associated with enforcement of Facebook's terms.

Further, as we communicated before the hearing, Facebook is happy to talk to Defendants about ways that Defendants can bring themselves into compliance with Facebook's terms and policies. We reiterate that the first step would be for Defendants' engineers to look at Facebook's APIs, Ad Library, terms, etc. to see how Defendants can accomplish their business goals within the established rules and mechanisms for third-party access to the platform. While Defendants have now provided a list of data that they are seeking from the platform, it does not appear that Defendants have reviewed the Ad Library and available APIs to determine what information is available through established channels. The APIs provide authorized access to a broad range of end points for developers that wish to access the platform; for example, there are APIs that provide advertising information and to public page content access information. And because the APIs are available to, and used by, thousands and thousands of developers who seek to develop apps for the platform, Facebook has provided detailed, publicly-available developer documentation about the APIs and the developer and app registration process on its Facebook for Developers site (https://developers.facebook.com/).

The Ad Library, which is both public and has an API for developers, also appears to provide a lot of the data that Defendants are asking for, including the number of impressions, ad ID, potential reach, and even demographic information including gender, age, and geography of who was shown the ad.








We would, again, ask Defendants to review the Ad Library and the APIs to determine how best to access the information that they need through established channels.  Once Defendants have determined how they will work through those channels, we can work to finalize the remediation agreement referenced above and to discuss resolution of the lawsuit.

Best,

**Sonal N. Mehta | WilmerHale**
950 Page Mill Road
Palo Alto, CA 94304 USA
+1 650 600 5051 (t)
+1 650 858 6100 (f)
sonal.mehta@wilmerhale.com

**From:** Telscher, Rudy <Rudy.Telscher@huschblackwell.com>
**Sent:** Tuesday, October 27, 2020 11:49 AM
**To:** Kim, Jason J. <kimj@hunton.com>; Mehta, Sonal <Sonal.Mehta@wilmerhale.com>
**Cc:** Mortimer, Ann Marie <amortimer@hunton.com>; Holtzblatt, Ari <Ari.Holtzblatt@wilmerhale.com>; Harris, Marsha <Marsha.Harris@huschblackwell.com>; Fussner, Kara <Kara.Fussner@huschblackwell.com>; Corum, William <William.Corum@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Hitchens, A. Lauren <Lauren.Hitchens@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>
**Subject:** Settlement Discussions/Data Needs

**EXTERNAL SENDER**

_____

Sonal,

Per the direction of the Court yesterday, we wish to explore whether there is a resolution with Facebook that would involve Facebook providing access to the following data through an API or otherwise:

Demographic data: gender, date of birth (month) ,date of birth (year), location – country,location - state, location - dma, relationship status, user interests
Impression data: time seen, creative id, ctr, organic reach

Per your email yesterday, our client is willing to go through a remediation process.  More specifically, we are happy to discuss taking down all extensions.  What remains are minor in any event.  Per an email that Bill Corum previously sent, we had already taken action to address the issues that Facebook had raised regarding actions after the Complaint was filed.  If there are any other outstanding issues, we are also happy to address them.

We look forward to hearing from you.

Best regards,

Rudy

**Rudy A. Telscher**
**Partner**
Direct:   314.345.6227
Rudy.Telscher@huschblackwell.com

---

**From:** Telscher, Rudy
**Sent:** Wednesday, October 21, 2020 2:55 PM
**To:** 'Kim, Jason J.' <kimj@hunton.com>; 'Mehta, Sonal' <Sonal.Mehta@wilmerhale.com>
**Cc:** 'Mortimer, Ann Marie' <amortimer@hunton.com>; 'Holtzblatt, Ari' <Ari.Holtzblatt@wilmerhale.com>; Harris, Marsha <Marsha.Harris@huschblackwell.com>; Fussner, Kara <Kara.Fussner@huschblackwell.com>; Corum, William <William.Corum@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Hitchens, A. Lauren <Lauren.Hitchens@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>
**Subject:** RE: Participating Sites Ad Issue

Jason,

In follow-up to the below, we attach example ads that do not mention Facebook or a Facebook logo.  We presume Facebook does not object to the use of these ads.  Please confirm when you have time.  Thanks,

Rudy

**Rudy A. Telscher**
**Partner**
Direct:   314.345.6227
Rudy.Telscher@huschblackwell.com

**From:** Telscher, Rudy
**Sent:** Tuesday, October 20, 2020 9:39 PM
**To:** Kim, Jason J. <kimj@hunton.com>; Mehta, Sonal <Sonal.Mehta@wilmerhale.com>
**Cc:** Mortimer, Ann Marie <amortimer@hunton.com>; Holtzblatt, Ari <Ari.Holtzblatt@wilmerhale.com>; Harris, Marsha <Marsha.Harris@huschblackwell.com>; Fussner, Kara <Kara.Fussner@huschblackwell.com>; Corum, William <William.Corum@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Hitchens, A. Lauren <Lauren.Hitchens@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>
**Subject:** RE: Participating Sites Ad Issue

Jason,

Thanks for your communication.  BrandTotal has already discontinued the use of "participating sites."  If you are aware of any remaining uses, I can assure you it is not for a lack of trying to remove them all.  BrandTotal has no intention of using "participating sites" moving forward.  The word choice to tell BrandTotal users the sites that qualify for the rewards points does not matter to our client.  We are happy to consider other word phrases if your client does not like qualify.  As for the "f", I was not aware that Facebook was raising that issue.  I do not think either Complaint mentioned that issue, but perhaps I missed it.  It is very common for companies across America to use that symbol so we did not appreciate that was a concern.  Nonetheless, we are happy to discuss that issue too.

