# EXHIBIT B

# Mehta, Sonal

| | |
|---|---|
| **From:** | Mehta, Sonal |
| **Sent:** | Friday, November 20, 2020 9:19 AM |
| **To:** | Telscher, Rudy; Fussner, Kara; Kim, Jason J. |
| **Cc:** | Mortimer, Ann Marie; Holtzblatt, Ari; Harris, Marsha; Corum, William; Hauer, Ryan; Hitchens, A. Lauren; Hauer, Ryan; Schultz, Allison; Burrell, Robin C.; Taylor, Dustin |
| **Subject:** | RE: Facebook v BrandTotal |

Rudy,

Thanks for your note.

At the outset, we have learned that BrandTotal or others acting on behalf of BrandTotal have reached out to non-lawyers at Facebook to try to discuss this matter. We are aware of at least three such communications. We trust that you and your team were not made aware of these communications and did not sanction contacts to our clients aimed at end-running around the litigation team and counsel. Please advise your client that any communications about this matter need to come through counsel.

As to the substance of your request for business-to-business discussions, we continue to be puzzled by BrandTotal's insistence on having those discussions before it has engaged with the available information about Facebook APIs and the Ad Library, including the specific channels we have directed you to. While you have said that BrandTotal has concluded that it cannot get the same information it was scraping from established channels, you have not articulated, substantively, why BrandTotal cannot offer the services it seeks to offer to its customers based on information that is available. That may require BrandTotal to do some engineering work to design its tools to work within the bounds of the Facebook APIs. But it is incumbent on BrandTotal to make the effort, as thousands and thousands of other developers do, to develop its products and services to function within terms and policies that govern the Facebook platform. For obvious reasons given the number of developers and apps that engage with the Facebook platform, Facebook is not a position to do that development work for developers. It has, instead, created developer documentation and other resources to enable developers to build their own tools. We have repeatedly directed you to that information, but have received no indication that BrandTotal has sought to use that information to bring itself into compliance with Facebook's terms.

Facebook is not, as you suggest, refusing to have a business to business meeting with BrandTotal. But BrandTotal's evaluation of Facebook's APIs and Ad Library is an essential first step to that meeting. The parties cannot hope to have constructive discussions until we know what services BrandTotal offers to its customers and what information it needs to deliver those services, including whether there are alternative ways to structure its tools to use established data sources to deliver the same or comparable results. If BrandTotal is willing to do that threshold work, Facebook is willing to have a meeting. Then, for us to identify the right people for the meeting and ensure that the discussion is appropriately tailored, we would need BrandTotal to commit to the following:

(1) At least 10 days before the meeting, BrandTotal will provide Facebook with a specific explanation of the data it needs to be able to offers its services. This explanation will need to include specifics about the data that BrandTotal needs about each advertisement and how that information must be interrelated for BrandTotal to use it. In other words, we need to know more about what BrandTotal needs to be able to do with the data and not just a list of the data that BrandTotal was previously scraping. It will be helpful for BrandTotal to connect those questions to specific APIs so that Facebook can try to have the right people (different API endpoints are handled by entirely different teams) at the meeting.

(2) BrandTotal will sign a confidentiality and non-use agreement that codifies that all discussions are confidential and the discussions and information exchanged cannot be used for any purpose in the litigation. Given that BrandTotal has previously attempted to create a one-sided record about settlement communications and mischaracterized those communications to the Court, Facebook is not able to have any business-to-business discussion without a written agreement outlining the confidentiality parameters that will apply.

(3) The discussion will be limited to the data that BrandTotal seeks and how that information might be available through Facebook's APIs. Facebook is not able to engage in a broader business discussion, or of course, to get into any other topics that touch upon or are at issue in the litigation.

(4) Outside counsel will be present.

Please let us know if this framework is acceptable and when you will be able to provide the information above so that we can start to work to identify participants.

