# EXHIBIT C

| | |
|---|---|
| **From:** | Telscher, Rudy |
| **To:** | Mehta, Sonal; Fussner, Kara; Kim, Jason J. |
| **Cc:** | Mortimer, Ann Marie; Holtzblatt, Ari; Harris, Marsha; Corum, William; Hauer, Ryan; Hitchens, A. Lauren; Hauer, Ryan; Schultz, Allison; Burrell, Robin C.; Taylor, Dustin |
| **Subject:** | RE: Facebook v BrandTotal |
| **Date:** | Tuesday, December 15, 2020 5:14:47 PM |

**EXTERNAL SENDER**

Sonal,

It is unclear why you use words like "puzzled" and "troubled." We have confirmed many times that public data is not enough for Brandtotal to run its business, and no doubt Facebook does not run its advertising consultant services based on the mere public data. Your client knows this, even if it is not apparent to you. All that BrandTotal seeks is to have access to the information that it takes to effectively advise clients how to advertise on Facebook and other social media sites.

As to handling discussions about data access on a non-confidential basis, it was Facebook (you) that first stated that it did not want such discussions to be settlement discussions, not BrandTotal. See your email to me dated October 28, 2020 at 3:29 pm. Our client agreed to this approach and continued discussions with Facebook on this basis because it seemed clear that the Court wanted to know what information Facebook would agree to provide and what information it would not. At this point, it seems clear that Facebook is only offering publicly available information, and will not compromise regarding other data that BrandTotal was collecting but is not publicly available.

But, if Facebook has changed its mind, and now wants to have further discussions considered confidential settlement discussions, BrandTotal is willing to meet to discuss data access or other settlement discussions under total confidentiality, and our client is willing to sign a settlement confidentiality agreement to this effect. ***As we have also asked several times, we are willing to engage in settlement discussions as part of the Court's settlement program. Will Facebook agree?*** Facebook has not answered that question from my last few emails.

Finally, we have no idea what "thousands and thousands of developers" do every day on the Facebook site, and how that has anything to do with the data that is needed to effectively consult with clients about advertising strategy on Facebook and other social media sites. Indeed, BrandTotal sought such information in discovery from Facebook, and Facebook objected saying that it was overbroad and not relevant. It is therefore unclear why you reference it below.

Best regards,

Rudy

**Rudy A. Telscher**
**Partner**
Direct:  314.345.6227
Rudy.Telscher@huschblackwell.com

**From:** Mehta, Sonal <Sonal.Mehta@wilmerhale.com>
**Sent:** Monday, December 14, 2020 3:32 PM
**To:** Telscher, Rudy <Rudy.Telscher@huschblackwell.com>; Fussner, Kara <Kara.Fussner@huschblackwell.com>; Kim, Jason J. <kimj@hunton.com>
**Cc:** Mortimer, Ann Marie <amortimer@hunton.com>; Holtzblatt, Ari <Ari.Holtzblatt@wilmerhale.com>; Harris, Marsha <Marsha.Harris@huschblackwell.com>; Corum, William <William.Corum@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Hitchens, A. Lauren <Lauren.Hitchens@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Schultz, Allison <Allison.Schultz@wilmerhale.com>; Burrell, Robin C. <Robin.Burrell@wilmerhale.com>; Taylor, Dustin <Dustin.Taylor@huschblackwell.com>
**Subject:** RE: Facebook v BrandTotal

[EXTERNAL EMAIL]

Rudy,

We have been considering your response. We continue to be troubled by BrandTotal's apparent unwillingness to work through approved channels to access data and to consider ways to provide services to its customers based on data that it can get through approved channels. Indeed, it appears that BrandTotal is insistent that it should be permitted to operate outside established channels. That is unworkable for the reasons we have already addressed in depth with the Court, and as the Court's TRO Order recognized. We are also concerned by your suggestion that BrandTotal is not willing to treat settlement conversations as confidential – indeed, given your history of selectively sharing settlement communications with the Court and your suggestion below that BrandTotal believes it should be permitted to share at least some of any future settlement discussions with the Court, it appears that any discussions the parties would have would not be confidential and thus are unlikely to be productive as far as settlement communications go. At this point, it seems like the best path forward is to continue with the PI proceedings and other proceedings currently pending before the Court. If and when BrandTotal is willing to work within the established framework for access to the platform—a framework that thousands and thousands of developers work within every day—we remain willing to discuss remediation and settlement.

