Rudolph A. Telscher, Jr.* (MO Bar No. 41072)
rudy.telscher@huschblackwell.com
Kara R. Fussner* (MO Bar No. 54656)
kara.fussner@huschblackwell.com
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105

Ryan B. Hauer* (IL Bar No. 6320758)
ryan.hauer@huschblackwell.com
HUSCH BLACKWELL LLP
120 South Riverside Plaza Suite 2200
Chicago, IL 60606

David Stauss*
david.stauss@huschblackwell.com
Dustin Taylor*
dustin.taylor@huschblackwell.com
HUSCH BLACKWELL LLP
180 1 Wewatta Street, Suite 1000
Denver, CO 80202
*admitted *pro hac vice*

Karl Kronenberger (CA Bar No. 226112)
karl@krinternetlaw.com
Jeffrey M. Rosenfeld (CA Bar No. 222187)
jeff@krinternetlaw.com
KRONENBERGER ROSENFELD, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
415-955-1155 Telephone
415-955-1158 Facsimile

*Attorneys for Defendants/Counterclaim  Plaintiffs BrandTotal, Ltd. and Unimania, Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| FACEBOOK, INC., a Delaware corporation, | Case No.: 3:20-CV-07182-JCS |
| *Plaintiff/Counterclaim Defendant*, | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS THE DEFENDANTS' COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(B)(6)** |
| v. | |
| BRANDTOTAL, LTD., an Israeli corporation, and UNIMANIA, INC., a Delaware corporation, | Judge:  The Hon. Joseph C. Spero<br>Ctrm.:  Videoconference Only<br>Date:  Feb. 19, 2021<br>Time:  9:30 AM |
| *Defendants/Counterclaim Plaintiffs*. | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARD ........................................................................................................... 3

FACTS ................................................................................................................................... 3

ARGUMENT ......................................................................................................................... 5

    A.    BrandTotal Has Adequately Pled a Claim for Declaratory Relief that It Has Not Breached Facebook's Terms, At Least Because the Terms Are Unenforceable (Counterclaim IV) ................................................................. 5

    B.    BrandTotal Has Adequately Pled a Claim for Intentional Interference with Contract (Counterclaim I). ...................................................................... 7

        1.    BrandTotal Pled that Facebook Intended to Interfere with Its Customer Contracts. ................................................................ 7

        2.    BrandTotal Pled that Facebook's Actions Actually Interfered with Its Customer Contracts. ................................................. 10

        3.    Facebook was not "justified" in interfering with BrandTotal's Customer Contracts. ................................................... 11

    C.    BrandTotal Adequately Pled a Claim for Intentional Interference with Prospective Economic Advantage (Counterclaim II). ........................................ 12

    D.    BrandTotal Has Adequately Pled a Claim under California's Unfair Competition Law (Counterclaim III). ................................................. 15

    E.    Leave to Amend Should be Granted to the Extent Necessary. ............................ 18

CONCLUSION ..................................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Altera Corp. v. Clear Logic, Inc.,*
424 F.3d 1079 (9th Cir. 2005) ............................................................................................ 13

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................................................ 3

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ...................................................... 9

*Barker v. Riverside Cty. Office of Educ.,*
584 F.3d 821 (9th Cir. 2009) ............................................................................................... 3

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ......................................................................................................... 3, 4

*BrandTotal. Odom v. Microsoft Corp.,*
486 F.3d 541 (9th Cir. 2007) ........................................................................................... 3, 11

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
20 Cal. 4th 163 (1999) ....................................................................................................... 16

*Desertrain v. City of Los Angeles,*
754 F.3d 1147 (9th Cir. 2014) ............................................................................................. 7

*Diva Limousine, Ltd. v. Uber Techs, Inc.,*
392 F. Supp. 3d 1074 (N.D. Cal. 2019) .............................................................................. 16

*Eminence Capital, LLC v. Aspeon, Inc.,*
316 F.3d 1048 (9th Cir. 2003) ............................................................................................ 19

*Finuliar v. BAC Home Loans Servicing, L.P., C-11-02629 JCS,*
2011 WL 4405659 at *10 (N.D. Cal. Sept. 21, 2011) ......................................................... 18

*Foman v. Davis,*
371 U.S. 178 (1962) ...................................................................................................... 18, 19

*Griggs v. Pace Am. Grp., Inc.,*
170 F.3d 877 (9th Cir. 1999) .............................................................................................. 19

*hiQ Labs, Inc. v. LinkedIn Corp.,*
938 F.3d 985 (9th. Cir. 2019) ........................................................................ 10, 11, 14, 15

*hiQ Labs, Inc. v. LinkedIn Corp.,*
No. 17-cv-03301-EMC, 2020 WL 5408210 (N.D. Cal. Sept. 9, 2020) .............................. 17

*Johnson v. Wal-Mart Stores, Inc.*,
  544 F. App'x 696 (9th Cir. 2013) ............................................................. 9

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134, 63 P.3d 937 (2003) ....................................................... 8

*Mishiyev v. Alphabet, Inc.*,
  444 F. Supp. 3d 1154 (N.D. Cal. 2020) ................................................... 13

*Pacific Gas & Elec. Co. v. Bear Stearns & Co.*,
  50 Cal. 3d 1118 (1990) .............................................................................. 7

*Polich v. Burlington N., Inc.*,
  942 F.2d 1467 (9th Cir. 1991) ................................................................. 19

*Ramona Manor Convalescent Hospital v. Care Enterprises*,
  177 Cal. App. 3d 1120 (Ct. App. 1986) .................................................. 13

*Rivera v. Peri & Sons Farms, Inc.*,
  735 F.3d 892 (9th Cir. 2013) ................................................................... 11

*Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty.*,
  708 F.3d 1109 (9th Cir. 2013) ................................................................. 19

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
  42 Cal. App. 4th 507 (1996) .................................................................... 13

## Statutory Authorities

Cal. Bus. & Prof. Code § 17200 ....................................................................... 4, 15

Cal. Civ. Code § 1798.192 ................................................................................. 14

Cal. Penal Code § 502 .......................................................................................... 4

## Rules and Regulations

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 1, 3

Fed. R. Civ. P. 15(a)(2) ....................................................................................... 18

Defendants BrandTotal, Ltd. and Unimania, Inc. (collectively, "BrandTotal") hereby responds to Plaintiff Facebook Inc.'s Notice of Motion and Motion to Dismiss the Defendants' Counterclaims Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 77).

