# HUSCH BLACKWELL

Rudolph A. Telscher
Partner

190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Direct: 314.345.6227
Fax: 314.480.1505
rudy.telscher@huschblackwell.com

January 6, 2021

**FILED VIA THE COURT'S CM/ECF SYSTEM**

Chief Magistrate Judge Joseph C. Spero
San Francisco Courthouse
Courtroom F – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

    Re:    **Dispute Regarding** *Facebook, Inc., v. BrandTotal, Ltd.,et al.,*
              NDCA Case No. 3:20-cv-07182

Dear Judge Spero:

    Defendants BrandTotal, Ltd. and Unimania, Inc. (collectively, "BrandTotal") and Plaintiff Facebook, Inc. ("Facebook") submit this joint letter brief regarding BrandTotal's early discovery requests. Counsel for the parties attest they met and conferred on the issues presented below via videoconference on Tuesday, December 29, 2020, pursuant to paragraph 9 of the Court's standing order and that such videoconference included lead counsel for both parties.

                                Sincerely,

                                HUSCH BLACKWELL LLP

                                Rudolph A. Telscher
                                Counsel for Defendants BrandTotal, Ltd. and
                                Unimania, Inc.

**BrandTotal's Position**: BrandTotal contends it only collects, with user consent, deidentified and non-sensitive advertising data to provide advertising consulting services. In October 2020, after beginning its investigation into BrandTotal months earlier, Facebook took actions to cutoff BrandTotal's access to the data it needs to run its business. Facebook attempts to justify its actions primarily on two grounds: (1) a claimed desire to protect user interests (and not an effort to act anticompetitively); and (2) a purported obligation to cutoff BrandTotal's access to users' data and report BrandTotal to the FTC arising from when Facebook was severely punished by the FTC for violating user rights. While it is no surprise Facebook denies anti-competitive conduct, BrandTotal seeks reasonable discovery, narrowed in view of the Court's instructions, to explore these issues in preparation for a likely motion for preliminary injunction. Facebook is unduly limiting the scope of discovery by merely claiming BrandTotal's allegations of anticompetitive behavior are "implausible" or "speculative." The federal and state government, as well as pending class actions, take a strong position to the contrary.[1] Of course it is entirely plausible that Facebook could cleverly turn a punishment into an anti-competition weapon, and, in any event, it is not up to Facebook to decide which theories of the case are plausible and only to provide discovery at those theories it deems so.

There are three specific requests discussed in this dispute letter, and each is directed to probing Facebook's claimed public interest. Although discussed in detail below, Facebook objects to each request to the extent it seeks information beyond Facebook's actions toward BrandTotal. These objections miss the point. To what extent Facebook treated BrandTotal—or treats all entities that also provide advertising analytics services—differently from other entities is directly relevant to Facebook's claimed public interest, and BrandTotal's claim that Facebook's actions are instead motivated by anti-competitive interests. Facebook's claims of undue burden are also proven false. Indeed, Facebook justifies its undue burden objections only by completely misinterpreting the scope of BrandTotal's requests. BrandTotal is not seeking specific details on all reports under the FTC Order or Facebook's investigations into other entities after Facebook detected data scraping. BrandTotal is simply asking for information that shows how, if at all, and why Facebook treated BrandTotal differently from other entities. If Facebook treats entities that collect data to provide advertising analytics the same as any other entity that automatically collects data, Facebook only need say so. That Facebook continues to protest and refuse to provide this information supports BrandTotal's theory.

Interrogatory No. 9/Deposition Topic No. 9: Interrogatory No. 9 and Deposition Topic No. 9 both seek information concerning Facebook's compliance with the FTC Order that Facebook injected into this case. Although Facebook has agreed to provide information pertaining to BrandTotal, Facebook refuses to provide information regarding any internal policies, procedures,

