**WILMERHALE**

**Sonal N. Mehta**

+1 650 600 5051 (t)
+1 650 858 6100 (f)
sonal.mehta@wilmerhale.com

September 1, 2021

**VIA ECF**

Chief Magistrate Judge Joseph C. Spero
San Francisco Courthouse
Courtroom F – 15th Floor
450 Golden Fate Avenue
San Francisco, CA 94102

Re:   *Facebook v. BrandTotal*, 3:20-cv-07182-JCS (N.D. Cal)

Dear Judge Spero,

    Plaintiff Facebook, Inc. and Defendants BrandTotal, Ltd. and Unimania, Inc. (collectively, "BrandTotal") submit this joint letter brief regarding a discovery dispute in the above-captioned matter. Counsel for the parties attest that lead counsel met and conferred on the issue presented below via videoconference on August 13, 2021 and August 23, 2021 and agreed to file this letter brief on September 1, 2021.

Sincerely,

*/s/ Sonal N. Mehta*
Sonal N. Mehta

**Facebook's Position:**

The core allegations in this lawsuit are that BrandTotal has unlawfully and fraudulently scraped data from Facebook in violation of Facebook's terms and then repackaged and sold that information to its customers for a profit. *See, e.g.*, FAC ¶¶ 44, 49, 90-96, 121, 123. In proving those allegations, it is critical that Facebook understand not only what information BrandTotal is scraping and the technical means by which it is doing so but also what BrandTotal then does with the scraped information—including not only the fact that the information is sent to third parties but also how the data is stored and processed, including whether the data is personally identifiable or not. To collect evidence regarding how BrandTotal stores and processes the data that it collects, Facebook requested that BrandTotal produce "Documents sufficient to show [its] past or current Products, including apps or extensions that access or have accessed data from Facebook or Instagram and, for each, the categories and scope of data collected from Facebook and how it is analyzed and ingested to provide Products or services to Your Customers," Ex. A at 5 (Request For Production No. 11), and "All Documents relating to the nature, size, and methods [BrandTotal] use[s] or used to store data of information [it] obtained from Facebook Computers using [its] Technology," Ex. B at 5 (Request For Production No. 25). In response, BrandTotal has refused to produce any code showing what it does with the data that it collects from Facebook's systems.

At the outset, BrandTotal disputes whether Facebook has requested this information. It contends, for example, that it has no obligation to produce the code at issue in response to RFP 25 because it is obliged to produce only "documents sufficient to show the nature, size, and method by which BrandTotal stores information" collected from Facebook. *See infra* p. 4. But even if that were true, BrandTotal has not produced documents sufficient to satisfy that request. It has produced only invoices from Amazon Web Services, which show how much money BrandTotal has paid for cloud storage services, but nothing about the actual methods by which BrandTotal stores Facebook data, including the form in which the data is stored, how it is used, or the extent to which that data is shared with others. To understand that, Facebook must be able to analyze the relevant code.[1] And as to RFP 11, BrandTotal contends that Facebook has not sought the requested discovery diligently because it did not take issue in December 2020 with BrandTotal's position that it would not produce documents showing how it processes data. *See infra* p. 4. But that was in the context of limited, expedited discovery in anticipation of BrandTotal's motion for preliminary injunction, where discovery was necessarily limited to the specific issues relevant to that motion. Since the case entered full fact discovery, Facebook has sought this information diligently, including through multiple rounds of email communications and meet and confers.

As a result, after an extended meet and confer, BrandTotal has agreed to produce code for its apps and extensions and the backend code that accesses Facebook's servers. But that tells only

---

[1] BrandTotal's suggestion that source code does not fall within the scope of RFP 25, *see infra* p. 4, is without merit. Facebook's requests define "Document" broadly to include "all written … matter." Ex. B at 3. Nor does Facebook's definition of "Technology" to include source code change that. Facebook defined Technology so that it could appropriately scope certain of its requests to cover BrandTotal's products, services, code, etc. That does not mean that code is somehow carved out of the scope of its other requests that call for Documents including all written matter.

part of the story. As Facebook has explained, what is needed is BrandTotal's "end-to-end code," Ex. C at 2, including "server-side source code that shows how BrandTotal processes, uses, and stores the data that is collected," Ex. D at 6. It is that last—important—piece on which BrandTotal resists discovery. Although BrandTotal waves its hands at burden and confidentiality as excuses to not produce this code (both of which are addressed below), BrandTotal's core argument is that the code showing what BrandTotal does with the data that it collects is not relevant. Not so.

