WILMER CUTLER PICKERING HALE AND DORR LLP
SONAL N. MEHTA (SBN 222086)
sonal.mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, CA 94306 USA
Telephone: (650) 600-5051

ARI HOLTZBLATT (*pro hac vice*)
Ari.Holtzblatt@wilmerhale.com
ALLISON SCHULTZ (*pro hac vice*)
Allison.Schultz@wilmerhale.com
ROBIN C. BURRELL (*pro hac vice*)
robin.burrell@wilmerhale.com
1875 Pennsylvania Ave, NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

ANDY R. O'LAUGHLIN (*pro hac vice*)
andy.olaughlin@wilmerhale.com
60 State Street
Boston, MA 02109
Telephone: (617) 526-6220

CINDY PAN (*pro hac vice*)
cindy.pan@wilmerhale.com
250 Greenwich Street
New York, NY 10007
Telephone: (212) 937-7275

Attorneys for Plaintiff/Counter Defendant
Meta Platforms, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| META PLATFORMS, INC., a Delaware corporation,<br><br>Plaintiff / Counterclaim Defendant,<br><br>vs.<br><br>BRANDTOTAL LTD., an Israeli corporation, and UNIMANIA, INC., a Delaware corporation,<br><br>Defendants / Counterclaim Plaintiffs. | Case No. 3:20-CV-07182-JCS<br><br>**DECLARATION OF SANCHIT KARVE IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hon. Joseph C. Spero |

I, Sanchit Karve, declare:

1. I submit this declaration in support of Plaintiff Meta Platforms, Inc.'s ("Meta") Motion for Summary Judgment in the above-captioned matter. I have personal knowledge of the facts set forth herein, and if called to testify as a witness, I could do so competently under oath.

2. I have a Bachelor's and Master's degree in computer engineering and computer science, respectively. I have professional experience in malware analysis, including reverse engineering malware.

3. I am employed by Meta as a Malware Researcher on the Core Platform Security Team at Meta. I have been employed by Meta since 2018. Prior to April 2021, I was a Malware Researcher on the eCrime team. My responsibilities as a Malware Researcher include identifying types of malware (*e.g.* ransomware, banking Trojan, keylogger, data scraper), malware vulnerabilities (*e.g.* method used to obtain access to the targeted computer), the infrastructure used by the malware (*e.g.* servers, IP addresses, domain names), and malware functionality (*e.g.* steal login credentials, banking information). On the Core Platform Security team, I also have access to Facebook and Instagram account and administrative records.

**Enforcement Plan Against BrandTotal**

4. As stated in my October 21, 2020 Declaration, Dkt. 42, which I incorporate here by reference, I investigated multiple BrandTotal browser extensions beginning in or around March 2020. I spent approximately 50 hours between March 2020 and September 2020 and approximately 10 hours in October 2020 investigating BrandTotal's apps and extensions.

5. After determining that the extensions violated the Facebook Terms of Service and the Instagram Terms of Use, I assisted in developing an enforcement plan with respect to BrandTotal. That plan included disabling BrandTotal's known Facebook and Instagram accounts and contacting the Google Chrome Web Store to report BrandTotal's extensions.

6. My former colleague Jeremy Brewer emailed a contact at Google on September 21, 2020, about two BrandTotal browser extensions. His email accurately described Meta's

-1-

understanding of the operation of BrandTotal's extensions and the substance of its disclosures to users, as based upon our investigations at the time.

7. As of September 21, 2020, I understood from our investigation that BrandTotal's claim that it anonymized user data was misleading because it used a hash function on user IDs that did not fully or securely anonymize the information collected. Even with a properly hashed user ID, for example, it is possible to correlate information from different entries bearing the same hashed user ID to discovery the identity of the user. Additionally, because Facebook user IDs have defined lengths and ranges of valid values, they can be reverse engineered relatively easily even when hashed. I also understood from our investigation that BrandTotal's method of data collection was not targeted, meaning that in order to collect one piece of information, its extensions also collected additional, related information. The collection of that additional information was not disclosed to users. And finally, I was also aware that multiple individuals in a household could be using an extension installed on a shared household computer, some of whom might have been unaware of the extension's operation and data collection.

8. In addition to disabling BrandTotal's known Facebook and Instagram accounts, reporting BrandTotal's extensions to Google was a part of Meta's enforcement plan because only Google can remove extensions from the Chrome Web Store and thus prevent those extensions from being downloaded by additional users. When the extensions were reported to Google, I did not know how or whether Google would respond to Meta's report. I did understand that, if Google decided to remove the extensions, their removal would at least prevent future users from installing BrandTotal's extensions and thus help to reduce the ongoing impact of BrandTotal's breach of the Facebook and Instagram terms.

9. It is routine for Meta to report applications and extensions that violate Facebook and Instagram terms to Google. It is (and was at the time of the September 21, 2020 email to Google) my understanding that Google conducts an independent review of the relevant applications or extensions in response to any such report.

10. Google does not always respond to Meta's reports by removing the reported applications or extensions. It is my understanding that Google only removes an application or extension if Google independently determines that the application or extension violates its terms of service and warrants removal.

**BrandTotal's Still-Active Facebook and Instagram Accounts**

11. On February 13, 2017, Facebook user account ##########1237 (Account 7) was created using the name "Mosh Ofnic." Account 7 has never been disabled and remains active to this day. Meta was not aware of this account when this lawsuit was filed in October 2020 and has never taken any action against it.

12. On May 10, 2017, Instagram user account ############0445 (Account 8) was created using the name "Mosh Ofnic." Account 8 has never been disabled and remains active to this day. Meta was not aware of this account when this lawsuit was filed in October 2020 and has never taken any action against it.

13. On November 1, 2007, Facebook user account #########4906 (Account 9) was created using the name Liram Vardi. This is the user account associated with app-scoped user ID ##############4907. Account 9 has never been disabled and remains active to this day. Meta was not aware of this account when this lawsuit was filed in October 2020 and has never taken any action against it.

14. On June 25, 2017, Facebook user account ##########0114 (Account 10) was created using the name Ethel Johnson. Account 10 has never been disabled and remains active to this day. Meta was not aware of this account when this lawsuit was filed in October 2020 and has never taken any action against it.

15. On February 21, 2018, Facebook user account ##########3661 (Account 11) was created using the name Kylie Scott. Account 11 has never been disabled and remains active to this day. Meta was not aware of this account when this lawsuit was filed in October 2020 and has never taken any action against it.

CASE NO. 3:20-cv-07182-JCS

1
2   I declare under penalty of perjury that the foregoing is true and correct.
3
    Executed on this 11th day of March, 2022, in Mountain View, CA.
4
5
6
7   
8   _____
9   Sanchit Karve
10

-4-

**SIGNATURE ATTESTATION**

I am the ECF User whose identification and password are being used to file the foregoing Joint Case Management Statement.  Pursuant to Civil Local Rule 5-1(h), I hereby attest that the other signatures have concurred in this filing.

Dated:  March 11, 2022                                 By:     */s/ Sonal N. Mehta*
                                                                              Sonal N. Mehta

**CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2022, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

Dated:  March 11, 2022                                 By:     */s/ Sonal N. Mehta*
                                                                              Sonal N. Mehta