WILMER CUTLER PICKERING HALE AND DORR LLP
SONAL N. MEHTA (SBN 222086)
sonal.mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, CA 94306 USA
Telephone: 650 600 5051

ARI HOLTZBLATT (*pro hac vice*)
ari.holtzblatt@wilmerhale.com
ALLISON SCHULTZ (*pro hac vice*)
Allison.Schultz@wilmerhale.com
ROBIN C. BURRELL (*pro hac vice*)
robin.burrell@wilmerhale.com
1875 Pennsylvania Ave, NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

ANDY R. O'LAUGHLIN (*pro hac vice*)
andy.olaughlin@wilmerhale.com
60 State Street
Boston, MA 02109
Telephone: (617) 526-6220

CINDY PAN (*pro hac vice*)
cindy.pan@wilmerhale.com
250 Greenwich Street
New York, NY 10007
Telephone: (212) 937-7275

*Attorneys for Plaintiff/Counterclaim Defendant Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| META PLATFORMS, INC., a Delaware corporation,<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>BRANDTOTAL, LTD., an Israel corporation, and UNIMANIA, INC., a Delaware corporation,<br><br>Defendants/ Counterclaim Plaintiffs. | Case No. 3:20-CV-07182-JCS<br><br>**DECLARATION OF ALLISON SCHULTZ IN SUPPORT OF PLAINTIFF/COUNTERCLAIM DEFENDANT'S MOTION FOR ATTORNEY'S FEES** |

I, Allison Schultz, declare:

1. I am an attorney at Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale"), duly licensed to practice in the District of Columbia and admitted to appear *pro hac vice* in this matter. I represent Plaintiff/Counterclaim Defendant Meta Platforms, Inc. ("Meta") in the above-captioned matter.

2. I submit this declaration in support of Meta's Motion for Attorney's Fees. I have personal knowledge of each of the matters stated herein, and if called to testify, would testify consistent with this declaration.

**Calculation Of Fee Amount Based On Fixed-Fee Agreement**

3. As stated in the concurrently filed declaration of Sonal Mehta, Meta compensated WilmerHale for its representation in this matter pursuant to a fixed-fee agreement.

4. I have reviewed the billing records and have sought to isolate the fees incurred in connection with Meta's claims under the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502; Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; California unfair competition law ("UCL"); and for breach of contract.

5. To do this, I first eliminated the following fixed-fee amounts, which pertained to work performed exclusively or primarily in connection with the litigation of BrandTotal's counterclaims and not Meta's affirmative claims:

    a. $30,000 for Initial Case Strategy and Negotiations. WilmerHale initially represented Meta in connection with its defense against BrandTotal's counterclaims, and thus WilmerHale's initial case strategy and negotiations pertained primarily to BrandTotal's counterclaims.

    b. $25,000 for Initial Fact Investigation. As stated above, because WilmerHale initially represented Meta only in connection with its defense against BrandTotal's counterclaims, WilmerHale's initial fact-development work pertained primarily to those counterclaims.

    c. $240,000 for litigation of BrandTotal's motion for a temporary restraining order. Because the resolution of BrandTotal's motion for a temporary

restraining order depended upon BrandTotal's likelihood of success on its counterclaims, Meta has excluded this amount from its fee request.

    d.    <u>$400,000 for litigation of BrandTotal's first motion for a preliminary injunction</u>. As with BrandTotal's motion for a temporary restraining order, the resolution of BrandTotal's motion for a preliminary injunction depended upon BrandTotal's likelihood of success on its counterclaims; Meta has therefore excluded this amount from its fee request.

    e.    <u>$175,000 for litigation of BrandTotal's renewed motion for a preliminary injunction</u>. As with BrandTotal's motion for a temporary restraining order and first motion for a preliminary injunction, BrandTotal's renewed motion for a preliminary injunction depended upon BrandTotal's likelihood of success on its counterclaims; Meta has therefore excluded this amount from its fee request.

    f.    <u>$175,000 for Meta's first motion to dismiss</u>, which focused on the sufficiency of the pleading of BrandTotal's counterclaims.