As we have hopefully made clear in all of our discussions and in the TRO, our client's focus is on UpVoice.  It is not trying to hide that it has other extensions (but they are much more insignificant to the business), and our client is more than happy to have an open technical discussion and better understand and address Facebook's concerns – beyond the terms of service.  The terms of service issues turn on legal determinations in our view, and our client can't run its business without collecting data.  While I know your client views certain recent conduct as deceitful, that is not the intention, and as far as I know, there is misunderstanding about what was done and why.  We are happy to coordinate another call to explain that at some point.

For now, our reason for making the below communication not a settlement communication is only that we want to be able to tell the court that we are not using "participating sites" any longer and that we have communicated that to Facebook.  I suspect that could be deemed a one-sided purpose, but I think it is a legitimate purpose given the circumstances.  As for these emails, my experience is judges hate emails and our side will rarely use them in court filings.

Best regards,

Rudy

**Rudy A. Telscher**
**Partner**
Direct:  314.345.6227
Rudy.Telscher@huschblackwell.com

---

**From:** Kim, Jason J. <kimj@hunton.com>
**Sent:** Tuesday, October 20, 2020 8:38 PM
**To:** Telscher, Rudy <Rudy.Telscher@huschblackwell.com>; Mehta, Sonal <Sonal.Mehta@wilmerhale.com>
**Cc:** Mortimer, Ann Marie <amortimer@hunton.com>; Holtzblatt, Ari <Ari.Holtzblatt@wilmerhale.com>; Harris, Marsha <Marsha.Harris@huschblackwell.com>; Fussner, Kara <Kara.Fussner@huschblackwell.com>; Corum, William <William.Corum@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Hitchens, A. Lauren <Lauren.Hitchens@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>

**Subject:** RE: Participating Sites Ad Issue

[EXTERNAL EMAIL]

Hi Rudy:

Your clients asked for settlement discussions, which we agreed to participate in and to keep confidential (also at your request). Your attempt to create a one-sided record by prefacing your email "this is not a settlement communication" while also purporting to reference certain of those communications is not well-taken. In any case, and for avoidance of doubt, this is not a settlement communication either.

The use of Facebook's distinctive logo with any suggestion of affiliation is inherently deceptive and misleading, and it should stop immediately. In addition to removing "participating," we also ask that your client stop using Facebook's "f" mark on the joinupvoice website. We think "qualifying site" is ambiguous and incorrectly suggests that using your client's extension does not violate Facebook's ToS.

As we explained when you offered last week to have a technical discussion, Facebook is willing to engage in such a discussion. But we have uncovered substantial evidence of your clients' numerous apps and scraping techniques. Any technical discussion will need to include a discussion of how your clients intend to bring themselves into compliance with Facebook's and Instagram's ToS, or provide specifics as to why the evidence we have of scraping is inaccurate. Facebook has not received that information. And the redacted declarations and papers that we were able to share with our clients in connection with the TRO proceedings and your clients' actions (creation of accounts with fake names, republication of the UpVoice extension, etc.) in the last two weeks have not resolved (and in fact, have exacerbated) Facebook's concerns. Hopefully we can arrange for that discussion in the near future.

Jason



**Jason J. Kim**
Counsel
kimj@HuntonAK.com
p  213.532.2114
m 310.600.2758
f   213.532.2020
bio  |  vCard  |  LinkedIn
www.huntonretailindustryblog.com

Hunton Andrews Kurth LLP
550 South Hope Street
Suite 2000
Los Angeles, CA 90071

HuntonAK.com

---

**From:** Telscher, Rudy <Rudy.Telscher@huschblackwell.com>
**Sent:** Tuesday, October 20, 2020 1:55 PM
**To:** Mehta, Sonal <Sonal.Mehta@wilmerhale.com>
**Cc:** Mortimer, Ann Marie <amortimer@hunton.com>; Kim, Jason J. <kimj@hunton.com>; Holtzblatt, Ari

<Ari.Holtzblatt@wilmerhale.com>; Harris, Marsha <Marsha.Harris@huschblackwell.com>; Fussner, Kara <Kara.Fussner@huschblackwell.com>; Corum, William <William.Corum@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Hitchens, A. Lauren <Lauren.Hitchens@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>
**Subject:** RE: Participating Sites Ad Issue

Sonal and Jason,

This is not a settlement communication.  We have communicated two points to Facebook and have not heard back from Facebook on either point.

1. BrandTotal will not use the phrase "participating sites" in advertisements moving forward.  While we do not concede that it was wrong to do so, in the interests of removing this aspect of the issues moving forward, BrandTotal will use "qualifying sites" or similar words moving forward, as we indicated in a communication on Saturday night to which we have not received a response.  If Facebook would prefer other words, we are also happy to have such discussions.

2. As we first offered last Wednesday, BrandTotal is willing to allow Facebook technical and legal personnel to meet/discuss with BrandTotal personnel to review the data Brandtotal collects and how it is collected.  Facebook's Complaint makes statements that we believe are inaccurate.

Best regards,

Rudy

**Rudy A. Telscher**
**Partner**
Direct:  314.345.6227
Rudy.Telscher@huschblackwell.com