Best,
**Sonal N. Mehta | WilmerHale**
2600 El Camino Real
Suite 400
Palo Alto, CA 94306 USA
+1 650 600 5051 (t)
+1 650 858 6100 (f)
sonal.mehta@wilmerhale.com

---

**From:** Telscher, Rudy <Rudy.Telscher@huschblackwell.com>
**Sent:** Tuesday, November 10, 2020 12:34 PM
**To:** Mehta, Sonal <Sonal.Mehta@wilmerhale.com>; Fussner, Kara <Kara.Fussner@huschblackwell.com>; Kim, Jason J. <kimj@hunton.com>
**Cc:** Mortimer, Ann Marie <amortimer@hunton.com>; Holtzblatt, Ari <Ari.Holtzblatt@wilmerhale.com>; Harris, Marsha <Marsha.Harris@huschblackwell.com>; Corum, William <William.Corum@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Hitchens, A. Lauren <Lauren.Hitchens@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Schultz, Allison <Allison.Schultz@wilmerhale.com>; Burrell, Robin C. <Robin.Burrell@wilmerhale.com>; Taylor, Dustin <Dustin.Taylor@huschblackwell.com>
**Subject:** RE: Facebook v BrandTotal

**EXTERNAL SENDER**

Sonal,

BrandTotal has carefully reviewed Facebook's non-political ad library and APIs, as well as documentation of which BrandTotal is aware, and does not know what you are referencing as a solution for securing the data it needs. Indeed, Facebook's allegations make clear that BrandTotal's UpVoice program is collecting data not publicly available so your statements do not make sense to BrandTotal. T

his lack of clarity could be resolved in a 15-30 minute call between client personnel. Facebook seems unwilling to devote that minimal amount of time to trying to narrow/resolve/discuss the issues. Outside counsel exchanging emails with vague descriptions of what is and is not available is not helpful; our client has tried to understand your emails and does not.

And, Facebook representatives have already told us that Facebook will not allow automated collection of data from its site by entities other than search engines/indexing.  So, what you are suggesting seems contrary to the policy Facebook has already explain to us prior to you entering the case.

If Facebook's reading of the Court's TRO Order is correct, no party could ever secure preliminary relief, either TRO or preliminary injunctive relief, because Facebook could contend in every case its alleged public interest in protecting users  Perhaps that is what the Court meant, but we do not view the TRO Order as the broad prohibition Facebook does.  Of course, the Stackla court set the case for PI following a denial of TRO on this very basis.

BrandTotal will be moving forward with a request for preliminary injunction hearing and expedited discovery for the reasons previously explained.  Kara will coordinate with you regarding the meet-and-confer for tomorrow regarding discovery.  We have already proposed discovery, and if Facebook wishes to make for a productive meet-and-confer, it would be helpful to have an indication of Facebook's concerns in advance regarding discovery we have proposed.

Finally, we are unclear what your vague statement about circumventing the proceedings means.  If you want a response to that, you will have to explain it more.

Best regards,

Rudy

**Rudy A. Telscher**
**Partner**
Direct:  314.345.6227
Rudy.Telscher@huschblackwell.com

---

**From:** Mehta, Sonal <Sonal.Mehta@wilmerhale.com>
**Sent:** Tuesday, November 10, 2020 12:59 PM
**To:** Fussner, Kara <Kara.Fussner@huschblackwell.com>; Telscher, Rudy <Rudy.Telscher@huschblackwell.com>; Kim, Jason J. <kimj@hunton.com>
**Cc:** Mortimer, Ann Marie <amortimer@hunton.com>; Holtzblatt, Ari <Ari.Holtzblatt@wilmerhale.com>; Harris, Marsha <Marsha.Harris@huschblackwell.com>; Corum, William <William.Corum@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Hitchens, A. Lauren <Lauren.Hitchens@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Schultz, Allison <Allison.Schultz@wilmerhale.com>; Burrell, Robin C. <Robin.Burrell@wilmerhale.com>; Taylor, Dustin <Dustin.Taylor@huschblackwell.com>
**Subject:** RE: Facebook v BrandTotal

[EXTERNAL EMAIL]

Rudy & Kara,

Thank you for your responses yesterday.