Best,

**Sonal N. Mehta | WilmerHale**
2600 El Camino Real
Suite 400
Palo Alto, CA 94306 USA
+1 650 600 5051 (t)
+1 650 858 6100 (f)
sonal.mehta@wilmerhale.com

**Please consider the environment before printing this email.**

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to

postmaster@wilmerhale.com—and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

---

**From:** Telscher, Rudy <Rudy.Telscher@huschblackwell.com>
**Sent:** Sunday, December 6, 2020 5:05 PM
**To:** Mehta, Sonal <Sonal.Mehta@wilmerhale.com>; Fussner, Kara <Kara.Fussner@huschblackwell.com>; Kim, Jason J. <kimj@hunton.com>
**Cc:** Mortimer, Ann Marie <amortimer@hunton.com>; Holtzblatt, Ari <Ari.Holtzblatt@wilmerhale.com>; Harris, Marsha <Marsha.Harris@huschblackwell.com>; Corum, William <William.Corum@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Hitchens, A. Lauren <Lauren.Hitchens@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Schultz, Allison <Allison.Schultz@wilmerhale.com>; Burrell, Robin C. <Robin.Burrell@wilmerhale.com>; Taylor, Dustin <Dustin.Taylor@huschblackwell.com>
**Subject:** RE: Facebook v BrandTotal

**EXTERNAL SENDER**

Sonal,

I am not aware that we have received a response from Facebook to the below.  Our client is willing to mediate this situation if Facebook believes that will be useful.  We look forward to hearing from you.

Best regards,

Rudy

**Rudy A. Telscher**
**Partner**
Direct:  314.345.6227
Rudy.Telscher@huschblackwell.com

---

**From:** Telscher, Rudy
**Sent:** Wednesday, November 25, 2020 11:21 AM
**To:** Mehta, Sonal <Sonal.Mehta@wilmerhale.com>; Fussner, Kara <Kara.Fussner@huschblackwell.com>; Kim, Jason J. <kimj@hunton.com>
**Cc:** Mortimer, Ann Marie <amortimer@hunton.com>; Holtzblatt, Ari <Ari.Holtzblatt@wilmerhale.com>; Harris, Marsha <Marsha.Harris@huschblackwell.com>; Corum, William <William.Corum@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Hitchens, A. Lauren <Lauren.Hitchens@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Schultz, Allison <Allison.Schultz@wilmerhale.com>; Burrell, Robin C. <Robin.Burrell@wilmerhale.com>; Taylor, Dustin <Dustin.Taylor@huschblackwell.com>

**Subject:** RE: Facebook v BrandTotal

Sonal,

Our firm knows the ethical rules, and will not violate them.  We presume the same for your firm.  Understand that BrandTotal is fighting for its existence – on behalf of many employees, customers, and investors.  Our client understandably concluded that offers to meet through this channel for the last seven weeks went nowhere and pursued other options.  It has every right to do so.

While Facebook now offers to meet, the overall tone appears to be take-it-or-leave and does not sound very settlement-oriented.  Nonetheless, BrandTotal will never pass up an opportunity to meet and hear what Facebook has to say.   It sounds as if Facebook is refusing to discuss any solution that involves BrandTotal receiving information beyond the limited information in the public library and APIs.  If this is true, settlement does not sound likely, but we believe it is worth our time to participate in a Zoom or similar meeting with Facebook.  We are also willing to mediate with a third party if that would help.

There is, however, no need to be "puzzled" by BrandTotal's skepticism about the scope of publicly available data.  See paragraph 20 of Facebook's complaint where it lists non-public data, including demographic data, which is essential to providing advertising consulting services.  Facebook's complaint and opposition have numerous other references to non-public data that it alleges BrandTotal collects to use in its competitive advertising services.  As we have also previously represented numerous times, our client spent the time to further review the public library and APIs only to confirm what Facebook has alleged in this lawsuit – namely that important data it needs is not public.