## INTRODUCTION

Facebook's deliberate takedown of UpVoice and other extensions that, with user consent, collect de-identified information about commercial advertisements on the Facebook Network has decimated BrandTotal's business. As alleged in the Counterclaims, "[w]ithout access to the vast majority of participant data, BrandTotal cannot compile advertising analytics for its customers. . . current participants cannot login to collect any rewards they have earned, and BrandTotal cannot recruit new participants." ECF No. 23 at Counterclaims, ¶ 28. Even as of the time of the Counterclaims, "current customers—reputable large companies-[were] questioning their relationship with BrandTotal and prospective customers that had completed trials and were in the final stages of negotiation [were] walking away." Counterclaims, ¶ 29. Facebook's current 12(b)(6) motion focuses on the adequacy of the Counterclaims, so this response will similarly focus on those allegations, but without meaningful data and as expected, the situation at BrandTotal since the TRO proceedings has only gotten worse.[1]

Facebook, in the instant motion, makes many of the same arguments already rejected by this Court in connection with the TRO, and also, through the guise of a 12(b)(6) motion, attempts to litigate the underlying merits of the action, questioning, for instance, whether its removal of the UpVoice and other extensions was justified or not. This is not the time or place for that adjudication. This Court has already found that BrandTotal has raised "serious questions" related to each counterclaim that Facebook now seeks to dismiss, and the ultimate merits will be litigated in due course. *See* ECF No. 63. That is why the Court granted expedited discovery in anticipation of BrandTotal's motion for a preliminary injunction, a motion Facebook knows that BrandTotal is in the midst of preparing.

---

[1] As will be set forth in the preliminary injunction motion, as a result of Facebook's actions, BrandTotal has lost customers, as well as, about 20% of its workforce. Without preliminary relief, this situation will snowball in the next few months.

Facebook's motion raises no new arguments warranting dismissal. Facebook contends that despite the specifically alleged actions and the resulting harm from those actions set forth in the pleading, the Counterclaims do not adequately plead any cause of action. Facebook would have this Court check common sense at the door and ignore the reasonable inferences that flow from the facts alleged. For example, Facebook argues that the pleadings are deficient because BrandTotal did not allege that Facebook was certain that Google would take down the extensions, after it requested that it do so. While BrandTotal does not agree such an allegation is even required, the factual allegations that *are* alleged fully support the reasonable inference that Facebook expected Google to take down the extensions as it directed. The Counterclaims allege that Facebook "comprises the world's largest social network, with over 2.7 billion monthly active users." Counterclaims, ¶ 19. Facebook, itself, alleged in the State Court complaint that it sent multiple takedown notices to Google (ECF No. 27-6, ¶ 56), and then soon thereafter Google complied and removed the extensions. Counterclaims, ¶¶ 25–26. It is only reasonable to conclude from these alleged facts that Facebook, the largest social media site in the world, expected with reasonable certainty that Google would remove any extension Facebook contended violated its policies. The facts alleged plainly supports this reasonable inference.

Facebook's other arguments are similarly misguided. For example, much of Facebook's brief focuses on the requirements for pleading an antitrust cause of action. But BrandTotal has not brought a claim under the antitrust laws and need not prove that form of action merely to maintain the tortious interference and unfair competition claims it has alleged. Those causes of action have their own elements, and BrandTotal has adequately alleged facts that support the notion that Facebook, a competitor, improperly interfered with BrandTotal's existing and prospective contracts and investor opportunities, to the great harm of BrandTotal. *See, e.g.*, Counterclaims, ¶¶ 43–46, 50–61. While BrandTotal contends that Facebook's motives were anticompetitive, this is not the same as stating an antitrust cause of action. The claims asserted are plausibly alleged with factual recitations. This is all that is required at the pleading stage. Facebook's motion to dismiss should be denied.

**LEGAL STANDARD**

In evaluating Facebook's Motion under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of BrandTotal. *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007); *Barker v. Riverside Cty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009). Rule 12(b)(6) only requires BrandTotal to plead "factual content that allows the court to draw the reasonable inference that the [Defendants are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). There is no requirement that the Complaint include extensive detail or even all of the details BrandTotal may later be required to prove be pleaded. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the Complaint satisfies Rule 12(b)(6)'s standard so long as its factual allegations "raise a right to relief above the speculative level." *Id.* Thus, dismissal is only appropriate where the facts BrandTotal has alleged do not state a claim that is "plausible on its face." *Id.*

**FACTS**

BrandTotal is a premier advertising consulting company offering competitive analyses of advertising efforts on social media sites like Facebook, Instagram, Twitter, YouTube, LinkedIn, Amazon and others. Counterclaims, ¶ 8. Just as companies used to track competitive advertising in print, on billboards and on TV in years past, there is a need today to understand advertising across the many online channels that people see. *Id.* Fortune 500 companies and others want analytical intelligence not only about how their own advertising is received on social media sites, but also how competitors' ads are viewed and perceived. *Id.* BrandTotal provides this service. *Id.*

In order to provide these services, BrandTotal offers applications and extensions that provide a benefit to the user in exchange for the user agreeing to share their advertising experience with BrandTotal. In BrandTotal's most popular offering, willing participants download a browser extension called UpVoice that allows BrandTotal to collect information about the participant's advertising interactions. *Id.*, ¶ 9. The participants receive cash gift cards in exchange for the information, and BrandTotal only collects information with the participants' informed consent and deliberate opt-in. *Id.*, ¶ 10. The extension does not impact the participant's

1   Facebook experience, or harm Facebook, but it allows BrandTotal to collect data that is either

2   public, or that the participant owns and controls and has authorized BrandTotal to collect. *Id.*,

3   ¶¶ 13–14. The data collected allows BrandTotal to offer anonymous and aggregated advertising

4   information to its customers (i.e., the corporate entities wanting to better understand the

5   advertising landscape on social media sites). *Id.*, ¶¶ 15–18.

6       As alleged in the Counterclaims, Facebook is a crucial part of BrandTotal's offering. *Id.*,

7   ¶¶ 53–54. Facebook is the "world's largest social network," and without access to Facebook,

8   BrandTotal cannot offer the sort of social media analytics, its customers desire. *Id.*, ¶ 19.

9   Meanwhile, Facebook offers competing services. While Facebook makes money through paid

10  advertising (i.e., sponsored ads) among other things on its site, Facebook also uses its users'

11  information (without compensation) to offer its own competing advertising analytics to

12  businesses. *Id.*, ¶ 22.