---

[1] *See e.g.*, Cyrus Farivar, *App Developers Sue Facebook Alleging an "Anticompetitive Scheme"*, NBCNews (Jan. 16, 2020, 7:21 PM MST), https://www.nbcnews.com/tech/tech-news/app-developers-sue-facebook-over-alleged-anticompetitive-scheme-n1117551; *FTC Sues Facebook for Illegal Monopolization*, FTC.gov (Dec. 9, 2020), https://www.ftc.gov/news-events/press-releases/2020/12/ftc-sues-facebook-illegal-monopolization; *Challenge to FTC/Facebook 2019 Settlement*, Electronic Privacy Information Center, epic.org, https://epic.org/privacy/facebook/epic2019-challenge/

or its actions against other companies similarly situated to BrandTotal. Facebook contends it allows other third parties to collect data from its site using automated means, raising serious questions about why Facebook allows some companies, but feels compelled to stop others. Indeed, knowing such information will help this Court craft a remedy should it be inclined to allow BrandTotal to collect data in some fashion. Facebook made the FTC Order relevant in this case by claiming it has a legitimate business purpose to prevent BrandTotal's access due to its obligations under the FTC Order. *See* ECF No. 58, 24. If Facebook is selectively reporting entities that also offer competitive advertising analytics services, the evidence is likely to support that Facebook is merely using the FTC consent judgement, a punishment to Facebook, as a sword to stop competition.

The interrogatory is also not overly broad or unduly burdensome, and Facebook's written objections do not even attempt to establish any burden imposed on Facebook in responding. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-CV-05944SC, 2015 WL 13756255, at *6 (N.D. Cal. Oct. 22, 2015) ("To the extent Toshiba complains of undue burden, Toshiba's submissions did not include a declaration to that effect and therefore it is assumed that the burden is not undue . . . ."). Moreover, Facebook has already produced a document (purportedly submitted to the FTC) listing the entities reported. All Facebook had to do was then identify that document pursuant to Rule 33(d). Facebook instead selectively undertook an additional burden to redact all names other than BrandTotal. Producing unredacted information is in fact less burdensome than the acts Facebook has elected to undertake.

Facebook's objections to Deposition Topic No. 9 are similarly insufficient to meet Facebook's burden to not adequately prepare its corporate representative to testify as to the full scope of this deposition topic. "[T]he 'proper procedure to object to a Rule 30(b)(6) deposition notice is not to serve objections on the opposing party, but to move for a protective order.'" "A corporate deponent cannot simply make 'objections and then provide a witness that will testify only within the scope of its objections.'" *Rembrandt Diagnostics, LP v. Innovacon, Inc.*, No. 16-CV-0698 CAB (NLS), 2018 WL 692259, at *3 (S.D. Cal. Feb. 2, 2018) (quotation omitted). This, however, is exactly what Facebook does here. Regardless, Facebook's objections should be objected for the same reasons discussed above with respect to Interrogatory No. 9.

As a compromise to resolve the parties' dispute over Interrogatory No. 9 and Deposition Topic No. 9, BrandTotal proposed Facebook produce documents similar to the one month report Facebook has already produced, but in unredacted form, from March 2020 (when Facebook first became aware of BrandTotal) to the present. Facebook's response to Interrogatory No. 9 should then identify those documents pursuant to Federal Rule of Civil Procedure 33(d). To the extent Facebook has current knowledge, without the need for additional investigation, as to whether any entity identified in those reports provides advertising analytics services, Facebook's response should also identify those entities. To the extent Facebook is unaware of what services entities identified in the reports provide, Facebook's response should so state. Similarly, for Deposition Topic No. 9, Facebook should prepare a witness to testify only to Facebook's acts of reporting entities under Part IX of the FTC Order where Facebook knows those entities provide advertising analytics services. To the extent Facebook is unaware of the types of services the entities provide, Facebook's witness can simply testify as to those facts. Facebook rejects BrandTotal's

compromise, again claiming that the information is not relevant because BrandTotal's theory is implausible. That, however, is not the standard and Facebook's objections are proven to be made in bad faith.

Deposition Topic No. 7: Facebook also has not met its burden to show the good cause necessary to obtain a protective order under Federal Rule 26(c) relating to Topic No. 7, which seeks information regarding Facebook's general practices and procedures for addressing perceived data scraping once it has been detected. Facebook again improperly attempts to limit this topic to Facebook's actions regarding BrandTotal only. But whether Facebook's actions toward BrandTotal were typical of how Facebook handles instances of detected data scraping is directly relevant to Facebook's claimed public interest. Does Facebook have a standard procedure, or are the acts of Facebook employees at their own discretion? What does Facebook investigate? Does Facebook normally review the source code? How long does that review normally take? Does Facebook's review process change if the perceived data scraping is collecting information to provide advertising analytics? By refusing to answer these questions, Facebook refuses to provide information that would allow BrandTotal to determine whether Facebook treated BrandTotal differently because of its status as a potential competitor. Facebook has not met its burden to withhold this information.