First, BrandTotal represents to its panelists that it shares panelists' information only "on an aggregated, non-personal basis." BrandTotal, *UpVoice Privacy Policy* (May 26, 2021), https://privacy.joinupvoice.com/privacy_policy.pdf. If, however, BrandTotal is nonetheless sharing any information in a personally identifiable way, then its contrary representation to panelists would be relevant to at least Facebook's claims under Section 17200 *et seq.* of the California Business and Professions Code ("UCL"), *see In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1074 (N.D. Cal. 2012) (holding that deceptive statements regarding the use of personal information can violate California's unfair competition law); section 502 of the California Penal Code, *see* Cal. Penal Code § 502(c)(1) (making it a violation to access and use data without permission and to "wrongfully … obtain money"); and to its request for disgorgement. What matters, in other words, is not only the fact that BrandTotal is sharing the data it scrapes from Facebook but how and in what form it is processing and sharing that data.

And Facebook has alleged facts showing that BrandTotal did collect non-anonymized information. Despite BrandTotal's representations—including in this letter—that it collects only deidentified information, at least two of BrandTotal's applications did not anonymize information it scraped from Facebook computers. *See* FAC ¶ 67. BrandTotal's bald assertion that Facebook's allegation is false, *see infra* p. 5, confirms that there is a factual dispute regarding how BrandTotal collects and uses Facebook data that must be resolved. Facebook must, therefore, be able to test BrandTotal's representations regarding the operation of its products and processes—including not only what information is collected and in what form but also how that information is stored, processed, and used. Facebook need not take BrandTotal at its word that it sends only aggregated, deidentified data to third parties. *See Displaylink Corp. v. Magic Control Tech. Corp.*, 2008 WL 2915390, at *1-*2 (N.D. Cal. July 23, 2008) (granting motion to compel the production of source code where plaintiff needed that code to "verify [defendant's] contentions" regarding the code's operation). And no other discovery can provide Facebook with the information sought. BrandTotal's application, extension, and back-end collection code, for example—which it has either already produced or agreed to produce—show only *what* information it collects but not *how* BrandTotal stores, processes, and uses that information.

Second, how BrandTotal uses the data that it collects from Facebook is central to the claims and defenses in the case. Section 502 of the California Penal Code, for example, creates liability not only for scraping data in order to wrongfully obtain money but also more generally "mak[ing] use of any data" accessed without permission. Cal. Penal Code § 502(c)(2). And BrandTotal has put the means by which it analyzes and repackages the information that it collects squarely at issue by alleging that Facebook has interfered with its ability to "compile advertising analytics for its customers." Second Am. Countercl. ¶ 86. Facebook must be able to understand how BrandTotal uses the data that it collects to test that allegation and to mount its defense to BrandTotal's claim.

In view of the above, the Court should reject BrandTotal's superficial suggestion that Facebook's request exceeds what is relevant and proportional under Rule 26. BrandTotal contends that the burden of producing the code at issue is disproportional to the code's relevance, but has never articulated or substantiated any burden associated with producing or making this code available for inspection, let alone why it would be undue given the relevance of the code to the parties' claims and defenses. Instead, BrandTotal's argument throughout the meet and confer process and even now seems to be that BrandTotal does not agree that this information is relevant, so any effort to produce the code is necessarily disproportionate. That is not the relevant inquiry. *See* ECF 93. And in any case, BrandTotal has not identified any cognizable burden at all. For the same reasons, BrandTotal's suggestion that it should not have to produce its "most proprietary asset" rings hollow. BrandTotal has not articulated any concerns regarding the confidentiality of its code. To the contrary, BrandTotal's lead counsel confirmed that BrandTotal is not objecting to producing this code based on confidentiality concerns and the protective order in place is adequate.