    g.    <u>$125,000 for Meta's second motion to dismiss</u>, which focused on the sufficiency of the pleading of BrandTotal's counterclaims.

    h.    <u>$100,000 for Meta's third motion to dismiss</u>, which focused on the sufficiency of the pleading of BrandTotal's counterclaims.

    i.    <u>$45,000 for answering BrandTotal's third amended counterclaims</u>.

    j.    <u>$100,000 for Meta's document collection and production</u>, which pertained primarily to the collection and production of documents relevant to BrandTotal's counterclaims.

    k.    <u>$100,000 for the secondary review of documents prior to production</u>, which pertained primarily to the review of documents relevant to BrandTotal's counterclaims.

    l.    <u>$50,000 for Meta's responses to BrandTotal's written discovery responses</u>, which pertained primarily to BrandTotal's counterclaims.

      m.    <u>$120,000 for responding to BrandTotal's discovery motions</u>. BrandTotal filed three discovery motions, each seeking discovery relevant to its counterclaims.

      n.    <u>$210,000 for third-party document discovery</u>, which Meta served upon BrandTotal's customers and upon Google seeking information pertaining to BrandTotal's counterclaims.

      o.    <u>$105,000 for the depositions of Meta's fact witnesses</u> (Brian Hickey, Fred Leach, and Kim Stonehouse), which pertained to BrandTotal's counterclaims.

6. Meta does not seek to recover the fees listed above in paragraph 5.

7. I calculated the following fixed-fee amounts as pertaining to Meta's affirmative claims:

      a.    <u>$300,000 for the takeover of the offensive case</u>. Meta initially retained the firm Hunton Andrews Kurth ("Hunton") to represent it with respect to Meta's affirmative claims in this litigation. Meta paid a total of $300,000 to WilmerHale for all tasks related to taking over the case from Hunton.

      b.    <u>$320,000 for ongoing case strategy and communications</u>. Meta paid a total of $480,000 for ongoing case strategy and communications. I reduced that by one-third to eliminate fees pertaining to BrandTotal's counterclaims, which accounted for two of the six claims in the case at the summary-judgment stage.

      c.    <u>$16,666.67 for informal settlement discussions</u>, which pertained in significant part to the settlement of Meta's claims against BrandTotal. Meta paid a total of $25,000 for conducting informal settlement discussions. I reduced that amount by one-third to eliminate fees pertaining to BrandTotal's counterclaims.

      d.    <u>$15,000 for preparing motions to seal</u>. Meta paid a total of $25,000 for five motions to seal. I reduced that amount by 40% to eliminate fees associated with two motions to seal Meta's sanctions motion and reply in support of

that motion, given that the parties have already separately negotiated an attorney fee amount for work pertaining to Meta's motion for sanctions.

e. <u>$33,333.33 for preparing Meta's offensive written discovery requests</u>. Meta paid a total of $50,000 for offensive written discovery. I reduced that amount by one-third to eliminate fees associated with discovery requests pertaining to BrandTotal's counterclaims.

f. <u>$160,000 for preparing Meta's offensive discovery motions</u>. Meta filed four discovery motions, each seeking evidence relevant to its affirmative claims.

g. <u>$53,333.33 for preparing case management statements and participating in case management conferences</u>. Meta paid a total of $80,000 for case management statements and conferences. I reduced that amount by one-third to eliminate fees pertaining to BrandTotal's counterclaims.

h. <u>$90,000 for the depositions of BrandTotal's fact witnesses</u> Liram Vardi, Amir Leshman, and the March 21, 2022 deposition of Oren Dor (taken pursuant to the Hague Convention). Meta paid a total of $120,000 for four fact-witness depositions. I reduced that amount by one-quarter to eliminate fees associated with the deposition of Mark Mansfield, whose deposition pertained to BrandTotal's counterclaims.