While we appreciate your suggestion that BrandTotal is willing to work through authorized channels to obtain the data it claims it needs, your response demonstrates the fundamental problem that is stalling any progress:  Defendants appear to be unwilling to review the various sources for information that Facebook has repeatedly directed Defendants to help them work through those channels. For example, while your emails repeatedly claim that the Ad Library does not include information that Defendants claim to need for what you describe as non-political ads (which is a mischaracterization, for the reasons we have explained), you continue to ignore our repeated requests that Defendants review developer documentation about **Facebook APIs**, which are the approved channels for third party developers to access information from the Facebook platform (with appropriate protections and vetting by Facebook to ensure the integrity of the platform). As we have previously said, the available developer documentation includes a vast array of

information about the data that developers may use to develop the experiences envisioned by their businesses, including competitive benchmark analysis. Although for obvious reasons Facebook cannot be in the business of helping individual developers (of which there are many thousands) develop their products to use these authorized channels, Facebook provides extensive and detailed developer documentation for exactly that purpose. Even beyond that, we have gone out of our way to point Defendants in the direction of specific APIs and documentation they may want to review as a starting point. It seems Defendants are simply unwilling to do the work that thousands of other developers in the ecosystem do to ensure that they are in compliance with Facebook's terms and employing the available, authorized channels to access data from the platform. No amount of discovery is going to solve that threshold problem. (Nor will Defendants' attempts to circumvent the current proceedings and discussions by contacting other individuals at Facebook instead of counsel.)

Ultimately, if Defendants are genuine in their assertion that they are willing to work through authorized channels, and in their claims that they do not have the money for litigation, we encourage them to work within Facebook's approved process and devote their energy and resources to reviewing the information that we have directed you to about Facebook's APIs and to develop solutions that would bring their products and services into compliance. Once they do so, we will work with you to promptly discuss remediation and resolution. But until they do so, no phone call between engineers or business people is going to be productive – Defendants must first be willing to use the tools Facebook has provided to develop compliant products.

As for your proposed schedule for PI discovery and briefing, we appreciate your willingness to confer on these issues but your emails have only heightened our concerns about what Defendants are proposing.

For one, your email ignores that the Court denied the TRO due to, inter alia, the strong public interests at play here. As Judge Spero counseled at the TRO hearing, the animus of the Court's rulings is not going to change on a PI. Indeed, you have not explained how those interests would be different on a PI, or what Defendants could hope to gain by devoting more time and money re-litigating those issues rather than working to bring themselves into compliance with Facebook's terms.

But even beyond that, your explanation for why discovery is necessary confirms that, in fact, discovery from Facebook is not necessary. You note that you "believe much of [the Court's ruling] is grounded in not knowing whether BrandTotal is only collecting deidentified data," and believe that you "can improve the record on this point to provide the Court with much more comfort." Even setting aside the problems with your reading of the Court's ruling, by your own admission, the information that you think you need for a PI is information that would be within the control of **Defendants** – not Facebook. Certainly, there is no basis for the sweeping discovery requests that Defendants have proposed to serve on Facebook on such a compressed schedule.

Please let us know if Defendants plan to review the APIs and developer documentation so we can move forward towards a resolution. If not, and if Defendants continue to seek to file a PI, we can be available on Wednesday from 2-5 pm PT to discuss. For that conversation to be productive, we'd ask Defendants to come prepared with a proposal for narrowly-tailored discovery directed to the specific issues that will come up in the PI and a fair and reasonable timetable for discovery and briefing.

Best,

**Sonal N. Mehta | WilmerHale**
950 Page Mill Road
Palo Alto, CA 94304 USA
+1 650 600 5051 (t)
+1 650 858 6100 (f)
sonal.mehta@wilmerhale.com

**From:** Fussner, Kara <Kara.Fussner@huschblackwell.com>
**Sent:** Monday, November 9, 2020 12:20 PM
**To:** Telscher, Rudy <Rudy.Telscher@huschblackwell.com>; Mehta, Sonal <Sonal.Mehta@wilmerhale.com>; Kim, Jason J. <kimj@hunton.com>
**Cc:** Mortimer, Ann Marie <amortimer@hunton.com>; Holtzblatt, Ari <Ari.Holtzblatt@wilmerhale.com>; Harris, Marsha <Marsha.Harris@huschblackwell.com>; Corum, William <William.Corum@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Hitchens, A. Lauren <Lauren.Hitchens@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Schultz, Allison <Allison.Schultz@wilmerhale.com>; Burrell, Robin C. <Robin.Burrell@wilmerhale.com>; Taylor, Dustin <Dustin.Taylor@huschblackwell.com>
**Subject:** RE: Facebook v BrandTotal

**EXTERNAL SENDER**

Sonal,

Following up on the below exchanges, as to the specific scope of discovery and briefing schedule, I'm available to meet and confer with you at your convenience today.