It is not lost on BrandTotal that Facebook's ultimate goal may be to have exclusive use of the full suite of such data relating to user advertising metrics on the Facebook site so that Facebook has a decided competitive advantage.  As such, Facebook can tell industry that desires to advertise on Facebook's 2.7 billion person platform that only Facebook can provide the effective consultation about advertising on Facebook because only Facebook has all the meaningful metrics, including demographic data.  If this is Facebook's position, we just need to know that.  If, however, Facebook is willing to work with BrandTotal, such a resolution could be a good data point for Faceook with all else that is going on beyond this litigation.

We comment about Facebook's stated conditions below in brackets for ease of reference.

Rudy


**Rudy A. Telscher**
**Partner**
Direct:  314.345.6227
Rudy.Telscher@huschblackwell.com

---

**From:** Mehta, Sonal <Sonal.Mehta@wilmerhale.com>

**Sent:** Friday, November 20, 2020 11:19 AM
**To:** Telscher, Rudy <Rudy.Telscher@huschblackwell.com>; Fussner, Kara <Kara.Fussner@huschblackwell.com>; Kim, Jason J. <kimj@hunton.com>
**Cc:** Mortimer, Ann Marie <amortimer@hunton.com>; Holtzblatt, Ari <Ari.Holtzblatt@wilmerhale.com>; Harris, Marsha <Marsha.Harris@huschblackwell.com>; Corum, William <William.Corum@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Hitchens, A. Lauren <Lauren.Hitchens@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Schultz, Allison <Allison.Schultz@wilmerhale.com>; Burrell, Robin C. <Robin.Burrell@wilmerhale.com>; Taylor, Dustin <Dustin.Taylor@huschblackwell.com>
**Subject:** RE: Facebook v BrandTotal

[EXTERNAL EMAIL]

Rudy,

Thanks for your note.

At the outset, we have learned that BrandTotal or others acting on behalf of BrandTotal have reached out to non-lawyers at Facebook to try to discuss this matter. We are aware of at least three such communications. We trust that you and your team were not made aware of these communications and did not sanction contacts to our clients aimed at end-running around the litigation team and counsel. Please advise your client that any communications about this matter need to come through counsel.

As to the substance of your request for business-to-business discussions, we continue to be puzzled by BrandTotal's insistence on having those discussions before it has engaged with the available information about Facebook APIs and the Ad Library, including the specific channels we have directed you to.  While you have said that BrandTotal has concluded that it cannot get the same information it was scraping from established channels, you have not articulated, substantively, why BrandTotal cannot offer the services it seeks to offer to its customers based on information that is available. That may require BrandTotal to do some engineering work to design its tools to work within the bounds of the Facebook APIs. But it is incumbent on BrandTotal to make the effort, as thousands and thousands of other developers do, to develop its products and services to function within terms and policies that govern the Facebook platform. For obvious reasons given the number of developers and apps that engage with the Facebook platform, Facebook is not a position to do that development work for developers. It has, instead, created developer documentation and other resources to enable developers to build their own tools. We have repeatedly directed you to that information, but have received no indication that BrandTotal has sought to use that information to bring itself into compliance with Facebook's terms.

Facebook is not, as you suggest, refusing to have a business to business meeting with BrandTotal. But BrandTotal's evaluation of Facebook's APIs and Ad Library is an essential first step to that meeting. The parties cannot hope to have constructive discussions until we know what services BrandTotal offers to its customers and what information it needs to deliver those services, including whether there are alternative ways to structure its tools to use established data sources to deliver

the same or comparable results. If BrandTotal is willing to do that threshold work, Facebook is willing to have a meeting. Then, for us to identify the right people for the meeting and ensure that the discussion is appropriately tailored, we would need BrandTotal to commit to the following:

(1) At least 10 days before the meeting, BrandTotal will provide Facebook with a specific explanation of the data it needs to be able to offers its services. [Mr. Karve accessed BrandTotal's UpVoice source code and his declaration explains the data that UpVoice collects, we have also explained this before in email correspondence, but we are happy to formalize such a list 10 days before any such meeting.] This explanation will need to include specifics about the data that BrandTotal needs about each advertisement and how that information must be interrelated for BrandTotal to use it. [Same answer] In other words, we need to know more about what BrandTotal needs to be able to do with the data and not just a list of the data that BrandTotal was previously scraping.[What BrandTotal needs is what it was collecting. That's why BrandTotal collected it. If, however, Facebook is asking BrandTotal to compromise and take less, we are willing, albeit concerned, to have such discussions.] It will be helpful for BrandTotal to connect those questions to specific APIs so that Facebook can try to have the right people (different API endpoints are handled by entirely different teams) at the meeting. [As we have made clear, the public library and APIs seemingly do not provide what BrandTotal needs. Given that Facebook runs competitive advertising consulting services, Facebook knows this.]