13      Just prior to the filing of the instant action, in the Fall of 2020, Facebook, without any

14  warning or communication with BrandTotal, disabled BrandTotal's Facebook accounts, as well

15  as the personal pages of BrandTotal's principals, and sent a takedown request to Google to

16  disable the UpVoice extension. Counterclaims, ¶¶ 23–25. Within days, Google removed the

17  UpVoice extension from the Google Chrome store, along with a handful of other BrandTotal-

18  related extensions. *Id.*, ¶ 26. This led to a near complete shutdown of BrandTotal's data that is

19  the lifeblood of its consulting services. *Id*. Despite request and notice of the harm caused by

20  these actions, Facebook refused to reinstate the accounts, restore BrandTotal's access to

21  Facebook, and rescind the take down notice to Google. *Id.*, ¶ 36.

22      Facebook initiated this lawsuit on October 14, 2020, asserting the following claims: (1)

23  breach of contract, based on Facebook's and Instagram's terms of service; (2) unjust enrichment;

24  (3) unauthorized access in violation of the CFAA; (4) unauthorized access in violation of

25  California Penal Code § 502; (5) interference with contractual relations by inducing Facebook's

26  users to share their login credentials with BrandTotal in violation of Facebook's terms of service;

27  and (6) unlawful, unfair, or fraudulent business practices in violation of California's Unfair

28  Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"). *See* ECF No. 1.

1    On October 16, 2020, BrandTotal filed its Answer and asserted the following

2  counterclaims: (1) intentional interference with contract, based on contracts with its corporate

3  customers; (2) intentional interference with prospective economic advantage; (3) unlawful,

4  unfair, and fraudulent conduct in violation of the UCL; and (4) declaratory judgment that

5  BrandTotal has not breached any contract with Facebook. *See* ECF No. 23.

6    Also on October 16, 2020, BrandTotal filed a motion for a temporary restraining order,

7  asking the Court to order Facebook: 1) to rescind its takedown request to remove BrandTotal's

8  browser extension from the Google Chrome Web Store; 2) to reverse its "technical enforcement

9  measures" blocking BrandTotal's browser extension from Facebook's platform; and 3) to restore

10  the BrandTotal and other BrandTotal principals' Facebook pages. *See* ECF No. 27.

11    On November 2, 2020, the Court denied BrandTotal's request for the TRO. In its Order,

12  the Court concluded that BrandTotal had raised "serious questions" as to the merits of its

13  counterclaims and had also established that the balance of equities tipped in its favor. ECF No.

14  63. The Court, however, denied BrandTotal's request for a TRO because despite establishing

15  serious questions as to the merits, the Court found that on the record before it at the TRO, the

16  public interest, not the merits prong, weighed against issuance of a TRO.

17    The parties are currently engaged in expedited discovery, which was ordered by the Court

18  in anticipation of BrandTotal filing a motion for a preliminary injunction. *See* ECF No. 74.

19                              **ARGUMENT**

20    A.    **BrandTotal Has Adequately Pled a Claim for Declaratory Relief that It Has
           Not Breached Facebook's Terms, At Least Because the Terms Are
21         Unenforceable (Counterclaim IV).**

22    BrandTotal has adequately pled its request for declaratory relief that it has not violated

23  Facebook or Instagram's terms of service. This is because, as enforced by Facebook, those terms

24  are unenforceable as contrary to public policy.

25    Facebook argues that BrandTotal is not entitled to declaratory relief because

26  BrandTotal's browser extensions use "automated means" to collect data, thus violating Facebook

27  and Instagram's terms. ECF No. 77 ("Mot."), at 4–5. BrandTotal concedes that if "automated

28  means" encompasses any computer-aided collection (i.e., the only practical means of collection),

then BrandTotal would violate Facebook and Instagram's terms. But the breach of contract inquiry does not stop there. Of course, Facebook can make its terms whatever it wants them to be, and the pivotal clause changed, at Facebook's unilateral directions, from the 2017 version to the 2019 version. *See* ECF No. 27 at 10; ECF No. 50 at 8-9. Even had this Court found that what BrandTotal does is not "automated means," Facebook could have just changed its terms to explicitly cover a browser extension that collects specified user data, (i.e., not limited to scraping data across the whole site, as is the case with software spiders and bots).

To this end, BrandTotal has alleged that, even if it collects data using "automated means," BrandTotal cannot be liable for breach of contract because Facebook and Instagram's terms are unenforceable as contrary to public policy. *See* ECF No. 23 at 14, Fifth Affirmative Defense. This is because, as alleged in counterclaims, "it is the user that makes the decision to allow data they own to be accessed by the UpVoice extension," and "[w]hile BrandTotal offers the service, ultimately it is the user who decides whether their data will be used for . . . analytics." Counterclaims, ¶ 70. That is, as argued in support of BrandTotal's motion for a temporary restraining order, under the guise of alleged violations of its user agreements, Facebook is attempting to control information that it cannot otherwise prevent others–and particularly competitors–from collecting and using. *See also* ECF No. 63 at 10–17. The law is abundantly clear that *user data belongs to each individual,* and not Facebook. *See id*. Similarly, public advertisements cannot be appropriated by Facebook at the exclusion of other firms. *See id*. This goes to the heart of unfair competition, and is not justified.

The Court analyzed this argument in its Order denying BrandTotal's TRO and found that "BrandTotal has . . . shown at most *significant issues* going to whether Facebook's terms are enforceable," and incorporated its analysis regarding intentional interference of contract. ECF No. 63 at 30 (emphasis added). There, the Court found that BrandTotal "raised real issues of the extent to which Facebook can enforce its terms of use in a manner that stifles competition." *Id*. at 26, n.13. Thus, BrandTotal has adequately pled its claim for declaratory judgment for no breach of contract, when the pleading is considered as a whole, inclusive of the affirmative defenses. To the extent BrandTotal needs to amend to make its position clearer in the Counterclaim itself,

1    BrandTotal is prepared to do so. This would merely make the pleading conform to the case as it

2    has developed, and as Facebook undoubtedly already understands. Leave to grant this sort of

3    amendment is freely given. *See Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir.