**Plaintiff's Position:** On November 20, 2020, the Court ordered limited expedited discovery in advance of BrandTotal's anticipated filing of a motion for a preliminary injunction. Dkt. 74. BrandTotal served a total of nine Requests for Production, eleven Interrogatories, seven Requests for Admission, and identified nine topics for a 30(b)(6) deposition. Exs. A-D. Although many of BrandTotal's discovery requests extended far beyond any scope of discovery reasonably related to the subject of any forthcoming preliminary injunction motion, the parties were able to reach agreement as to the scope of most of BrandTotal's requests. In response to those requests, Facebook expects to produce at least four (and potentially more) witnesses for deposition in the next ten days and has already produced nearly 17,500 pages of documents (in contrast to BrandTotal's total production of just 1,586 pages, nearly half of which were previously attached to BrandTotal's filings in this court). The parties were not able to reach agreement as to two specific Rule 30(b)(6) Topics (Topics 7 & 9) and one of BrandTotal's Interrogatories (No. 9), described in detail below. Accordingly, Facebook seeks a protective order with respect to Topics 7 and 9, and asks the Court to deny BrandTotal's request that the Court compel a further response to Interrogatory No. 9.

All three disputed requests appear to rest on a wildly speculative theory of relevance—namely that Facebook manipulates its anti-scraping enforcement and its compliance with the FTC consent decree to gain a competitive advantage on BrandTotal. Not only is the theory implausible, it is not well-pleaded because, among many other reasons, BrandTotal has not even attempted to define the relevant market. Dkt. 77. Instead, to fish for facts to substantiate these far-fetched theories, BrandTotal has asked Facebook to undertake burdensome and irrelevant discovery that is unquestionably disproportionate to the needs of the case at this preliminary stage. *E.g.*, *Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 1595793, at *3 (N.D. Cal. May 4, 2012) (limiting expedited discovery requests that were irrelevant to preliminary injunction, holding "such discovery is properly left until after the Preliminary Injunction Motion is resolved"). BrandTotal should be

precluded from engaging in sweeping discovery on issues that are irrelevant to altering this Court's conclusion that the public interest does not favor "requiring Facebook to provide immediate access to an automated data collection program." Dkt. 58 at 31. As detailed in Facebook's opposition to Defendant's motion for expedited discovery, Dkt. 72 at 5, the Court's stated reason for denying Defendants' motion for a temporary restraining order is not likely to change on a preliminary injunction regardless of what evidence Defendants may be able to put forth after discovery.

**Topic 7** seeks broad deposition testimony on Facebook's procedures for addressing data scraping. Ex. D. Facebook objected to the request as overbroad and on the basis that it seeks information not relevant to the claims or defenses in this case, but agreed to designate one or more witnesses to testify concerning non-privileged information regarding the procedures that Facebook followed in responding to BrandTotal's unauthorized automatic collection of data.

A request for testimony regarding Facebook's protocols for addressing *any* type of data scraping by actors other than BrandTotal is overbroad and not relevant to BrandTotal's anticipated motion for preliminary injunctive relief. Facebook has produced extensive information in response to BrandTotal's interrogatories and requests for production describing Facebook's investigation of BrandTotal's scraping activity and its response to that activity. Preparing a witness to discuss Facebook's policies and investigative actions in response to *all* data scraping investigations on an expedited basis is disproportional to the needs of the case at this stage and would do nothing to counter the Court's finding on the public interest, Dkt. 58 at 29. The relevant inquiry here is whether BrandTotal breached Facebook's terms. The Court has already held that it did, *see* Dkt. 58 at 29, and there is no further need for expedited discovery into *other* parties who are not before the Court.

**Topic 9** seeks testimony on compliance with the FTC order, including communications with the FTC. Ex. D. Facebook objected to that topic as overbroad and unduly burdensome to the extent it seeks irrelevant information including "(1) information concerning Facebook's compliance with the FTC Order beyond the requirements that Facebook enforce its terms against the unauthorized automated collection of data and report Covered Incidents, … and (2) information concerning Facebook's communications to the FTC not relating to Covered Third Parties or Covered Incidents …." Ex. D. Facebook agreed to designate a witness to testify regarding non-privileged facts and circumstances regarding Facebook's communications to the FTC relating to BrandTotal. Relatedly, **Interrogatory 9** asks Facebook to identify and describe each instance of a Covered Incident Report under Part IX of the FTC Order. Ex. B.