Finally, BrandTotal's proposed compromises—that it provide a snapshot or sample of the reports or dashboards that it produces for customers—are inadequate. While those snapshots and samples might give Facebook some insight into *some* of what BrandTotal does with the data it collects, the only way for Facebook—and ultimately the fact-finder—to truly know what BrandTotal does with the data it scrapes from Facebook's systems is to review and analyze the source code that controls how the data ingested into BrandTotal's systems is processed and used.

Facebook respectfully requests an order compelling BrandTotal to produce all source code used in storing, analyzing, and producing information or services to a third party using data collected from Facebook.

**BrandTotal's Position:**

Facebook claims BrandTotal improperly collected data from Facebook's Products "using automated means" without Facebook's prior permission. Although Facebook had been reviewing the code for some of BrandTotal's applications and extensions for years prior to filing its complaint, BrandTotal has produced all of its source code responsible for receiving and collecting Facebook and Instagram information, totaling more than 550 versions of application and extension code and what will be several hundred more versions of the BrandTotal "Backend" code that accesses non-password protected portions of Facebook. BrandTotal has also agreed to produce representative samples of data it has collected since 2016.

That, however, is apparently not enough for Facebook. Facebook is now demanding it is entitled to not only the source code for BrandTotal's applications, extensions, and Backend that BrandTotal uses to obtain Facebook and Instagram information, but to **all** of BrandTotal's code (what Facebook terms the "end to end" code), which includes the code for the advertising analytic services provided by BrandTotal's end customers. Facebook's demand should be denied for two reasons. First, Facebook has not properly requested this source code. Second, even if Facebook had requested this code, Facebook's request is neither relevant to any claim or defense nor proportional to the needs of this case. Facebook's request for the "end to end" code encompasses *all* of BrandTotal's source code across the entire company, including how BrandTotal provides the advertising analytics that distinguishes itself from competitors, including Facebook.

Facebook's claimed relevance merely concludes that "how" BrandTotal uses what it collects is relevant. It is not. The information BrandTotal has produced shows: it uses only deidentified information; and what insights it provides to its customers. Facebook's relevance argument—that somehow deidentified information is transformed between the input and output—is nothing more than a thinly guised fishing expedition and harassment. Although the protective order provides some protection for this code, discovery must still be proportional to the needs of the case considering the parties' relative access to relevant information and the importance of the discovery in resolving the issues.

1. <u>Facebook has not served any discovery request for the "end to end" code.</u>

The first reason to deny Facebook's motion to compel is Facebook's failure to actually propound a request directed to what it now seeks. Facebook's Requests For Production specifically define only one term—"Technology"—to include source code. Ex. B at 3. Neither of the Requests For Production Facebook identifies in this letter request "Technology." Ex. A at 5 ("Documents sufficient to show . . . ."); Ex. B at 5 ("All Documents relating to . . . ."). Although Facebook claims "Documents" includes requests for source code as "written matter," that Facebook needed to separately define "Technology" to expressly include source code disproves this argument. Notably, Facebook does not argue that this "end to end" code is responsive to the one Request (No. 20) that actually does collect source code, despite previously claiming otherwise. *See* Ex. D at 1.[2]

Moreover, in response to Request number 11, BrandTotal responded on December 7, 2020, that it "will not provide any documents directed to the specifics of how the deidentified data is processed to provide its data analytics offerings (as this is irrelevant and a trade secret), but will produce documents reflecting the data analytics offerings generally." Facebook never took issue with BrandTotal's objection before and, even if this Request sought such source code (which it does not), has failed to diligently pursue this discovery. Similarly, in response to Request number 25, BrandTotal stated it would provide "non-privileged documents sufficient to show the nature, size, and method by which BrandTotal stores information Panelists share from Facebook or Instagram servers." Again, Facebook did not take issue with BrandTotal's response and BrandTotal has produced invoices relating to how it stores data it receives from Panelists.