i. <u>$150,000 for the Rule 30(b)(6) depositions</u> of Oren Dor (two depositions taken on January 13, 2021 and March 10, 2021), Yair Regev (one deposition taken on November 18, 2021 and continued on February 22, 2022), and Mike Clark (two depositions taken on February 10, 2021 and November 19, 2021). Meta paid a total of $360,000 for 12 Rule 30(b)(6) depositions. I reduced that amount by seven-twelfths to eliminate fees pertaining to the depositions of Alon Leibovich (two depositions, one taken on January 14, 2021, and one taken on November 9, 2021 and continued on February 20, 2022), Brandon Silverman, Sanchit Karve, Josh Newman, Oscar Padilla, and

|   |   |
|---|---|
| | Yohannan Engelhardt, whose depositions pertained primarily to BrandTotal's counterclaims. |
| j. | **$400,000 for defensive expert discovery**. Meta paid a total of $600,000 for defensive expert discovery, $200,000 each for BrandTotal's three expert witnesses. I reduced that amount by one-third to eliminate fees associated with BrandTotal's damages expert Mark Hoffman, whose expert report and deposition pertained to BrandTotal's counterclaims. BrandTotal's remaining experts, Robert Sherwood and Gary Wilcox, pertained to Meta's affirmative claims. |
| k. | **$750,000 for Meta's offensive expert discovery**. Meta retained three experts, Dave Martens, David Thaw, and Stephen Prowse, each relevant to Meta's affirmative claims. |
| l. | **$216.666.67 for Meta's offensive summary judgment motion**. Meta paid a total of $325,000 in connection with its offensive summary judgment motion. I reduced that amount by one-third to eliminate fees associated with BrandTotal's counterclaims. |
| m. | **$325,000 for responding to BrandTotal's motion for summary judgment**, which pertained in full to Meta's affirmative claims. |
| n. | **$400,000 offensive and defensive *Daubert* motions to exclude**, each of which pertained to Meta's affirmative claims. |

8. As indicated in column C of the table attached hereto as **Exhibit 1**, the fees identified above in paragraph 7 amount to a total of $3,230,000 in fees associated with the litigation of Meta's affirmative claims.

9. I next eliminated from that amount any fee amount clearly attributable to those aspects of Meta's affirmative claims on which Meta did not prevail (*i.e.* UpVoice 2021 and the server-side collection from non-password protected locations):

   a. **$30,000 for the second (March 10, 2021) Rule 30(b)(6) deposition of Oren Dor**, which focused on UpVoice 2021.

      b.      <u>$162,500 attributable to the CFAA and CDAFA issues raised in BrandTotal's motion for summary judgment on which Meta did not prevail.</u> This amounts to a 50% reduction in fees associated with BrandTotal's motion for summary judgment.

10. As indicated in column D of the table attached hereto as **Exhibit 1**, excluding the amounts identified above in paragraph 9 from the amount identified in paragraph 8 results in a fee amount of $3,037,500 ($3,230,000 – $192,500 = $3,037,500).

11. I further reduced that amount by 10%, to account for work that pertained to those aspects of Meta's CDAFA and CFAA claims on which Meta did not prevail, but which could not clearly be identified and isolated as such. As indicated in column E of the table attached hereto as **Exhibit 1,** this resulted in a total fee amount of $2,733,750 ($3,037,500 x .90 = $2,733,750).

**Calculation Of Fee Amount Based On Hourly Time Entries**

12. It is WilmerHale's standard practice to keep contemporaneous time records of all work performed. Throughout this matter, all time was accurately recorded in the normal course of business in tenth-of-an-hour increments. The entries that are attached here as **Exhibit 2** reflect the records as they were contemporaneously recorded except that I and other attorneys working at my direction have made edits to the narratives where necessary to fix typographical errors and remove confidential information or information revealing attorney work product.

13. I have reviewed the billing records and have sought to isolate the fees incurred in connection with those aspects of Meta's claims under the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502; Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; California unfair competition law ("UCL"); and for breach of contract on which Meta prevailed.