I'll address one issue you raised below, and that is the time allowed for us to file our opening brief. We are requesting discovery in order to learn what we need to know for the opening brief, so our time to prepare that brief begins once discovery is complete. (You already saw the TRO brief we filed in the absence of discovery). So this is not an attempt to disadvantage Facebook at all, but rather to set a fair briefing schedule that occurs after discovery.

Kara

**Kara R. Fussner**
**Partner**
Direct:  314.345.6229
Kara.Fussner@huschblackwell.com

---

**From:** Telscher, Rudy <Rudy.Telscher@huschblackwell.com>
**Sent:** Monday, November 9, 2020 11:58 AM
**To:** Mehta, Sonal <Sonal.Mehta@wilmerhale.com>; Fussner, Kara <Kara.Fussner@huschblackwell.com>; Kim, Jason J. <kimj@hunton.com>
**Cc:** Mortimer, Ann Marie <amortimer@hunton.com>; Holtzblatt, Ari <Ari.Holtzblatt@wilmerhale.com>; Harris, Marsha <Marsha.Harris@huschblackwell.com>; Corum, William <William.Corum@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Hitchens, A. Lauren <Lauren.Hitchens@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Schultz, Allison <Allison.Schultz@wilmerhale.com>; Burrell, Robin C. <Robin.Burrell@wilmerhale.com>; Taylor, Dustin <Dustin.Taylor@huschblackwell.com>
**Subject:** RE: Facebook v BrandTotal

Sonal,

Thanks for your response.  We have reviewed the public libraries and confirm again that they do not provide the information BrandTotal needed to run its business.  Facebook's allegations to date confirm that BrandTotal collects information not available publicly; that's what Facebook alleges.  I have previously conveyed these sentiments to Facebook.  If Facebook was making such information available publicly, our small client would obviously choose that path, and not spend precious resources litigating against a company as powerful as Facebook.  In short, though, the information available publicly for non-political ads does not come close to satisfying what BrandTotal needs.

So, if there is to be a resolution, we need to get the business and technical personnel from both companies together to discuss how BrandTotal can collect the information it needs to run its business.  Certainly, Facebook could provide the information we need, or we could agree to allow the UpVoice program to continue, but with Facebook having quality control over it.  We welcome such discussions.  It's clear the Court expect the parties to have such discussions in good faith.  I do not think these back-and-forth emails are advancing the cause, which is why I have offered several times to get the clients connected directly.  As long as BrandTotal can gain access to the data it needs, it is very flexible in terms of provisions or safeguards that allow Facebook to satisfy its duties to protect user rights.

We have carefully reviewed the Court's TRO order, and believe much of it is grounded in not knowing whether BrandTotal is only collecting deidentified data.  The Court specifically notes in the context of the LinkedIn case that if BrandTotal is only collecting that which it contends it collects, the user interests are only marginally greater than the "relatively weak" interests found in the LinkedIn case. (Court Order at 22-23).  We believe we can improve the record on this point to provide the Court with much more comfort.  And, we have offered several times to allow Facebook technical personnel to meet with BrandTotal technical personnel to satisfy Facebook that we are not collecting information, nor using it, in ways that are different than Facebook's advertising consulting services.  Again, we welcome good faith discussions between the parties to discuss these points.

We have considered all points made by the Court, and we believe we can improve the record significantly with limited discovery.  In sum, though, BrandTotal has to take this route because the company could not possibly survive for the pendency of a litigation without data.  And, the Stackla court set the case for PI after denial of TRO, and the LinkedIn case is a PI case.  So, that is the path we must follow doing our best to remove or minimize the Court's concerns in the context of the Ninth Circuit's merits/harm sliding scale balance.

The only real issue that seems to exist is whether Facebook will allow competitors to access user advertising/demographic data to advise third parties about how best to advertise on Facebook.  If Facebook is willing to allow that, the rest should be straightforward to resolve.  Facebook indicates that it has allowed others such permission, as implicated by Section 3.2.3, so this should not be too difficult to achieve, assuming Facebook is willing.