(2) BrandTotal will sign a confidentiality and non-use agreement that codifies that all discussions are confidential and the discussions and information exchanged cannot be used for any purpose in the litigation. Given that BrandTotal has previously attempted to create a one-sided record about settlement communications and mischaracterized those communications to the Court, Facebook is not able to have any business-to-business discussion without a written agreement outlining the confidentiality parameters that will apply.[Facebook contends that BrandTotal tried to create a one-sided record. The only comment that BrandTotal made about the one settlement meeting that occurred is that Facebook personnel admitted they did not have any settlement authority regarding access to data on the Facebook site – the critical area for resolution. That is a fact, and it is not a settlement communication. Settlement authority is a prerequisite to any meaningful settlement meeting. Indeed, in civil mediations, the mediator is typically required to report to the Court if a party shows up without it. All of that said, we are happy to discuss with Facebook the parameters for confidentiality. Currently, however, the Court wants to know what Facebook will and will not allow BrandTotal to access so that part cannot be confidential. That comes directly from the Court TRO ruling and hearing.]

(3) The discussion will be limited to the data that BrandTotal seeks and how that information might be available through Facebook's APIs. [If the notion is that any settlement meeting is limited to information that is available through Facebook's public library and APIs – only public data by definition – BrandTotal is unclear how the case can be resolved this way, but looks forward to hearing why Facebook thinks this is sufficient data to provide competitive advertising consulting services. That, of course, seems to be the primary point of Facebook's Complaint – to prevent BrandTotal from collecting the non-public advertising metric data it needs to run its business.] Facebook is not able to engage in a broader business discussion, or of course, to get into any other topics that touch upon or are at issue in the litigation. [BrandTotal is fine not discussing other issues

<mark>in the litigation.]</mark>

(4) Outside counsel will be present. <mark>[Agreed]</mark>

Please let us know if this framework is acceptable and when you will be able to provide the information above so that we can start to work to identify participants.

Best,
**Sonal N. Mehta | WilmerHale**
2600 El Camino Real
Suite 400
Palo Alto, CA 94306 USA
+1 650 600 5051 (t)
+1 650 858 6100 (f)
sonal.mehta@wilmerhale.com

---

**From:** Telscher, Rudy <Rudy.Telscher@huschblackwell.com>
**Sent:** Tuesday, November 10, 2020 12:34 PM
**To:** Mehta, Sonal <Sonal.Mehta@wilmerhale.com>; Fussner, Kara <Kara.Fussner@huschblackwell.com>; Kim, Jason J. <kimj@hunton.com>
**Cc:** Mortimer, Ann Marie <amortimer@hunton.com>; Holtzblatt, Ari <Ari.Holtzblatt@wilmerhale.com>; Harris, Marsha <Marsha.Harris@huschblackwell.com>; Corum, William <William.Corum@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Hitchens, A. Lauren <Lauren.Hitchens@huschblackwell.com>; Hauer, Ryan <Ryan.Hauer@huschblackwell.com>; Schultz, Allison <Allison.Schultz@wilmerhale.com>; Burrell, Robin C. <Robin.Burrell@wilmerhale.com>; Taylor, Dustin <Dustin.Taylor@huschblackwell.com>
**Subject:** RE: Facebook v BrandTotal

**EXTERNAL SENDER**

Sonal,

BrandTotal has carefully reviewed Facebook's non-political ad library and APIs, as well as documentation of which BrandTotal is aware, and does not know what you are referencing as a solution for securing the data it needs. Indeed, Facebook's allegations make clear that BrandTotal's UpVoice program is collecting data not publicly available so your statements do not make sense to BrandTotal. T

his lack of clarity could be resolved in a 15-30 minute call between client personnel. Facebook seems unwilling to devote that minimal amount of time to trying to narrow/resolve/discuss the issues. Outside counsel exchanging emails with vague descriptions of what is and is not available is not helpful; our client has tried to understand your emails and does not.