4    2014) (finding district court abused discretion by failing to allow amendment to conform to

5    arguments made in briefing). Here, given the early stage of the case, allowing leave to amend is

6    appropriate and in no way prejudicial to Facebook.

7    **B.      BrandTotal Has Adequately Pled a Claim for Intentional Interference with
               Contract (Counterclaim I).**

8

9    BrandTotal has stated a claim for intentional interference with contract. To state a claim

10   for intentional interference with contract under California law, BrandTotal need only allege that

11   "(1) a valid contract between [BrandTotal] and a third party; (2) [Facebook's] knowledge of this

12   contract; (3) [Facebook's] intentional acts designed to induce a breach or disruption of the

13   contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5)

14   resulting damage." *Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126

15   (1990). Facebook only argues that BrandTotal did not allege two of these elements: (1) that

16   Facebook "had the requisite intent to interfere with BrandTotal's contracts" and (2) that

17   "blocking BrandTotal's access to Facebook's networks caused the actual breach or disruption of

18   those contracts." Mot. at 6. Irrespective of the elements, Facebook alternatively asks the Court to

19   find that it "was justified in taking steps to enforce its terms." *Id*.

20   **1.      BrandTotal Pled that Facebook Intended to Interfere with Its
               Customer Contracts.**

21

22   BrandTotal has pled that Facebook intended to interfere with BrandTotal's customer

23   contracts. As a preliminary matter, this Court has already found that "BrandTotal has raised

24   serious questions as to the merits of [its intentional interference with contract] claim." ECF No.

25   63 at 26. Indeed, this Court has found, as evidenced by at least Facebook's Complaint,

26   BrandTotal is "likely to succeed in showing that Facebook knew BrandTotal had entered

27   contracts where its performance depended on the data it collected." *Id*. at 21. And in the context

28   of that motion, Facebook did not even raise whether BrandTotal had satisfied the intent prong,

1    even though it argued pleading deficiencies for other elements of intentional interference, like

2    knowledge and whether there was actual interference. *Id*. at 10.

3          BrandTotal's counterclaim plainly alleges that Facebook acted to shutdown BrandTotal's

4    data stream. For example, BrandTotal alleged that "Facebook suspended BrandTotal's Facebook

5    and Instagram pages, . . . and contacted Google to shut down BrandTotal's UpVoice browser

6    extension." Counterclaims, ¶ 25. These actions were intentional and directed squarely to shutting

7    down BrandTotal's data stream.

8          Facebook argues that BrandTotal did not allege Facebook's intent because BrandTotal

9    "fails to allege that its Facebook and Instagram accounts were integral to the collection of data

10   from Facebook, let alone that Facebook was aware that BrandTotal's entire business model

11   depended on . . . *Facebook* data." Mot. at 6 (emphasis in original). This argument is both wrong

12   and misses the point. First, whether or not BrandTotal's Facebook and Instagram *accounts* were

13   "integral to the collection of data" is not the focus of BrandTotal's counterclaims. Although

14   BrandTotal's accounts are important to its business for advertising and other reasons, they are

15   not necessary for BrandTotal to collect data as a technical matter. Instead, BrandTotal's

16   counterclaims focus on Facebook's actions of blocking BrandTotal's access to its pages and its

17   requests to Google, along with the takedown of its accounts.[2] BrandTotal alleged the significance

18   of these actions, which led to the "near complete shutdown of BrandTotal's data that is the

19   lifeblood of its consulting services." Counterclaims, ¶ 26; *see also id.*, ¶¶ 27–31; 37–40.[3]

20         Citing case law requiring that "the interference [was] certain or substantially certain to

21   occur as a result of the action," Facebook also argues that "BrandTotal does not allege any facts

22   from which it can be inferred that Facebook knew with substantial certainty that Google would

23   respond [to] remove BrandTotal's extension." Mot. at 7 (citing *Korea Supply Co. v. Lockheed*

24   *Martin Corp*., 29 Cal. 4th 1134, 63 P.3d 937 (2003)). But as alleged in Facebook's state court

25

26   [2] Facebook has also taken down the *personal* Facebook and Instagram accounts of BrandTotal's officers. These accounts have absolutely nothing to do with any of BrandTotal's business.
     BrandTotal has requested that Facebook restore these personal accounts, but Facebook has refused.

27   [3] Facebook is also well aware of its own size, alleging in its Complaint that "[a]s of August 2020,

28   Facebook daily active users average 1.79 billion and monthly active users averaged 2.7 billion."
     ECF No. 1, ¶ 13.

complaint, Facebook specifically requested that Google remove BrandTotal's extensions (*see* ECF No. 27-6, ¶ 56; *see also* ECF No. 63 at 18–19), and soon thereafter Google did so. Counterclaims, ¶¶ 25–26. These facts, which are alleged in the Counterclaims, support the reasonable inference that Facebook intended and expected the extensions would be removed. Facebook cannot seriously contend that it requested Google to remove BrandTotal's extensions, but Facebook thought Google would not do so. Facebook would have been wasting its time if that were its belief, and Google's terms of service specifically provide that Google can remove the extensions if Facebook contends the extensions violate Facebook's terms of service, which, of course, is precisely what Facebook contended to Google.

Ironically, the case Facebook relies on for the "substantially certain" intent element, supports BrandTotal's position. In *Korea Supply Co.*, the plaintiff, a military equipment manufacturer, sued Lockheed Martin Corporation and others alleging that defendants illegally induced a foreign government to award them a contract, instead of Plaintiff. *Korea Supply Co.*, 29 Cal. 4th at 1134. The Plaintiff contended these actions constituted unfair competition and interference with prospective economic advantage under California law. *Id*. The trial court dismissed the case on the pleadings without leave to amend, but the California Supreme Court reversed holding that plaintiff was not required to plead that defendants acted with the specific intent, or purpose, of interfering with plaintiff's prospective economic advantage, rather, it was sufficient for plaintiff to plead that defendants knew that the interference was certain or substantially certain to occur as a result of their action. *Id*. at 1166–67. Here, the allegations of the Counterclaims and the reasonable inferences from those Counterclaims, support either position. Either Facebook specifically intended to interfere with BrandTotal's customer contracts for its own competitive gain, or, at a minimum, it reasonably expected that outcome. Both reasonable inferences flow from the facts alleged.