When asked to explain why this information is relevant, BrandTotal's counsel explained that it is seeking evidence to support a theory that Facebook is selectively reporting entities that may be "competitors" to Facebook (in BrandTotal's view) to the FTC while not reporting entities that are not competitors. *See also* Ex. E (December 14, 2020 Letter from D. Taylor) ("To the extent Facebook is primarily reporting entities that also seek to offer competitive advertising analytics services, Facebook's objective purpose in reporting is anti-competitive."). BrandTotal is not entitled to sweeping discovery on Facebook's reporting to the FTC based on nothing more than unfounded (and frankly, irresponsible) conjecture that Facebook would do anything other than comply in good faith with the FTC order. *See e.g.*, *Sirota v. Penske Truck Leasing Corp.*, 2006

WL 708910, at *1 (N.D. Cal. Mar. 17, 2006) ("Requested discovery is not relevant … if the inquiry is only based on the requesting party's mere suspicion or speculation."). Indeed, while BrandTotal contends that Facebook "allows other third parties to collect data from its site using automated means" and may be "selectively reporting entities that also offer competitive advertising analytics services," it offers no support for these statements and no explanation for how its premise can be squared with this Court's prior determination that Facebook has a legitimate business interest "in securing its platform to comply with legal obligations and protect users' privacy." Dkt. 58 at 24. BrandTotal cannot now seek to undermine that determination with a fishing expedition it justifies with only innuendo and imagination, especially during limited expedited discovery.

The disproportionate burdens of Rule 30(b)(6) Topics 7 & 9 and Interrogatories No. 9 and lack of relevance to the current proceedings underscore the need to limit BrandTotal's requests to issues that are relevant to its anticipated preliminary injunction motion. ████████████████████████████████████████████████████████████████████████████████████ That should end any reasonable inquiry.

Perhaps recognizing the burden and disproportionality of its requests, BrandTotal proposed that Facebook (1) produce an unredacted copy of its reporting to the FTC from March 2020 to date showing all incidents Facebook reported to the FTC; (2) Facebook identify all entities reported to the FTC that provide advertising analytics services to the extent Facebook has current knowledge; and (3) prepare a witness to testify about Facebook's reporting of entities under Part IX of the FTC consent decree where those entities were known to provide advertising analytics services. Ex. G (Jan. 2, 2021 e-mail from D. Taylor). But that proposed compromise does nothing to make the discovery relevant, and little to alleviate the burden. While BrandTotal claims that Facebook has not articulated the burden of these requests, Facebook clearly explained that burden during the parties' meet and confer and in its December 29, 2020 memorialization of that call. *See* Ex. H (Dec. 29, 2020 e-mail from Ms. Mehta) (detailing burden of analyzing scraping underlying each reported incident). ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of January, 2021, I caused the foregoing to be served via electronic mail upon the following:

WILMER CUTLER PICKERING
HALE AND DORR LLP
SONAL N. MEHTA (SBN 222086)
sonal.mehta@wilmerhale.com
THOMAS G. SPRANKLING (SBN 294831)
thomas.sprankling@wilmerhale.com
JOSEPH M. LEVY (SBN 329318)
joseph.levy@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

ARI HOLTZBLATT
Ari.Holtzblatt@wilmerhale.com
ALLISON SCHULTZ
Allison.Schultz@wilmerhale.com
ROBIN C. BURRELL
robin.burrell@wilmerhale.com
1875 Pennsylvania Ave, NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

HUNTON ANDREWS KURTH LLP
Ann Marie Mortimer (State Bar No. 169077)
amortimer@HuntonAK.com
Jason J. Kim (State Bar No. 221476)
kimj@HuntonAK.com
Jeff R. R. Nelson (State Bar No. 301546)
jnelson@HuntonAK.com
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone: (213) 532-2000
Facsimile: (213) 532-2020

***Attorneys for Plaintiff/Counterclaim Defendant Facebook, Inc.***

*/s/ Rudolph A. Telscher, Jr.*