2. <u>The "end to end" code is neither relevant nor proportional to the needs of this case.</u>

Even if Facebook had requested this "end to end" code (or does so in the future), any such

---

[2] Although Facebook originally argued BrandTotal's "end to end" code was responsive to the single Request For Production that did seek technology (No. 20), Facebook elects not to make that argument here.. Regardless, Request No. 20 seeks only "Technology" used for "accessing and communicating with Facebook computers." Although BrandTotal disputes that its applications and extensions access or communicate with Facebook computers—but instead communicate with the computers of its users and Panelists—BrandTotal has nevertheless BrandTotal produced over 550 versions of code and will produce hundreds more versions of code for the Backend code in response to this Request.

4

request is neither relevant to any claim or defense in this action nor proportional to the needs of this case. *Uniloc USA, Inc. v. Apple Inc*., No. 18-CV-00362-PJH (LB), 2018 WL 2002979, at *2 (N.D. Cal. Apr. 30, 2018) ("Courts in this district have rejected discovery requests for source code where the requesting party has not shown why the code is relevant to claims or defenses or the request is overbroad and disproportionate to the case."). How BrandTotal specifically analyzes, or otherwise uses the information it receives to provide proprietary analytics to its customers is not relevant to any claim or defense. Neither of Facebook's reasons suggests otherwise.

Facebook first argues, in a theory first raised in this letter, that the "end to end" code is relevant to show BrandTotal is misrepresenting to its panelists that it shares their information only on an aggregated, non-personal basis. Facebook's claimed relevance is entirely speculative. *See* Facebook's position at 2 ("**If**, however, BrandTotal is nonetheless sharing any information in a personally identifiable way . . . .") (emphasis added). Facebook's theory is also entirely absent from its FAC, which instead alleges only that Defendants falsely represented Facebook was a participating site and pretended to be a legitimate user to scrape data from Facebook. SAC, ¶ 121. Facebook cannot now launch a fishing expedition into the lifeblood of Defendants' company.

Furthermore, Facebook fails to explain what information BrandTotal's highly sensitive "end to end" code will provide beyond the vast amounts of information BrandTotal has already provided or agreed to provide. Fed. R. Civ. P. 26(b)(1) (explaining discovery must be proportional to the needs of the case, considering the "parties' relative access to relevant information"). BrandTotal has produced hundreds of versions of source code that shows what information BrandTotal receives. BrandTotal is also producing thousands of samples of raw data it receives. This production unequivocally shows BrandTotal receives only deidentified information. Indeed, despite having first reviewed at least some of BrandTotal's applications and extensions years ago, Facebook does not contend BrandTotal's applications and extensions collect anything other than deidentified information. Thus, any use of this information is itself deidentified information. Indeed, Paragraph 67 of Facebook's FAC (wherein Facebook incorrectly alleges BrandTotal collected personally identifiable information) proves Facebook can use even publicly available information to discern what information BrandTotal collects.

Facebook also argues that "how BrandTotal uses the data it collects from Facebook is central to the claims and defenses in the case." Facebook is, again, wrong. To the extent *use* of data (as opposed to mere access or collection) is relevant under either statute, the specific ways the code uses the data are not. This is not a patent case where the operation of the code must meet some specific claim limitation. BrandTotal has shown it uses the deidentified information to provide advertising analytics for its customers. There is no relevance beyond this basic truth. Facebook's demand for all of BrandTotal's source code is therefore not proportional to the needs of the case and whatever minimal relevance such use may have can be ascertained through less burdensome and intrusive methods. The code surrounding the provision of analytics to BrandTotal's customers is its most proprietary asset. It should not be produced to a competitor where its relevance is at best negligible. BrandTotal has already produced documents showing the types of insights it provides its customers and can provide snapshots of the services it provides its customers. Although Facebook declined this offer, Facebook has not adequately explained what relevance BrandTotal's source code would provide over such less intrusive discovery.

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2021, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

Dated: September 1, 2021   By:   */s/ Sonal N. Mehta*
                                  Sonal N. Mehta