14. To do this, I removed all time entries pertaining to the following:

      a.      Initial case strategy and negotiations;

      b.      Initial fact development;

      c.      BrandTotal's motion for a temporary restraining order;

|   |   |   |
|---|---|---|
| | d. | BrandTotal's motions for a preliminary injunction; |
| | e. | Meta's motions to dismiss; |
| | f. | Document review and production in response to BrandTotal's discovery requests; |
| | g. | Expert discovery regarding BrandTotal's damages expert Mark Hoffman; |
| | h. | The depositions of Kim Stonehouse, Oscar Padilla, Mark Mansfield, Alon Leibovich, Brian Hickey, and the March 10, 2021 deposition of Oren Dor; |
| | i. | Third-party discovery; |
| | j. | Researching and drafting Meta's motion for summary judgment with respect to BrandTotal's interference counterclaims; |
| | k. | Responding to BrandTotal's motion for summary judgment with respect to UpVoice 2021 and the server-side collection from non-password-protected locations; |
| | l. | Any work focused specifically on UpVoice 2021 or the server-side collection from non-password protected locations; |
| | m. | Supplemental briefing regarding *hiQ Labs, Inc. v. LinkedIn, Corp.*, 31 F.4th 1180 (9th Cir. 2022); |
| | n. | Meta's motion for sanctions; |
| | o. | Research or drafting motions that were contemplated but not ultimately filed; |
| | p. | Miscellaneous entries that were not relevant to the claims on which Meta prevailed. |

15. Eliminating the entries identified above in paragraph 14 resulted in a total of 4,228.2 hours worked between January 8, 2021 and July 29, 2022, as shown in the time entries attached hereto as **Exhibit 2**.

16. I determined the following reasonable hourly rates for each timekeeper who billed time to this matter, based on rates held recently to be reasonable in the Northern District of California and commensurate with each timekeepers' qualifications and experience:

        a.    Sonal Mehta (partner) - $1,200 per hour

1       b.     Ari Holtzblatt (partner) - $975 per hour

2       c.     Andy O'Laughlin (counsel) - $950 per hour

3       d.     Emily Barnet (counsel) - $895 per hour

4       e.     Allison Schultz (senior associate) - $700 per hour

5       f.     Robin Burrell (senior associate) - $675 per hour

6       g.     Allison Que (senior associate) - $650 per hour

7       h.     Cindy Pan (associate) - $550 per hour

8       i.     Jeffery Schomig (attorney) - $500 per hour

9       j.     Nancy Tillotson (senior paralegal) - $475 per hour

10       k.     Jane Kim (paralegal) - $350 per hour

11       l.     Kevin Le (Litigation Support) - $300 per hour

12       m.     Anais Rosenblatt (project assistant) - $200 per hour

13       n.     Andres O'Sullivan-Camparan (project assistant) - $200 per hour

17. Applying those rates to the relevant hours recorded by each timekeeper results in a fee amount of $3,275,184.00, as shown in the table attached hereto as **Exhibit 3**.

18. Reducing that amount by 10% to account for the fact that Meta did not prevail in full on its CDAFA and CFAA claims results in a total fee amount of $2,947,655.60 ($3,275,184.003 x .9 = $2,947,655.60), as shown in **Exhibit 3.**

**Other Exhibits To Motion**

19. Attached as **Exhibit 4** is a true and correct copy of of a July 27, 2022 email from Dustin Taylor to attorneys at WilmerHale.

20. Attached as **Exhibit 5** is a true and correct copy of the UpVoice website, accessible at https://www.joinupvoice.com/, which states that BrandTotal has ceased operating and has shut down all operations, including UpVoice, effective June 29, 2022.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 17th day of August, 2022, in Austin, Texas.

                                                                */s/ Allison Schultz*
                                                                Allison Schultz

**SIGNATURE ATTESTATION**

I am the ECF User whose identification and password are being used to file the foregoing. Pursuant to Civil Local Rule 5-1(h), I hereby attest that the other signatories have concurred in this filing.

Dated:  August 17, 2022                             By: */s/ Sonal N. Mehta*
                                                                         Sonal N. Mehta