Finally, as to discovery, the party submitting discovery can never be sure what might be implicated with certainty.  We thought the proposed discovery is limited, but we provided it in advance to encourage discussions about scope.  We are happy to discuss with your team why the discovery requests are overly broad in Facebook's view.  Please let us know when you would like to discuss.

Best regards,

Rudy


**Rudy A. Telscher**
**Partner**
Direct:  314.345.6227
Rudy.Telscher@huschblackwell.com


**From:** Mehta, Sonal <Sonal.Mehta@wilmerhale.com>
**Sent:** Monday, November 9, 2020 11:23 AM
**To:** Fussner, Kara <Kara.Fussner@huschblackwell.com>; Telscher, Rudy <Rudy.Telscher@huschblackwell.com>; Kim, Jason J. <kimj@hunton.com>
**Cc:** Mortimer, Ann Marie <amortimer@hunton.com>; Holtzblatt, Ari <Ari.Holtzblatt@wilmerhale.com>; Harris, Marsha <Marsha.Harris@huschblackwell.com>; Corum, William <William.Corum@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Hitchens, A. Lauren <Lauren.Hitchens@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Schultz, Allison <Allison.Schultz@wilmerhale.com>; Burrell, Robin C.

6

<Robin.Burrell@wilmerhale.com>; Taylor, Dustin <Dustin.Taylor@huschblackwell.com>
**Subject:** RE: Facebook v BrandTotal

[EXTERNAL EMAIL]

Kara,

Thanks for explaining the timeline and scope of discovery that Defendants are proposing for their anticipated PI proceedings. It may make sense for the parties to meet and confer on these items.

At the outset, Defendants' proposed timing for PI proceedings and scope of discovery is at odds with Judge Spero's direction at the TRO hearing in which he specifically declined to set a schedule for PI proceedings and encouraged Defendants to review the TRO ruling which would demonstrate why PI proceedings would not be appropriate. Consistent with Judge Spero's comments, the Court's written TRO ruling determined that there was a strong public interest in allowing Facebook to enforce its terms and policies, which is a not a ruling that Defendants can hope to disturb on a PI.

Instead, Judge Spero counseled the parties to discuss ways for Defendants to obtain the information they claim they need for their product offerings via established channels. Since the hearing, we have repeatedly asked Defendants to review the Ad Library data and the relevant APIs and developer documentation to work out how they will access the information that they need through established channels. We also directed Defendants to APIs that provide advertising information and to public page content access information (*see* https://developers.facebook.com/docs/graph-api/reference/page#public-page-data, which includes Page Public Content Access (PPCA), Page Public Metadata Access (PPMA), pages_read_engagement permission, and pages_read_user _content). We have received no indication that Defendants have reviewed the APIs and Ad Library to determine how they will access the information they are seeking via approved means – indeed, we have received no response to all to our latest communication identifying possible sources for the information Defendants seek, which we sent over a week ago. Given Defendants protestations that they are in dire financial circumstances, it would seem that Defendants would be better served working to bring themselves into compliance with Facebook's terms and working through approved channels to access data from the platform than expending time and money litigating a PI that would be futile in view of the Court's TRO ruling.

Even beyond that, Defendants' proposal for PI proceedings is problematic for a variety of reasons. First, Defendants' discovery requests are sweeping – overbroad, burdensome, and divorced from the issues that would be relevant to a PI given the Court's prior ruling. These are not requests to which Facebook can provide a response in 10 days, and some are requests that Facebook likely could not respond to even in 30 days or more given the overbreadth of the requests and that Defendants have failed to plead predicate facts or claims necessary to frame the scope of discovery. Second, Defendants' proposed timeline for PI proceedings is not balanced or reasonable – Defendants appear to propose that they will have nearly two months to draft their motion for a PI, while Defendants will have only 10 days to prepare their opposition with those 10 days falling over the December holidays and New Years.

We again encourage Defendants to review the APIs, developer documentation, and Ad Library and work to access the information they seek through proper channels, so the parties can then discuss remediation and resolution of the lawsuit. If Defendants decline to do so and insist on pursuing a PI notwithstanding the Court's TRO, please let us know your availability to confer on a more reasonable schedule and scope for discovery (which we would expect to be tailored to issues that would need to be resolved by the Court on a PI) and a fair briefing schedule. If the parties agree, or the Court permits, discovery for the PI proceeding, Facebook will be prepared to serve its own narrowly-tailored discovery requests.