Moreover, in assessing the pleading, this Court is not required to check its common sense at the door. *See e.g., Johnson v. Wal-Mart Stores, Inc*., 544 F. App'x 696, 697 (9th Cir. 2013) ("Drawing upon our 'judicial experience and common sense,' *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), we conclude that these factual allegations permit a

reasonable inference that Johnson paid more 'than she otherwise would have' if Wal–Mart had not engaged in the alleged misrepresentation."). Facebook is the largest social media site in the world, Counterclaims, ¶ 19. Its power to exert its will in the realm of electronic media, cannot be rightfully denied. It undoubtedly has sent many takedown notices to Google and knew exactly what to expect from its actions. To the extent the Counterclaims need to be amended to expressly set this forth, BrandTotal is prepared to do so, but the allegations already plausibly support the claim.

### 2.    BrandTotal Pled that Facebook's Actions Actually Interfered with Its Customer Contracts.

As discussed above, intentional interference with contract requires "actual beach or disruption of the contractual relationship." *hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 995–96 (9th. Cir. 2019). As this Court has noted, "[w]hile the typical case involves actual breach, the element of 'disruption' of a contract can also be satisfied 'where the plaintiff's performance has been prevented or rendered more expensive or burdensome.'" ECF No. 63 at 20, *citing hiQ*, 938 F.3d at 996, n.8.

BrandTotal has pled that Facebook's actions caused at least a significant disruption to BrandTotal's business. BrandTotal alleged that "[a]s a direct and proximate result of Facebook's conduct, BrandTotal has suffered and will continue to suffer damages, including but not limited to, lost business, reputational damage, loss of investor funds, and insolvency." Counterclaims, ¶ 38. BrandTotal also alleged that "[w]ithout access to the vast majority of participant data, BrandTotal cannot compile advertising analytics for its customers." *Id*., ¶ 28. BrandTotal further alleged that data "is the life blood of its consulting services." *Id*., ¶ 26. It would have been obvious to Facebook that by cutting off data to BrandTotal, it could not effectively advise clients how to advertise on Facebook, and other social media sites.

The Court has already rejected Facebook's argument that "BrandTotal cannot show knowledge, or actual breach or disruption" when it denied BrandTotal's motion for a TRO, and Facebook raises no new arguments here. ECF No. 63 at 20–21. The Court found that "[w]ith respect to disruption, [BrandTotal's Leibovich Declaration] states that BrandTotal can no longer

1   access the data on which it relies for the analysis it contracted to sell to its customers." *Id*. at 21.

2   The Court thus found that "BrandTotal is therefore likely able to show that its 'performance has

3   been prevented or rendered more expensive or burdensome.'" *Id*., *citing hiQ*, 938 F.3d at 996,

4   n.8. BrandTotal alleges the same facts in its Counterclaims as the facts attested to in its TRO

5   CEO's Declaration (*see, e.g.*, Counterclaims, ¶¶ 26, 28, 38); thus, BrandTotal has adequately

6   pled "disruption."

### 3.   Facebook was not "justified" in interfering with BrandTotal's Customer Contracts.

9   Separate and apart from whether BrandTotal adequately pled the elements of intentional

10   interference with contract, Facebook also alleges that it was "justified" in its interference, a

11   defense to the tort.  Mot. at 8–10.

12   As an initial matter, a motion to dismiss is simply not the mechanism for the Court to

13   provide any ultimate decision of whether Facebook was "justified" in interfering with

14   BrandTotal's contracts. This is plainly an issue that will be developed throughout discovery and

15   will eventually be determined by a jury. Indeed, Facebook bears the ultimate burden of proof for

16   this "affirmative justification defense." *hiQ*, 938 F.3d at 997.

17   Facebook argues that it should prevail at this stage because its legitimate business

18   purpose "is obvious on the face of [BrandTotal's] complaint." Mot. at 9, citing *Rivera v. Peri &*

19   *Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013). But that brazen argument totally ignores

20   this Court's finding on the current record that there is "an open question of Facebook's intent"

21   regarding its supposed legitimate business purpose. ECF No. 63 at 26. Indeed, the Court found

22   that *BrandTotal* raised "serious questions" with respect whether Facebook was justified and that

23   BrandTotal could prevail "to the extent that Facebook might have been motivated by a desire to

24   prevent BrandTotal from competing against Facebook in the market for advertising analytics."

25   *Id*. And the Court could preview even in view of the FTC consent decree Facebook references in

26   its motion, finding that decree may provide "at least some degree of legitimate business

27   purpose." As a result, the Court has allowed BrandTotal to take discovery on this very point and

28   found that "one of the core issues" in BrandTotal's anticipated motion for a preliminary

injunction will be Facebook's "potential anticompetitive motivations." ECF No. 76 (11-20-20 Hr. Trans.) at 5:12–17.

Thus, Facebook's argument that it was justified in interfering with BrandTotal's contracts is far from the slam dunk needed to dismiss BrandTotal's claims from the face of its Counterclaims. Indeed, if Facebook can create whatever terms of service it wants (here, broadly preventing *any* automated collection data by a competitor, even if for a legitimate purpose), then go to Google and claim those terms of service are violated to stop the competitor, and claim this is "justification" for its anti-competitive actions, there would seemingly be no limits to Facebook's ability to monopolize the entire ecosystem that pertains to its massive user platform. Dismissal at the pleading stage should be denied.

### C.   BrandTotal Adequately Pled a Claim for Intentional Interference with Prospective Economic Advantage (Counterclaim II).

BrandTotal has adequately pled its counterclaim for intentional interference with a prospective economic advantage. Again, in the context of BrandTotal's TRO, this Court found that "for the reasons discussed . . . in the context of interference with contract, BrandTotal has shown at most serious issues going to the merits of its claim for interference with advantage." ECF No. 63 at 27.

To state a claim for intentional interference with prospective economic advantage, BrandTotal must allege "(1) an economic relationship between the [BrandTotal] and some third party, with the probability of future economic benefit to [BrandTotal]; (2) [Facebook's] knowledge of the relationship; (3) intentional acts on the part of [Facebook] designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to [BrandTotal] proximately caused by the acts of the defendant." *Korea Supply Co*, 29 Cal. 4th at 1153.