Best,
Sonal

**From:** Fussner, Kara <Kara.Fussner@huschblackwell.com>
**Sent:** Thursday, November 5, 2020 5:53 PM
**To:** Mehta, Sonal <Sonal.Mehta@wilmerhale.com>; Telscher, Rudy <Rudy.Telscher@huschblackwell.com>; Kim, Jason J. <kimj@hunton.com>
**Cc:** Mortimer, Ann Marie <amortimer@hunton.com>; Holtzblatt, Ari <Ari.Holtzblatt@wilmerhale.com>; Harris, Marsha <Marsha.Harris@huschblackwell.com>; Corum, William <William.Corum@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Hitchens, A. Lauren <Lauren.Hitchens@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Schultz, Allison <Allison.Schultz@wilmerhale.com>; Burrell, Robin C. <Robin.Burrell@wilmerhale.com>; Taylor, Dustin <Dustin.Taylor@huschblackwell.com>
**Subject:** RE: Facebook v BrandTotal

**EXTERNAL SENDER**

Sonal,

I had suggested that we each prepare the discovery requests we would want in advance of preliminary injunction and exchange them by the end of this week. We have been working to draft tailored requests. For your consideration, attached are the basic requests we anticipate needing, in draft format, for your early preliminary review. (We will, of course, put theses into a formal format for service). We propose a 10 day response period for the written discovery, with a short deposition soon thereafter. In terms of the briefing schedule, we propose to seek the hearing in early January, and would suggest working backwards from that (i.e., 3 days before the hearing we will file reply brief, 8 days before the hearing you would file the answering brief and 18 days before the hearing we file the opening brief).

Regards,
Kara

**Kara R. Fussner**
**Partner**
Direct:  314.345.6229
Kara.Fussner@huschblackwell.com

**From:** Mehta, Sonal <Sonal.Mehta@wilmerhale.com>
**Sent:** Thursday, November 5, 2020 11:19 AM
**To:** Fussner, Kara <Kara.Fussner@huschblackwell.com>; Telscher, Rudy <Rudy.Telscher@huschblackwell.com>; Kim, Jason J. <kimj@hunton.com>
**Cc:** Mortimer, Ann Marie <amortimer@hunton.com>; Holtzblatt, Ari <Ari.Holtzblatt@wilmerhale.com>; Harris, Marsha <Marsha.Harris@huschblackwell.com>; Corum, William <William.Corum@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Hitchens, A. Lauren <Lauren.Hitchens@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Schultz, Allison <Allison.Schultz@wilmerhale.com>; Burrell, Robin C. <Robin.Burrell@wilmerhale.com>; Taylor, Dustin <Dustin.Taylor@huschblackwell.com>
**Subject:** RE: Facebook v BrandTotal

[EXTERNAL EMAIL]

Thanks Kara. Can you please be more specific about the scope of discovery you are proposing and the exact schedule you are proposing for PI proceedings? It is obviously tough for us to advise our client on a proposed 10-day turnaround on discovery without knowing what the scope of that discovery would be, or to really discuss with them your suggestion that we agree to an expedited briefing schedule until we have a specific proposal from your clients. Please let us know what you have in mind so we can discuss with our client. Thanks.

**From:** Fussner, Kara <Kara.Fussner@huschblackwell.com>
**Sent:** Wednesday, November 4, 2020 5:28 PM
**To:** Mehta, Sonal <Sonal.Mehta@wilmerhale.com>; Telscher, Rudy <Rudy.Telscher@huschblackwell.com>; Kim, Jason J. <kimj@hunton.com>
**Cc:** Mortimer, Ann Marie <amortimer@hunton.com>; Holtzblatt, Ari <Ari.Holtzblatt@wilmerhale.com>; Harris, Marsha <Marsha.Harris@huschblackwell.com>; Corum, William <William.Corum@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Hitchens, A. Lauren <Lauren.Hitchens@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Schultz, Allison <Allison.Schultz@wilmerhale.com>; Burrell, Robin C. <Robin.Burrell@wilmerhale.com>; Taylor, Dustin <Dustin.Taylor@huschblackwell.com>
**Subject:** RE: Facebook v BrandTotal

**EXTERNAL SENDER**

Sonal,

We are working on the discovery now, so that we can exchange it, hopefully, this week. We propose a shortened response time of 10 days, and then briefing thereafter so we could have a preliminary injunction hearing in early January.