As it did in opposition to BrandTotal's motion for a TRO, Facebook argues here that "BrandTotal fails to identify any specific economic relationships that had the probability of future economic benefit" and "BrandTotal does not allege facts . . . that Facebook had knowledge of any specific prospective economic relationships." Mot. at 11–12; ECF No. 39 at 13 (Facebook arguing that "Defendants never identify any *specific* contract or potential

1  relationship") (emphasis in original). The Court explicitly rejected that argument in the context

2  of its analysis of intentional interference with contract, which was incorporated into its analysis

3  of intentional interference with a prospective economic advantage. *See* ECF No. 63 at 21.

4  Indeed, the Court found that "under California law, 'the defendant need not know exactly who is

5  a party to the contract, so long as he knows he is interfering with a contractual relationship.'" *Id*.,

6  *citing Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1092 (9th Cir. 2005).

7         The cases Facebook cites in the instant motion do not hold otherwise. Mot. at 11. First,

8  Facebook miscites the law as it relates to speculation in prospective contracts. Citing *Westside*

9  *Ctr. Assoc.*, Facebook contends that "the law does not protect 'speculative expectancies,' only

10  'reasonably probable' prospective advantages." Mot at 11 (citing *Westside Ctr. Assocs. v.*

11  *Safeway Stores 23, Inc*., 42 Cal. App. 4th 507, 522 (1996)). Yet *Westside* cautioned only against

12  "*overly* speculative expectancies." *Westside Ctr. Assocs.*, 42 Cal. App. 4th at 522. In *Westside*,

13  the Court was left to determine "whether it is possible to establish this level of certainty for a

14  purely hypothetical relationship." *Id.* There the plaintiff argued that defendant interfered with a

15  "class of all possible but as yet unidentified tenants or buyers for [a] shopping center." *Id*. at 520.

16  In contrast, here, BrandTotal has alleged that specific, identified perspective customers walked

17  away as a result of Facebook's actions. Counterclaims, ¶ 29. This is vastly different than, for

18  example, in *Mishiyev* (another case cited by Facebook), in which plaintiff failed to identify *any*

19  contracts of prospective relationships. *See Mishiyev v. Alphabet, Inc*., 444 F. Supp. 3d 1154

20  (N.D. Cal. 2020).

21         The same legal principle applies to claims for intentional interference with a prospective

22  economic advantage, as BrandTotal noted in its TRO Reply. *See* ECF No. 70 at 13, *citing*

23  *Ramona Manor Convalescent Hospital v. Care Enterprises*, 177 Cal. App. 3d 1120, 1133 (Ct.

24  App. 1986). Applying that law here, as the Court has already done, BrandTotal has alleged that

25  Facebook has interfered with prospective relationships, including prospective customers and

26  prospective investors. Counterclaims, ¶¶ 43–47. BrandTotal also alleged that it had knowledge of

27  these prospective customers and investors at least in view of its knowledge of Facebook's

28  advertisements. *Id.*, ¶ 34; *see also* ECF No. 63 at 21 (finding that "BrandTotal is . . . likely to

1    succeed in showing that Facebook knew BrandTotal had entered into contracts where its

2    performance depended on the data it collected"). Moreover, Facebook was explicitly aware of

3    BrandTotal's reliance on investment funds, as evidenced by Facebook's Complaint. *See* ECF No.

4    1, ¶ 4 & Ex. 7. Thus, the Court should reject Facebook's argument here for the same reasons it

5    did in the TRO proceeding.

6         Facebook also argues that it did not have the requisite intent to interfere with

7    BrandTotal's prospective economic relationships because it did not have the requisite knowledge

8    of the relationships. Mot. at 12. As discussed above, BrandTotal has alleged that Facebook had

9    the knowledge necessary for intentional interference, as found by this Court. Any other

10   Facebook argument regarding intent, including its argument that it did not "know" its actions

11   would interference with BrandTotal's relationships, fails for the same reasons the argument

12   failed with respect to intentional interference with contract. *See supra* Section B.

13        Facebook also argues that BrandTotal "fails to allege any independently wrongful act"

14   for its intentional interference with prospective economic advantage claim. Mot. at 12–13. As

15   Facebook recognizes, BrandTotal has alleged at least two independently wrongful acts: (1)

16   violating Facebook's own terms by not allowing users to control their data; and (2) violations of

17   the UCL. *See* Counterclaims, ¶ 43. According to Facebook, these acts are not wrongful because

18   while users own their own information, according to Facebook the users cannot allow third

19   parties to automatically collect it. Mot. at 13. While this is an interesting theory, it is inconsistent

20   with the California Consumer Privacy Act (the "CCPA") and the Ninth Circuit's rationale in *hiQ*

21   *Labs*, 938 F.3d at 992. First, the CCPA specifically states that "[a]ny provision of a contract or

22   agreement of any kind that purports to waive or limit in any way a consumer's rights under this

23   title, including, but not limited to, any right to a remedy or means of enforcement, shall be

24   deemed contrary to public policy and shall be void and unenforceable." Cal. Civ. Code

25   § 1798.192 (emphasis added). The users, not Facebook, own the data, and the users are entitled

26   to share it with who they direct. All Facebook has done is cleverly devised terms of service for

27   precluding the only way to share/track such data – automated means. Similarly, the Ninth Circuit

28   in *hiQ v. LinkedIn* questioned the legitimacy of terms and conditions that would limit otherwise

publicly available information. 938 F.3d at 998 (noting that "[i]f companies like LinkedIn, whose servers hold vast amounts of public data, are permitted selectively to ban only potential competitors from accessing and using that otherwise public data, the result—complete exclusion of the original innovator in aggregating and analyzing the public information—may well be considered unfair competition under California law"). While this case involves a mild mix of public information and user-owned information provided with user consent, the same rationale applies; indeed, it is highly questionable whether advertising information on a site that allows 2 billion users could ever be considered private, and not realistically public. Facebook cannot, through its terms and conditions, prevent competitors from accessing information on its network that is either public, or belongs to the users and which the users have directed to be shared. At a minimum, and as the Court already found, there is a serious question as to whether Facebook acted properly. This is sufficient to state a claim at the pleading stage. The merits of the parties' respective positions will be litigated in due course.

### D. BrandTotal Has Adequately Pled a Claim under California's Unfair Competition Law (Counterclaim III).

California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. As alleged in BrandTotal's counterclaims, Facebook's decision to deny BrandTotal access to UpVoice's users' Facebook activities, along with its actions to remove UpVoice from the Google Webstore, was unlawful, unfair, and fraudulent. *See* Counterclaims, ¶¶ 49–63.