Kara

**Kara R. Fussner**
**Partner**
Direct:   314.345.6229
Kara.Fussner@huschblackwell.com

**From:** Mehta, Sonal <Sonal.Mehta@wilmerhale.com>
**Sent:** Wednesday, November 4, 2020 5:04 PM
**To:** Fussner, Kara <Kara.Fussner@huschblackwell.com>; Telscher, Rudy <Rudy.Telscher@huschblackwell.com>; Kim, Jason J. <kimj@hunton.com>
**Cc:** Mortimer, Ann Marie <amortimer@hunton.com>; Holtzblatt, Ari <Ari.Holtzblatt@wilmerhale.com>; Harris, Marsha <Marsha.Harris@huschblackwell.com>; Corum, William <William.Corum@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Hitchens, A. Lauren <Lauren.Hitchens@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Schultz, Allison <Allison.Schultz@wilmerhale.com>; Burrell, Robin C. <Robin.Burrell@wilmerhale.com>; Taylor, Dustin <Dustin.Taylor@huschblackwell.com>
**Subject:** RE: Facebook v BrandTotal

[EXTERNAL EMAIL]

Kara,

Could you provide some more specifics on the scope of discovery and schedule that Defendants are proposing here? As we are talking about it, the contours of the proposal will be important as we evaluate your request. Please let us know.

Thanks,
Sonal

**From:** Mehta, Sonal
**Sent:** Tuesday, November 3, 2020 3:49 PM
**To:** Fussner, Kara <Kara.Fussner@huschblackwell.com>; Telscher, Rudy <Rudy.Telscher@huschblackwell.com>; Kim,

9

Jason J. <kimj@hunton.com>
Cc: Mortimer, Ann Marie <amortimer@hunton.com>; Holtzblatt, Ari <Ari.Holtzblatt@wilmerhale.com>; Harris, Marsha <Marsha.Harris@huschblackwell.com>; Corum, William <William.Corum@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Hitchens, A. Lauren <Lauren.Hitchens@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Schultz, Allison <Allison.Schultz@wilmerhale.com>; Burrell, Robin C. <Robin.Burrell@wilmerhale.com>; Taylor, Dustin <Dustin.Taylor@huschblackwell.com>
Subject: RE: Facebook v BrandTotal

Kara, we will circle up on our side and get back to you.

From: Fussner, Kara <Kara.Fussner@huschblackwell.com>
Sent: Tuesday, November 3, 2020 3:27 PM
To: Mehta, Sonal <Sonal.Mehta@wilmerhale.com>; Telscher, Rudy <Rudy.Telscher@huschblackwell.com>; Kim, Jason J. <kimj@hunton.com>
Cc: Mortimer, Ann Marie <amortimer@hunton.com>; Holtzblatt, Ari <Ari.Holtzblatt@wilmerhale.com>; Harris, Marsha <Marsha.Harris@huschblackwell.com>; Corum, William <William.Corum@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Hitchens, A. Lauren <Lauren.Hitchens@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Schultz, Allison <Allison.Schultz@wilmerhale.com>; Burrell, Robin C. <Robin.Burrell@wilmerhale.com>; Taylor, Dustin <Dustin.Taylor@huschblackwell.com>
Subject: Facebook v BrandTotal

**EXTERNAL SENDER**

Sonal,

We have reviewed the Court's order on the TRO, and intend to seek a short discovery period followed by briefing and hearing on a preliminary injunction motion. Before moving the Court, we wanted to explore with you whether we could reach agreement as to the timing of limited expedited discovery, briefing and hearing on the motion. In the meantime, and while we discuss timing, we also invite you to prepare any discovery requests to which you believe you would want responses before PI briefing, and we will do likewise.

Are you amenable to this conceptually?

Thanks,
Kara

**Kara R. Fussner**
**Partner**
Direct:   314.345.6229
Kara.Fussner@huschblackwell.com