Like BrandTotal's other counterclaims, on a limited record including BrandTotal's Answer and Counterclaims, the Court has already found that BrandTotal has already raised "at most serious issues" going to BrandTotal's UCL claims. ECF No. 63 at 27–28. With respect to the "unlawful" prong, the Court relied on its analysis with respect to intentional interference with contract. *Id*. For the "unfair" prong, the Court also relied on its analysis with the contract claims, finding that the "unfair" prong analysis will turn on whether "Facebook's enforcement efforts could be seen as intended to block a potential competitor from the market for advertising analytics." *Id*. The Court also found "at most serious issues" going to the fraudulent prong in

1   light of BrandTotal's argument that "Facebook's terms of service recognize that users retain

2   ownership of their own data." *Id*. at 28.

3        Facebook argues there that BrandTotal "alleges no 'unlawful' business practice" because,

4   in Facebook's view, "BrandTotal's tortious interference claims fail." Mot. at 14. Facebook is

5   wrong for the same reasons described by BrandTotal with respect to those claims above. *See*

6   *supra* §§ B & C.

7        For the "unfair" prong of the UCL, Facebook cites *Diva Limousine, Ltd. v. Uber Techs,*

8   *Inc*., 392 F. Supp. 3d 1074, 1090 (N.D. Cal. 2019) contending that in that case the district court

9   dismissed a UCL claim predicated on an alleged antitrust violation. Mot. at 15. Yet, in Diva, the

10  court granted plaintiff's motion to dismiss only "to the extent the unfairness claim is based on

11  Sherman Act violations," *Diva Limousine*, 392 F. Supp. 3d at 1090. It *denied* the motion to

12  dismiss claims predicated on violating the "spirit" of the antitrust laws. *Id.* So too, here, the UCL

13  claim should not be dismissed.

14       Facebook mostly argues that BrandTotal's Counterclaims are not adequately pled

15  because they do not adequately allege a violation of Section 2 of the Sherman Act. Ironically,

16  while BrandTotal has not brought an antitrust claim (at least not yet), there is massive antitrust

17  litigation already initiated by federal and state governments regarding Facebook's

18  anticompetitive behavior. But the issue here is a UCL claim. Facebook's argument overstates the

19  standard for an "unfair" violation of the UCL, which allows for BrandTotal to plead that

20  Facebook's conduct "threatens an incipient violation of an antitrust law, or violates the policy *or*

21  *spirit of one of those laws* because its effects are comparable to or the same as a violation of the

22  law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. Los*

23  *Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999) (emphasis added). Here, BrandTotal has

24  not yet alleged a Sherman Act violation, a count it would have set forth as an independent cause

25  of action. Instead, BrandTotal alleged a violation of the unfair prong of *UCL*, which requires

26  less: a violation of the "spirit" of the antitrust laws or conduct that otherwise significantly

27  threatens or harms competition. *See* Counterclaims, ¶¶ 51–54.

28

Facebook argues that BrandTotal's pleading is deficient because it did not "allege any relevant market" to support a *Sherman Act claim*. Facebook cites no case – from any court, state or federal – dismissing an *unfair competition claim* for failure to define a relevant market or to demonstrate sufficient power in the market. And in any event, BrandTotal has alleged that Facebook "is using its dominant presence as the world's largest social media platform to assume exclusive proprietary control over public data" and that Facebook is acting anticompetitively in the market for "advertising offerings"—valuable analytics supported by Facebook's advertising data. Counterclaims, ¶¶ 51, 53, 57. Indeed, the Court has found that such "potential anticompetitive motivations" are "one of the core issues" in this case. ECF No. 76 at 5:12–17.

Facebook argues that BrandTotal did not plead a UCL violation because, in Facebook's view, Google, not Facebook, is denying access to the "essential facility" of Facebook data, yet it was Facebook that told Google that Facebook's terms of service were being violated to persuade Google to remove UpVoice and other extensions. BrandTotal's allegations center on *Facebook's* conduct—mainly, denying access to Facebook and Instagram, along with its conduct to take BrandTotal's extensions off the Google Chrome Store. *See* Counterclaims, ¶¶ 49–63. Citing *LinkedIn*, Facebook contends that merely leveraging its monopoly power in the social media realm to assume exclusive control over data it does not own, is not a cognizable wrong under the UCL. Mot. at 17, citing *hiQ Labs, Inc. v. LinkedIn Corp.*, No. 17-cv-03301-EMC, 2020 WL 5408210, at *12 (N.D. Cal. Sept. 9, 2020). According to Facebook there must be anticompetitive conduct apart from just leveraging. *Id*. Yet, BrandTotal alleges more. BrandTotal has alleged Facebook wrongfully directed Google to take down the extensions, improperly disabled BrandTotal's Facebook accounts, and refused to rescind those actions in order to interfere with a harm a competitor. *See., e.g.,* Counterclaims, ¶¶ 25–26, 31, 36, 52–53. Therefore, as in *LinkedIn*, "the leveraging theory rises and falls with the other theories identified." *hiQ Labs*, 2020 WL 5408210 at *13. Facebook is improperly restricting access to data that is essential for BrandTotal, its competitor, to provide data analytics.

Finally, Facebook argues that BrandTotal has not alleged a claim under the UCL based on "fraudulent" conduct. Mot. at 19. To state such a claim, BrandTotal "must allege, with

1   particularity, facts sufficient to establish that the public would be likely deceived by

2   [Facebook's] conduct." *Finuliar v. BAC Home Loans Servicing, L.P.*, C-11-02629 JCS, 2011

3   WL 4405659 at *10 (N.D. Cal. Sept. 21, 2011). Here, BrandTotal has alleged that a specific

4   Facebook statement—promises to users in Facebook's terms of use that the users own their

5   content, control their privacy settings, and that Facebook holds only nonexclusive licenses to the

6   content—are fraudulent and likely to deceive the public. Counterclaims, ¶¶ 13, 21, 59–60.

7        Facebook argues that BrandTotal has not pled that it "actually relied" on Facebook's

8   misrepresentations, which, in Facebook's view, makes BrandTotal's claims deficient. Mot. at 19.

9   This argument, however, is at odds with Facebook's own admission that "California courts have

10  not addressed whether a competitor plaintiff must plead their own reliance or whether pleading

11  consumer reliance is sufficient." *Id.* In any event, BrandTotal has pled that both it and consumers

12  have relied on Facebook's misrepresentations to their detriment. From BrandTotal's perspective,

13  it relied on the statements when it created its browser extensions, as well as when it operated

14  with issue and advertised its offerings on Facebook. *Id.*, ¶¶ 8, 23–24. From the Facebook user

15  perspective, they relied on Facebook's terms when it downloaded UpVoice and gave access to

16  BrandTotal, believing that Facebook allowed them to control the use of their own data. *Id.*, ¶¶

17  59–60.

18        **E.     Leave to Amend Should be Granted to the Extent Necessary.**

19        While BrandTotal believes it has already pleaded facts sufficient to demonstrate an

20  entitlement to relief, to the extent the Court finds any of the allegations deficient, BrandTotal

21  respectfully requests leave to amend.

22        Under Fed. R. Civ. P. 15(a)(2), "[t]he court should freely give leave [to amend] when

23  justice so requires." The Supreme Court has emphasized that "[i]f the underlying facts or

24  circumstances relied upon by a [claimant] may be a proper subject of relief, he ought to be

25  afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182

26  (1962). For this reason,"[c]ourts may decline to grant leave to amend only if there is strong

27  evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure

28  to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party

..., [or] futility of amendment, etc.'" *Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty*., 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman*, 371 U.S. at 182); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (holding dismissing complaint with prejudice was an abuse of discretion). All inferences in favor of granting leave to amend should be granted, *see Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877 (9th Cir. 1999), and "[d]ismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." *Polich v. Burlington N., Inc*., 942 F.2d 1467, 1472 (9th Cir. 1991).

Here, whether BrandTotal will ultimately prevail in its Counterclaims is yet to be determined, but BrandTotal has plausibly alleged facts that could entitle it to relief, or it could amend to do so. The case is in its infancy, and there is no prejudice to Facebook in permitting amendment. Certainly, there is no bad faith or dilatory motive, nor has one been alleged. BrandTotal has been grievously harmed by Facebook's actions. Counterclaims, ¶¶ 27–31. It should have the opportunity to advance its claims on the merits.

## CONCLUSION

None of BrandTotal's claims should be dismissed because each one is adequately pleaded with plausible facts that demonstrate that BrandTotal is entitled to relief. Should the Court find otherwise, it should grant BrandTotal the opportunity to amend its Complaint accordingly.

1   Date: January 6, 2021                          Respectfully submitted,

2                                                  By: */s/ Rudolph A. Telscher, Jr.*
                                                   Rudolph A. Telscher, Jr.*
3                                                  rudy.telscher@huschblackwell.com
                                                   Kara R. Fussner*
4                                                  kara.fussner@huschblackwell.com
                                                   HUSCH BLACKWELL LLP
5                                                  190 Carondelet Plaza, Suite 600
                                                   St. Louis, MO 63105
6                                                  314-480-1500 Telephone

7
                                                   Ryan B. Hauer*
8                                                  ryan.hauer@huschblackwell.com
                                                   HUSCH BLACKWELL LLP
9                                                  120 South Riverside Plaza Suite 2200
                                                   Chicago, IL 60606
10                                                 312-526-1572 Telephone

11
                                                   David Stauss*
12                                                 david.stauss@huschblackwell.com
                                                   Dustin Taylor*
13                                                 dustin.taylor@huschblackwell.com
                                                   HUSCH BLACKWELL LLP
14                                                 180 1 Wewatta Street, Suite 1000
                                                   Denver, CO 80202
15                                                 303-749-7200 Telephone
                                                   *admitted *pro hac vice*
16
                                                   Karl Kronenberger (CA Bar No. 226112)
17                                                 karl@krinternetlaw.com
                                                   Jeffrey M. Rosenfeld (CA Bar No. 222187)
18                                                 jeff@krinternetlaw.com
                                                   KRONENBERGER ROSENFELD, LLP
19                                                 150 Post Street, Suite 520
                                                   San Francisco, CA 94108
20                                                 415-955-1155 Telephone
                                                   415-955-1158 Facsimile
21
22                                                 ***Attorneys for Defendants/Counterclaim***
                                                   ***Plaintiffs BrandTotal, Ltd. and Unimania,***
23                                                 ***Inc.***

24

25

26

27

28

---

Dfts' Opposition to Pltf's MTD            20                    Case No. 3:20-CV-07182-JCS

## CERTIFICATE OF SERVICE

1

2          I hereby certify that on this 6th day of January 2021, I caused the foregoing to be filed

3   electronically with the Clerk of Court and to be served via the Court's Electronic Filing System

4   upon all counsel of record, and to be served via email on all counsel of record at the following:

5
    WILMER CUTLER PICKERING                   HUNTON ANDREWS KURTH LLP
6   HALE AND DORR LLP                         Ann Marie Mortimer (State Bar No.
    SONAL N. MEHTA (SBN 222086)               169077)
7   sonal.mehta@wilmerhale.com                amortimer@HuntonAK.com
    THOMAS G. SPRANKLING (SBN                 Jason J. Kim (State Bar No. 221476)
8   294831)                                   kimj@HuntonAK.com
    thomas.sprankling@wilmerhale.com          Jeff R. R. Nelson (State Bar No. 301546)
9   JOSEPH M. LEVY (SBN 329318)               jnelson@HuntonAK.com
    joseph.levy@wilmerhale.com                550 South Hope Street, Suite 2000
10  2600 El Camino Real, Suite 400            Los Angeles, California 90071-2627
    Palo Alto, CA 94306                       Telephone: (213) 532-2000
11  Telephone: (650) 858-6000                 Facsimile: (213) 532-2020

12
    ARI HOLTZBLATT                            ***Attorneys for Plaintiff/Counterclaim***
13  Ari.Holtzblatt@wilmerhale.com             ***Defendant Facebook, Inc.***
    ALLISON SCHULTZ
14  Allison.Schultz@wilmerhale.com
    ROBIN C. BURRELL
15  robin.burrell@wilmerhale.com
    1875 Pennsylvania Ave, NW
16  Washington, DC 20006
    Telephone: (202) 663-6000
17  Facsimile: (202) 663-6363

18

19
                                             */s/ Rudolph A. Telscher, Jr.*
20

21

22

23

24

25

26

27

28